IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **LIION, LLC**, | ) <br> ) CASE NO. 1:18-CV-06133 <br> ) |
| Plaintiff, | ) JUDGE RONALD A. GUZMAN <br> ) MAGISTRATE JUDGE YOUNG B. KIM |
| vs. | ) <br> ) |
| **VERTIV GROUP CORPORATION, VERTIV CORPORATION, f/k/a Liebert Corporation, EECO, Inc., and EMERSON ELECTRIC CO.**, | ) <br> ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

### DEFENDANTS VERTIV GROUP CORPORATION AND VERTIV CORPORATION'S COUNTERCLAIMS AGAINST LIION, LLC

Defendants Vertiv Group Corporation and Vertiv Corporations (collectively "Vertiv"), by and through their attorneys, and pursuant to F.R.C.P. 13, alleges the following in support of their Counterclaims against Liion, LLC ("Liion").

### NATURE OF ACTION

1. Liion breached multiple contracts with Vertiv, costing Vertiv in excess of $300,000 and harm to its reputation and customer base, which has cost it at least hundreds of thousands of dollars more. In Fall 2017, Liion had a supply relationship with Vertiv to sell lithium-ion battery cabinets for uninterruptable power system ("UPS") solutions. Specifically, Vertiv issued multiple purchase orders for Liion's lithium-ion battery cabinets (the "Purchase Orders"), and even prepaid for some of the products. The contracts collectively required Liion to supply products for at least

six of Vertiv's customers. Liion did not supply Vertiv the product it had agreed to sell, even when Vertiv accommodated Liion by prepaying for the product.

2. Vertiv was the victim of Liion's scheme to get rich without putting in the work to develop a sustainable product. Liion's scheme worked as follows: Liion was a parts integrator that bought parts from third-party suppliers, applied a mark-up to those parts, and packaged the parts into a single item which it marketed as a "Liion lithium-ion battery cabinet." In fact, Liion did not have the cash on hand to support its business and misrepresented to Vertiv its ability to supply its product.

3. Liion's scheme cost Vertiv in excess of $300,000 and hundreds of thousands of more dollars in harm to its reputation and customer base. After Liion agreed to sell Vertiv its lithium-ion battery cabinets, Vertiv sold those products as part of a package to its UPS customers. Vertiv's sale to customers in this fashion is typical in the industry, and allows Vertiv's supplier, in this case Liion, to drop ship the product directly to Vertiv's customer. Vertiv relied upon Liion to supply the contracted-for lithium-ion battery cabinets so that Vertiv could satisfy its obligations to its customers.

4. When Liion failed to deliver, Vertiv was forced to contact its customers and inform them that the product would not be delivered. While Vertiv did everything it could to mitigate the situation, including offering its customers the opportunity to buy comparable products from other suppliers, some customers were unhappy with the offered substitution. In at least one case, this resulted in Vertiv losing a well-established and strong customer relationship, along with the loss of future business from that customer.

## THE PARTIES

5. Defendant/Counterclaim Plaintiff Vertiv Group Corporation is a Delaware corporation, with its principal place of business at 1050 Dearborn Drive, Columbus, Ohio 43085.

6. Defendant/Counterclaim Plaintiff Vertiv Corporation is an Ohio corporation, with its principal place of business at 1050 Dearborn Drive, Columbus, Ohio 43085. Vertiv Corporation is a wholly-owned subsidiary of Vertiv Group Corporation.

7. On information and belief, and based on the Complaint in the above-captioned action ("Complaint") and the Amended Complaint in the above-captioned action ("Amended Complaint"), Plaintiff/Counterclaim Defendant Liion, LLC is a Nevada limited liability company, with its principal place of business located at 120 Prairie Lake Road, Unit A, East Dundee, Illinois 60118, and with all of its members being residents of the State of Illinois.

8. On information and belief, during the relevant period, the sole managing member of the company was Gary Gray ("Gray").

