IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LIION, LLC, ) | |
|     Plaintiff, ) | |
| ) | Case No: 18 C 6133 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| VERTIV GROUP CORPORATION, ) | |
| VERTIV CORPORATION, f/k/a ) | |
| LIEBERT CORPORATION, EECO, ) | |
| INC., and EMERSON ELECTRIC CO., ) | |
| ) | |
|     Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, the motion to dismiss filed by Vertiv Group Corporation and Vertiv Corporation, formerly known as Liebert Corporation (collectively, "Vertiv") [18], is granted in part and denied in part. Plaintiff's current motion for leave to file a second amended complaint [100] is denied without prejudice, and the motion hearing date scheduled for March 21, 2019 at 9:30 a.m. is stricken. Plaintiff shall incorporate any changes to its proposed second amended complaint it deems necessary based on the Court's instant ruling on Vertiv's motion to dismiss and shall re-file its motion for leave to file a second amended complaint no later than April 1, 2019.

## STATEMENT

Plaintiff designs and builds stored-energy solutions for businesses. (First Amended Complaint, ("FAC"), Dkt. # 32, ¶ 2.) In simplified terms, Plaintiff offers uninterruptible power solutions ("UPSs") for businesses "in need of power for a limited duration until a facility's back-up generators can kick in." (*Id*. ¶ 17.) Over several years, Plaintiff has developed technologies using lithium-based energy solutions, which are generally more cost effective and efficient than UPSs using valve-regulated lead-acid ("VLRA") technology, which require continuous maintenance and monitoring. (*Id*. ¶¶ 19-29.) According to Plaintiff:

> 44. In January of 2013, [Plaintiff] had perfected the technology to provide a lithium-ion solution in the UPS/datacenter market[;] specifically, [Plaintiff] had developed the battery, cabinet, and order of operations necessary to allow [its] system to succeed.
>
> 45. [Plaintiff] created and employed its own proprietary software and source code containing proprietary algorithms to control the timing sequences for

>    the high[-]rate discharge and system efficiency.
>
> 46. This proprietary software is controlled by [Plaintiff's] patented control module, which allows the user to interface with the software, gather data from it, but not access the algorithms, source code, or software engineering.
>
> 47. [Plaintiff's] source code and algorithms for its proprietary software is fully encrypted with [its] unique and personal encryption to ensure that only [Plaintiff] may access the information and . . . data contained therein.
>
> . . .
>
> 62. On or about July 31, 2014, [Plaintiff] entered into a Non-Disclosure Agreement ["NDA"] with Defendant Emerson[1] to share [Plaintiff's] technology and confidential information in an effort to facilitate a joint and mutually beneficial venture into the UPS market.

(*Id*. at ¶¶ 44-47, 62.)

According to Plaintiff, after it shared confidential and trade-secret information with Vertiv, Vertiv canceled several purchase orders for Plaintiff's UPS lithium-ion system products, "announced expansion of its [l]ithium-ion UPS product line, and continued to sell products containing [Plaintiff's] proprietary and patented technology and trade secrets" without Plaintiff's permission and without paying Plaintiff royalties. (*Id*. ¶¶ 83-88.) Plaintiff alleges claims against Vertiv under the Illinois Trade Secrets Act ("ITSA") and the Defend Trade Secrets Act ("DTSA")[2] and for breach of the NDA. Vertiv moves to dismiss all claims against it.

**Standard**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). On a Rule 12(b)(6) motion, "courts must

---

[1] According to Plaintiff, on or about July 2016, Defendant Emerson Electric Co. sold Emerson Network Power to Vertiv Group Corporation, which "absorbed Emerson Network Power and converted it to Vertiv Corporation." (FAC, Dkt. # 32, ¶ 72.) Vertiv "then assumed all of the assets of Emerson Network Power, including but not limited to the joint venture and agreements with [Plaintiff]." (*Id*. ¶ 73).

[2] The ITSA and the DTSA prohibit the misappropriation of trade secrets. 765 ILCS 1065/3-4; 18 U.S.C. § 1836(b)(3).

2

accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (citation omitted).