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1332 and 1367. This is a civil action between Ohio and Delaware corporations (Vertiv) with their principal place of business in Columbus, Ohio, and a Nevada limited liability company with its principal place of business within the Northern District of Illinois (Liion). This is also a Counterclaim related to the Complaint and Amended Complaint filed by Liion, LLC against Vertiv. The Court has original jurisdiction over the Complaint and the Amended Complaint. The Amended Complaint is a civil action between Ohio corporations (Defendants Vertiv) and a Nevada limited liability corporation (Plaintiff Liion).

10. The Court has personal jurisdiction over Liion because it transacts business in Illinois and a substantial part of the events giving rise to the Counterclaim took place in Illinois.

11. Venue is proper under 28 U.S.C. §1391(b)(2) because a substantial part of the events and omissions giving rise to the Counterclaims occurred in this District.

## ALLEGATIONS

12. The Counterclaims are based on Liion's failure to supply lithium-ion battery cabinets to Vertiv pursuant to purchase orders. Liion knew that its failure to supply would harm Vertiv's relationship with its customers and require Vertiv to find its customers alternative lithium-ion battery cabinets. Liion decided to use this fact to its advantage and tried to extract money up front from Vertiv to finance its scheme to supply an unsustainable product. However, even after Vertiv paid Liion a significant down-payment and made other accommodations, Liion elected to breach its supply obligations so that Vertiv—rather than Liion—would suffer.

**Background on Lithium-Ion Battery Cabinets**

13. Vertiv is in the business of providing energy storage solutions to its customers in the form of UPS solutions. Specifically, Vertiv designs, builds, and services critical infrastructure that enables vital applications for data centers, communication networks, and commercial and industrial facilities. Vertiv's customers rely on Vertiv to deliver products to power their mission-critical systems. UPS solutions are one such product.

14. UPS solutions traditionally relied on valve-regulated lead acid ("VRLA") batteries. Lithium-ion batteries designed specifically for UPS applications, however, have distinct advantages. They are smaller, lighter, and last longer than traditional VRLA batteries.

4

15. Lithium-ion batteries may be used to support UPS solutions through the use of lithium-ion battery cabinets. Lithium-ion battery cabinets generally consist of lithium-ion batteries, a battery management system, and a 19-inch metal enclosure.

16. Though the cost of lithium-ion battery cabinets vary by supplier, the price for lithium-ion battery cabinets range from approximately $13,000 to $25,000 per cabinet.

17. Though each customer is different, most Vertiv customers use more than one battery cabinet to support their mission-critical applications. Multiple battery cabinets can be used in tandem; the amount of power a given customer needs to support its application determines the number of battery cabinets that customer requires.

**Purchase Orders With Liion, LLC**

18. On information and belief, Liion is in the business of collecting and aggregating various component parts to assemble into lithium-ion battery cabinets. Liion acquires these components from third-party suppliers. Liion then physically puts the lithium-ion battery cabinets together and sells them to a third party, like Vertiv, for use by that third party's customers in connection with a UPS solution. On information and belief, Liion makes its money by marking up the component parts in the resale of its lithium-ion battery cabinets.

19. In late 2014 through 2016, Liion approached Vertiv numerous times, hard-selling Vertiv on Liion's ability to become a supplier for Vertiv. Over that period, Liion made representations to Vertiv that it would have no issues meeting demand and had sufficient suppliers for its component parts to ensure its supply chain would not become compromised.

20. Around the same time, Vertiv was considering multiple suppliers so that it could offer lithium-ion battery cabinets to its customers for use with UPS solutions. As is standard practice for Vertiv with respect to supplies of any given product, Vertiv's intention was to find multiple suppliers to provide lithium-ion battery cabinets. First, however, Vertiv needed to ensure the safety of the potential suppliers' products through prototype testing. Vertiv eventually moved forward to that prototype testing stage with two suppliers: Liion and Samsung. During that testing stage, Vertiv noted that the two products, though both lithium-ion battery cabinets, performed differently and had different capabilities and strengths.