**Analysis**

As to the trade-secret misappropriation claims, Vertiv argues that:

> A. Plaintiff's alleged trade secrets are legally defective because: the purported trade secrets are defined too broad; Plaintiff publicly disclosed its alleged trade secrets in its patent applications; and Plaintiff's alleged trade secrets include information that is both readily and visibly apparent and generally known in the industry.
>
> B. Plaintiff did not take reasonable efforts to protect its alleged trade secrets.
>
> C. Plaintiff fails to allege actionable misappropriation by Vertiv.

(Vertiv's Mem. Supp. Mot. Dismiss, Dkt. # 18-1, at i.)

Vertiv's initial bases for dismissal of the trade-secret claims are unavailing. To state a claim for trade-secret misappropriation under Illinois law, a plaintiff must allege: (1) that the information at issue was a trade secret; (2) that it was misappropriated; and (3) that it was used in the defendants' business. *Fire 'Em Up, Inc. v. Technocarb Equip. (2004) Ltd.*, 799 F. Supp. 2d 846, 849 (N.D. Ill. 2011). "While it is true that specificity of concrete trade secrets is required to support a finding of misappropriation, the alleged trade secrets need not be disclosed in detail in a complaint to survive a motion to dismiss." *Id.* at 850 (internal citation omitted). "Whether something is a trade secret is 'one of the most elusive and difficult concepts in the law to define,' so 'the question of whether certain information constitutes a trade secret ordinarily is best resolved by a fact finder after full presentation of evidence from each side.'" *PolyOne Corp. v. Lu*, No. 14 C 10369, 2018 WL 4679577, at *10 (N.D. Ill. Sept. 28, 2018) (internal quotation marks and citation omitted). Plaintiff alleges that after two years of research, hundreds of man hours, and substantial capital, it "created and employed its own proprietary software and source code containing proprietary algorithms to control the timing sequences for the high[-]rate discharge and [lithium-ion based] system efficiency." (FAC, Dkt. # 32, ¶ 45.) Plaintiff further alleges that the "proprietary software is controlled by [Plaintiff's] patented control module, which allows the user to interface with the software[] [and] gather data from it, but not access the algorithms, source code, or software engineering." (*Id.* ¶ 46.) These allegations are sufficient to put Vertiv on notice of the trade secrets that were purportedly misappropriated. To the extent Vertiv argues that Plaintiff's purported secrets were not trade secrets or have been publicly disclosed in some manner, such an inquiry would require consideration of evidence outside the four corners of the FAC, which is not appropriate at this stage of the litigation.

As to whether Plaintiff took sufficient steps to protect its trade secrets, that is also a factual inquiry that is unfitting at the motion-to-dismiss stage. *See Dick Corp. v. SNC-Lavalin Constructors, Inc*., No. 04 C 1043, 2004 WL 2967556, at *10 (N.D. Ill. Nov. 24, 2004) ("Whether the measures [to protect information] taken by a trade secret owner satisfy [ITSA's] reasonableness standard ordinarily is a question of fact for the jury and not one to be decided at the pleading stage.").

Last, Vertiv contends that Plaintiff fails to allege actionable misappropriation. Plaintiff alleges that Vertiv acquired and studied Plaintiff's trade secrets, utilized them in their own products and equipment, and divulged the trade secrets to third parties for Vertiv's financial gain. (FAC, Dkt. # 32, ¶ 105.) As a result, Plaintiff alleges it has been damaged in excess of $100,000,000.00. "Misappropriation under the DTSA is defined as '(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means' or '(B) disclosure or use of a trade secret of another without express or implied consent' under certain conditions." *Prominence Advisors, Inc. v. Dalton*, No. 17 C 4369, 2017 WL 6988661, at *3 (N.D. Ill. Dec. 18, 2017) (quoting 18 U.S.C. § 1839(5)). "The ITSA, like the DTSA, defines misappropriation as improper acquisition or unauthorized disclosure or use." *Id*. at *5 (citing 765 Ill. Comp. Stat. 1065/2(b)).