21. In late 2016, Vertiv decided to take both Samsung and Liion on as suppliers and marketed both Samsung and Liion lithium-ion battery cabinets to its customers for use with UPS solutions. In doing so, Vertiv educated its customers on the attributes of each product and each customer, based on its unique needs, would pick its preferred solution.

22. In December 2016, after Vertiv agreed to take Liion on as a supplier, the parties entered various purchase orders between December 2016 and August 2017, with Liion to provide lithium-ion battery cabinets for a purchase price of roughly $20,000 per unit. Liion filled these purchase orders and delivered these products. As is standard in the industry, Liion would drop ship these products directly to Vertiv's customers. Relying on Liion's representations that it could continue to supply, Vertiv sold additional Liion lithium-ion battery cabinets to its customers at the same agreed-upon purchase price.

23. On September 13, 2017, Vertiv entered into another purchase order with Liion, Purchase Order P220233335 (the "9/13 Purchase Order"), by which Liion was supposed to drop

ship 20 lithium-ion battery cabinets for a price of $400,000 to one of Vertiv's customers. Liion never, however, shipped the products. Instead, it claimed that it could not deliver the products.

24. Following this failure, on information and belief, Liion requested that Vertiv prepay a percentage of certain orders to ensure that Liion would not fail to supply products as ordered. Specifically, Vertiv prepaid 30% of the purchase price of a large order for one of Vertiv's largest customers, QTS, under Purchase Order P22023517 dated November 2, 2017 (the "11/2 Purchase Order") to Liion, agreed to pay another 30% of the purchase price upon delivery, and the final 40% at net 45 days. Liion assured Vertiv that this arrangement would allow it to continue delivery of purchase orders, including for delivery of those products for QTS under Purchase Order P22023517. On November 9, 2017, Liion confirmed the ship date for Purchase Order P22023517.

25. From November 2017 to December 2017, Liion promised to fulfill a series of purchase orders with Vertiv, identified below:

      a. Pursuant to Purchase Order P22023531 dated November 7, 2017, Liion was to drop ship six (6) lithium-ion battery cabinets for a price of $120,000.

      b. Pursuant to Purchase Order P22023537 dated November 8, 2017, Liion was to drop ship two (2) lithium-ion battery cabinets for a price of $40,000.

      c. Pursuant to Purchase Order P22023580 dated November 21, 2017, Liion was to drop ship one (1) lithium-ion battery cabinet for a price of $20,000.

      d. Pursuant to Purchase Order P44023607 dated December 4, 2017, Liion was to drop ship eight (8) lithium-ion battery cabinets for a price of $160,000.

      e.      Pursuant to Purchase Order P44023622 dated December 12, 2017, Liion was to drop ship two (2) lithium-ion battery cabinets for a price of $40,000.

26.      Vertiv made each of these purchase orders (together, with the 9/13 Purchase Order and the 11/2 Purchase Order, comprising the "Purchase Orders") to fill a specific request for Liion lithium-ion battery cabinets made by Vertiv customers. Liion knew that each Purchase Order was slated for delivery to a particular customer, as indicated in the "ship to" line of each Purchase Order and by the fact of Liion's obligation to drop ship to that particular customer.

**Liion Fails to Deliver**

27.      During the relevant period, 2016 through 2017, Liion repeatedly assured Vertiv that it would deliver the agreed-upon products. Liion made these assurances during calls with Vertiv when the parties were entering new sales discussions, and continued to assure delivery of the current and past products. Liion also made these assurances during discussions with Vertiv related to specific purchase orders, which Liion said it would have difficulty fulfilling in the near-term due to increased costs and a lack of cash to buy the battery cells needed for Liion's lithium-ion battery cabinets. For example, on November 9, 2017, Liion confirmed that it would ship the lithium-ion battery cabinets for Purchase Order P22023517 on December 20, 2017.

28.      Liion reinforced the promise that it would deliver the agreed-upon products by fulfilling some purchase orders as agreed at times early on in Vertiv and Liion's relationship. On information and belief, Liion further represented that it only needed a 30% down-payment from Vertiv on one of the larger Purchase Orders to maintain the supply. Liion's oral assurances and practices, in combination with Vertiv's payment of the requested 30% down-payment, led Vertiv

8

to believe that Liion would deliver all the products against all of its contracts and would not breach its supply obligations.