Here, the purported misappropriation allegations are, in large part, contradictory and confusing. Plaintiff alleges that its trade secrets "were sufficiently secret and maintained so that only [its] principal, Gary Gray[,] was privy to each and every trade secret and their collective uses." (FAC, Dkt. # 32, ¶ 97.) Plaintiff also alleges that the trade secrets "were further limited so that any corporation, individual, or other entity doing business or otherwise working with [Plaintiff] was required to sign a[n] [NDA] prior to any trade secrets or confidential information being divulged." (*Id*. ¶ 98.) According to Plaintiff, Vertiv (through Emerson) obtained confidential information after signing an NDA. (*Id*. ¶ 62.) Thus, Plaintiff cannot be relying on improper acquisition as a basis for its misappropriation claims. Plaintiff's allegation that "Defendants . . . attained these trade secrets [from] Plaintiff . . . in violation of the Trade Secrets Act, and in breach of their Mutual NDA," (FAC, Dkt. # 32, ¶ 101), simply makes no sense given that Plaintiff alleges it only reveals confidential information pursuant to an NDA and entered into one with Vertiv. If Plaintiff is contending that it only provided Vertiv with certain trade secrets or confidential information pursuant to the NDA, it wholly fails to specify what confidential information was disclosed pursuant to the NDA and what confidential or trade secret information was somehow improperly acquired by Vertiv (or how Vertiv purportedly improperly acquired it).

Moreover, in defense of its trade-secret misappropriation claims, Plaintiff argues that it "has alleged that it possessed certain technical trade secrets, that Defendant Vertiv misappropriated those trade secrets because they knew them to be secret and disclosed the information and/or discovered the trade secrets through unknown means, and then subsequently utilized them in their products and provided them to Samsung for financial gain." (Pl.'s Resp., Dkt. # 34, at 9.) Plaintiff's allegation that Vertiv misappropriated trade secrets "because they knew them to be secret" is not only nonsensical but fails to provide any facts in support; Plaintiff

cites no facts shoring up its vague assertions that Vertiv "discovered the trade secrets through unknown means." Thus, any claim based on the alleged acquisition of trade secrets by improper means is dismissed.

ITSA and DTSA also allow a party to seek relief for the unauthorized use or disclosure of trade secrets. " To raise a reasonable inference of use of its trade secret using circumstantial evidence, [Plaintiff] need only demonstrate that '(1) [defendants] had access to the secret and (2) the secret and the defendant[s'] design share similar features." *PolyOne Corp.*, 2018 WL 4679577, at *12 (citations omitted and certain alterations in *PolyOne*). Plaintiff alleges that "[s]ince December 21, 2017, Defendant Vertiv has been marketing products with [Plaintiff's] technology without paying [Plaintiff] royalties and without [Plaintiff's] permission," and "[o]n information and belief, since January of, 2017, Vertiv has been supplying Samsung and its subsidiaries with Plaintiff['s] . . . proprietary technology, patents, pending patents, and other confidential information for use in Samsung's UPS products." (FAC, Dkt. # 32, ¶¶ 88-89.) These allegations are sufficient to state a claim for unauthorized use.

With respect to the breach of contract claim, Vertiv asserts that the claim should be dismissed because Plaintiff has not adequately alleged "what unique information was provided or specified to be a trade secret" pursuant to the NDA or how Vertiv disclosed that information. (Vertiv's Mem. Law Supp. Mot. Dismiss, Dkt. # 18-1, at 15.) The Court disagrees. To establish a claim for breach of contract, a plaintiff must prove: (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages or loss resulting from the breach. *Claris, Ltd. v. Hotel Dev. Servs., LLC*, 104 N.E.3d 1076, 1083 (Ohio Ct. App. 2018).[3] As described above, Plaintiff adequately alleges that after it disclosed to Vertiv proprietary and confidential information pursuant to the NDA, Vertiv began offering products containing Plaintiff's protected information. Plaintiff need not allege at this stage "what unique information was provided or specified to be a trade secret" or "how Vertiv disclosed that information."

**Conclusion**

Because Plaintiff's amended complaint plausibly alleges trade-secret violations based on unauthorized use and breach of the NDA, the Court denies Vertiv's motion to dismiss in those respects. Vertiv's motion is granted with respect to trade-secret misappropriation claims based on improper acquisition.

**Date:** March 20, 2019

*Ronald A. Guzmán*
**Ronald A. Guzmán**
**United States District Judge**

---

[3] The NDA states that it is governed "in accordance with the laws of the State of Ohio." (FAC, Dkt. # 32, Ex. A, Mutual NDA, ¶ 10.)

5