29. In late Fall 2017, Liion, however, began to threaten that it would not deliver unless Vertiv paid it even more money. After numerous negotiations between the companies' principals fell apart, Vertiv feared that Liion would never deliver to its customers the already-ordered lithium-ion battery cabinets.

30. Vertiv subsequently terminated its supply relationship with Liion. Vertiv maintained an internal tracking of open purchase orders and amount, if any, paid on those orders. At the time Vertiv terminated its supply relationship with Liion, it had already provided $300,000 in pre-payment to Liion and had seven (7) open Purchase Orders, each for a different customer, that remained unfulfilled.

**Vertiv Was Injured as a Result of Liion's Failure to Deliver**

31. Vertiv suffered significant losses as a result of Liion's failure to deliver the lithium-ion battery cabinets on the Purchase Orders discussed above. As set forth above, Vertiv had sold to its customers the lithium-ion battery cabinets that Liion had agreed to supply. This is a common practice in the industry. Liion was aware that Vertiv had already sold these products based on their agreement to sell the products to Vertiv. Liion was familiar with this practice both because it agreed to drop ship the products directly to customers and due to its prior experience in the industry, including discussions and interactions with Vertiv and its employees.

32. Ultimately, Vertiv was forced to communicate with its customers that the Liion products would not be delivered. Vertiv had contractual obligations to those customers. For each

9

of the seven (7) open Purchase Orders, Vertiv communicated with its customers and tried to mitigate the damage to each third-party customer that would result from not having a part of their mission-critical UPS solution delivered on time. Many of the customers were unhappy with this news and Vertiv's reputation suffered.

33. Vertiv had a long-standing and good relationship with QTS. Vertiv's relationship with QTS was completely independent of Liion. QTS had ordered fifty (50) Liion lithium-ion battery cabinets from Vertiv, which was one of Vertiv's largest lithium-ion battery cabinet orders. QTS was frustrated that Vertiv could not deliver the Liion lithium-ion battery cabinet. Vertiv was unable to deliver because Liion could not deliver. QTS cancelled its order with Vertiv.

34. Vertiv's relationship with QTS was damaged due to Liion's failure to deliver. QTS told Vertiv that it would not place any further orders with Vertiv because of its failure to deliver the lithium-ion battery cabinets. In fact, QTS has not purchased any lithium-ion solutions from Vertiv since that cancelled purchase order in December 2017. This situation—created entirely by Liion's failure to deliver—has cost Vertiv in excess of hundreds of thousands of dollars in lost opportunity to sell to QTS in 2018 and future years. Vertiv expects that QTS was likely to have ordered up to 1,000 lithium-ion battery cabinets in 2018 at a price of $20,000 per cabinet.

35. Liion knew that Vertiv would incur these losses. Liion sought to avoid losses for itself by breaking its agreements with Vertiv. Moreover, as a supplier, Liion knew and understood the importance of on-time delivery for lithium-ion products used in UPS solutions. Liion knew that Vertiv would be forced to make accommodations for its customers and risk losing hard-built relationships if products were not delivered on time. Indeed, Vertiv told Liion that customers were asking for confirmation of delivery dates and were unhappy that the product was not delivered.

36. On December 21, 2017, Vertiv cancelled the seven (7) open Purchase Orders and cut off its supplier relationship with Liion. Had Vertiv continued to rely on Liion and not terminated its supply relationship, Vertiv would have further jeopardized its customer accounts, harmed its reputation, and paid additional out-of-pocket costs to Liion for promises that were never to be delivered.

## COUNT I
## BREACH OF CONTRACT

37. Vertiv realleges and incorporates by reference paragraphs 1 to 36 as if fully set forth herein.

38. Vertiv and Liion entered into a series of valid and enforceable contracts for the delivery of ordered quantities of lithium-ion battery cabinets by Liion to as-specified Vertiv customers for an agreed-upon amount.

39. Vertiv complied with all of its obligations pursuant to the Purchase Orders. Among other things, Vertiv paid Liion for the lithium-ion battery cabinets actually delivered at the agreed-upon price. In addition, Vertiv also pre-paid a $300,000 down-payment to Liion.

40. Liion materially breached the Purchase Orders by, among other things, failing to deliver the ordered quantities of lithium-ion battery cabinets. For the Purchase Orders, Liion did not deliver any of the ordered quantities.

41. Vertiv has suffered substantial damages as a direct and proximate result of Liion's failure to deliver the ordered lithium-ion battery cabinet products. Among other things, Vertiv has lost its pre-payment totaling $300,000, suffered damage to its reputation and customer

relationships, and lost its relationship with QTS, including the opportunity to sell to that customer in 2018, which, on information and belief, is an opportunity valued at approximately $20 million.

42. Vertiv has been damaged in an amount well in excess of $75,000 to be established at trial as a result of Liion's breach of the Purchase Orders.

## COUNT II
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

43. Vertiv realleges and incorporates by reference paragraphs 1 to 42 as if fully set forth herein.

44. Vertiv and Liion entered into the Purchase Orders, a series of valid and enforceable contracts for the delivery of ordered quantities of lithium-ion battery cabinets by Liion to as-specified Vertiv customers for an agreed-upon amount.

45. Vertiv complied with all of its obligations pursuant to the Purchase Orders. Among other things, Vertiv paid Liion for the lithium-ion battery cabinets actually delivered at the agreed-upon price. In addition, Vertiv also pre-paid a $300,000 down-payment to Liion.

46. Liion owes Vertiv a contractual duty of good faith and fair dealing under the Purchase Orders.

47. Liion breached its duty of good faith and fair dealing in such a way that evades the spirit of the Purchase Orders and deprives Vertiv of its expected benefits under the agreements by threatening non-delivery of the ordered lithium-ion battery cabinets without further up-front payments by Vertiv, by continually misrepresenting its ability to supply the ordered quantities of

12

lithium-ion battery cabinets, and by changing the amounts and terms of payment that it required from Vertiv.

48. Vertiv has suffered substantial damages as a direct and proximate result of Liion's breach of its duty of good faith and fair dealing. Among other things, Vertiv has lost its pre-payment totaling $300,000, suffered damage to its reputation and customer relationships, and lost its relationship with QTS, including the opportunity to sell to that customer in 2018, which, on information and belief, is an opportunity valued at approximately $20 million.

49. Vertiv has been damaged in an amount well in excess of $75,000 to be established at trial as a result of Liion's breach of its duty of good faith and fair dealing.

## COUNT III
## PROMISSORY ESTOPPEL

50. Vertiv realleges and incorporates by reference paragraphs 1 to 36 as if fully set forth herein.

51. Vertiv and Liion entered into a supply arrangement through which Liion would supply Vertiv with the delivery of ordered quantities of lithium-ion battery cabinets by shipping them to as-specified Vertiv customers for an agreed-upon amount. In these discussions, Liion promised to deliver a specific quantity of lithium-ion battery cabinets.

52. Vertiv acted in reliance on Liion's promises regarding this supply arrangements. Among other things, Vertiv paid Liion for the lithium-ion battery cabinets actually delivered at the agreed-upon price. In addition, Vertiv also pre-paid a $300,000 down-payment to Liion. Vertiv also continued to advance sell Liion's lithium-ion battery cabinet to Vertiv customers for use with UPS solutions.

53. Vertiv reasonably relied upon Liion's promise to deliver the agreed-upon quantities of lithium-ion battery cabinets. Liion assured Vertiv that they would deliver the lithium-ion battery cabinets during conversations regarding the terms of the purchase orders, payment arrangements, and subsequent conversations. Liion did, in fact, deliver some lithium-ion battery cabinets against some of the purchase orders between the parties, which further reinforced Vertiv's belief that Liion would deliver on all contracts. Liion also reassured Vertiv that it would deliver on the contracts if Vertiv made a $300,000 down-payment, which Vertiv paid.

54. Liion failed to comply with its promise to deliver the lithium-ion battery cabinets. Liion failed to deliver any of the promised products in connection with the Purchase Orders.

55. Liion expected or should have expected that Vertiv would rely on its promises about its ability to supply the lithium-ion battery cabinets.

56. Vertiv relied upon Liion's promises to its detriment. Vertiv agreed with its own customers to deliver the Liion lithium-ion battery cabinets that Liion promised to deliver. Vertiv would not have entered into these agreements but for Liion's promises. Vertiv also paid Liion $300,000 up front. Vertiv would not have paid this amount but for Liion's promises.

57. Vertiv has suffered substantial damages as a direct and proximate result of Liion's failure to fulfill its promise to deliver the ordered lithium-ion battery cabinets. Among other things, Vertiv has lost its pre-payment totaling $300,000, suffered damage to its reputation and customer relationships, and lost its relationship with QTS, including the opportunity to sell to that customer in 2018, which, on information and belief, is an opportunity valued at approximately $20 million.

58.     Vertiv has been damaged in an amount well in excess of $75,000 to be established at trial as a result of Liion's breach of its promise and failure to deliver the ordered lithium-ion battery cabinets.

## COUNT IV
## TORTIOUS INTERFERENCE WITH VERTIV'S BUSINESS RELATIONSHIPS AND/OR EXPECTANCY WITH ITS CUSTOMERS

59.     Vertiv realleges and incorporates by reference paragraphs 1 to 58 as if fully set forth herein.

60.     At all relevant times, Vertiv has had business relationships with its customers, including QTS.

61.     At all relevant times, Vertiv has reasonably expected that its business relationships with its customers would continue and Vertiv has invested time, effort, and money in developing and maintaining those business relationships.

62.     Liion knew and was aware of the business relationships between Vertiv and its customers, including QTS. Liion knew that Vertiv had accepted orders for Liion's lithium-ion battery cabinets from various Vertiv customers, including QTS.

63.     Liion intentionally, willfully, and without justification interfered with Vertiv's business relationships with its customers by failing to deliver on the Purchase Orders, including Purchase Order P22023517, which was the order for QTS. Because Liion failed to deliver, Vertiv was unable to fulfill the orders Vertiv's customers had placed with Vertiv.

64.     Liion's purposeful and improper interference has had the effect of severely damaging Vertiv's reputation and customer relationships. This purposeful and improper

15

interference irreparably harmed Vertiv's relationship with QTS, led QTS to cancel its large order of lithium-ion battery cabinets, and, on information and belief, caused QTS to not place any other orders with Vertiv for lithium-ion solutions.

65. Vertiv has suffered substantial damages as a direct and proximate result of Liion's interference with Vertiv's business relationships and business expectancy when it failed to deliver the ordered lithium-ion battery cabinets. Among other things, Vertiv has suffered damage to its reputation and customer relationships, and lost its relationship with QTS, including the opportunity to sell to that customer in 2018, which, on information and belief, is an opportunity valued at approximately $20 million.

66. Vertiv has been damaged in an amount well in excess of $75,000 to be established at trial as a result of Liion's interference with Vertiv's business relationships and business expectancy when it failed to deliver the ordered lithium-ion battery cabinets.

## COUNT V
## DECLARATORY JUDGMENT OF NO MISAPPROPRIATION OF TRADE SECRETS

67. Vertiv incorporates by reference paragraphs 1-66 as if fully set forth herein.

68. An actual controversy exists between Vertiv and Liion by virtue of the Complaint, the Amended Complaint, and Vertiv's Motion to Dismiss, as to whether any Liion trade secrets exist and, if so, as to whether Vertiv misappropriated any purported Liion trade secret.

69. Liion's Complaint and Amended Complaint included factual allegations that Vertiv misappropriated Liion's trade secrets.

70. Liion's Complaint and Amended Complaint further contain various counts purporting to state claims under the Defend Trade Secrets Act and the Illinois Trade Secrets Act for misappropriation of trade secrets against the Vertiv defendants.

71. Liion thus has made Vertiv's purported misappropriation of Liion's trade secrets an issue to be determined in this case.

72. Liion has not identified any valid or enforceable trade secrets.

73. Vertiv has not misappropriated any Liion trade secrets.

## COUNT VI
## DECLARATORY JUDGMENT OF NO BREACH OF CONTRACT

74. Vertiv incorporates by reference paragraphs 1-73 as if fully set forth herein.

75. An actual controversy exists between Vertiv and Liion by virtue of the allegations of the Complaint, the Amended Complaint, and Vertiv's Motion to Dismiss, as to whether Vertiv breached any non-disclosure agreement.

76. Liion's Complaint and Amended Complaint included factual allegations that Vertiv breached a non-disclosure agreement that it signed with Liion.

77. Liion's Complaint and Amended Complaint further contain various counts purporting to state claims for breach of contract against the Vertiv defendants.

78. Liion thus has made Vertiv's purported breach of the non-disclosure agreement an issue to be determined in this case.

79. Vertiv has not breached any nondisclosure agreement.

## DEMAND FOR A JURY TRIAL

Vertiv hereby demands a trial by jury, under F.R.C.P. 38, for all issues triable of right by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaim Plaintiffs Vertiv Group Corporation and Vertiv Corporation respectfully request that this Court:

a. Deny the relief Plaintiff requested in its Complaint and Amended Complaint and enter judgment dismissing the Complaint and Amended Complaint with prejudice;

b. Award Vertiv Group Corporation and Vertiv Corporation actual and consequential damages in an amount to be determined at trial;

c. Declare that Liion has no valid or enforceable trade secrets and/or that Vertiv Group Corporation and Vertiv Corporation have not misappropriated any Liion trade secret;

d. Declare that Vertiv Group Corporation and Vertiv Corporation have not breached any non-disclosure agreement with Liion;

e. Award Vertiv Group Corporation and Vertiv Corporation reasonable attorneys' fees and the costs of this action;

f. Award Vertiv Group Corporation and Vertiv Corporation punitive damages; and

g. Grant Vertiv Group Corporation and Vertiv Corporation such other and further relief as the Court deems just and proper.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP |
| Dated: January 11, 2019 | */s/ J. Erik Connolly* <br> J. Erik Connolly <br> Nicole E. Wrigley <br> 333 West Wacker Drive, Suite 1900 <br> Chicago, IL 60606 <br> Telephone: 312.212.4949 <br> Facsimile: 312.757.9192 <br> econnolly@beneschlaw.com <br> nwrigley@beneschlaw.com <br><br> *Attorneys for Defendants Vertiv Group Corporation and Vertiv Corporation* |

## **CERTIFICATE OF SERVICE**

I, J. Erik Connolly, certify that on January 11, 2019, a true and correct copy of *Defendants Vertiv Group Corporation and Vertiv Corporation's Counterclaim against LiiON, LLC* was served electronically through the Northern District of Illinois CM/EF electronic filing on all counsel of record:

| | |
|---|---|
| James A. Karamanis<br>Barney & Karamanis, LLP<br>180 N. Stetson Avenue, suite 3050<br>Two Prudential Plaza<br>Chicago, IL  60601<br>Telephone:  312.553.5300<br>Email:  james@bkchicagolaw.com<br><br>*Attorney for Plaintiff LiiON, LLC* | Rudolph Anthony Telscher, Jr.<br>Steven Edward Holtshouser<br>Husch Blackwell<br>190 Carondelet Plaza, Suite 600<br>St. Louis, MO  63105<br>Telephone:  314.480.1500<br>Email: rudy.telscher@huschblackwell.com<br>steve.holtshousehuschblackwell.com<br><br>*Attorneys for Defendants Emerson Electric Co. and EEOC* |

*/s/ J. Erik Connolly*
*One of the Attorneys for Vertiv Group Corporation and Vertiv Corporation*