IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LIION, LLC,<br><br>       Plaintiff,<br><br>vs.<br><br>VERTIV GROUP CORPORATION, et al.,<br><br>       Defendants. | CASE NO. 1:18-CV-06133<br><br>JUDGE MARY M. ROWLAND<br><br>MAGISTRATE JUDGE YOUNG B. KIM |

## VERTIV'S MEMORANDUM IN SUPPORT OF
## ITS MOTION FOR DISCOVERY SANCTIONS

J. Erik Connolly
Nicole E. Wrigley
Christopher J. Letkewicz
Kate Watson Moss
Benesch, Friedlander, Coplan & Aronoff LLP
71 South Wacker Drive, Suite 1600
Chicago, IL  60606
econnolly@beneschlaw.com
nwrigley@beneschlaw.com
cletkewicz@beneschlaw.com
kmoss@beneschlaw.com

*Attorneys for Defendants Vertiv Corporation &
Vertiv Group Corporation*

Plaintiff LiiON, LLC ("LiiON") has engaged in a pattern of willful misconduct relating to its discovery obligations that demands severe sanctions. LiiON's misconduct began at the onset of this case and has continued to the very end of fact discovery. Defendants Vertiv Group Corporation and Vertiv Corporation (collectively, "Vertiv") bring this motion pursuant to Federal Rule of Civil Procedure 37 to seek redress for this pattern of misconduct.

## SUMMARY OF ARGUMENT

The Court has broad discretion in fashioning a remedy to address a litigant's failure to comply with its discovery obligations, including dismissing claims. LiiON's pattern of misconduct warrants the most severe of sanctions. First, LiiON's counsel did not collect documents for production. Instead, LiiON's counsel allowed witnesses to self-select the documents they wanted to produce. Second, LiiON's counsel failed to collect and produce documents from multiple individuals who owned or worked for LiiON. LiiON's counsel limited the self-selection process to a small group of people. Third, LiiON knowingly misrepresented the existence and completeness of its document production. LiiON made these misrepresentations to both Vertiv and the Court. Fourth, LiiON misrepresented facts in its verified responses to interrogatories. LiiON's interrogatory responses were contradicted by the deposition testimony of LiiON's witnesses, including the individual who verified the responses.

These four transgressions, standing alone, merit dismissal of LiiON's claims pursuant to Rule 37, but there is more. LiiON has engaged in a pattern of dilatory and improper conduct throughout this litigation. Among other things, LiiON (a) failed to serve a corporate disclosure statement in a timely manner, (b) violated its obligation pursuant to Rule 26(a)(1) to disclose individuals with knowledge of the underlying allegations and location of relevant evidence, (c) delayed providing a verification for its interrogatory responses, (d) improperly designated the entirety of its document production as "Highly Confidential" or "Attorney Eyes Only," (e) failed to serve a privilege log in a timely manner, and (g) intentionally produced documents after the Court-ordered deadline. The Court has already entered multiple orders against LiiON for many of these deeds, but that is not enough.

1

LiiON's pattern of discovery misconduct is not run-of-the-mill. It is extraordinary in volume and breadth. The punishment must fit the crime. Rule 37 authorizes the Court to dismiss claims when a party engages in a pattern of egregious conduct. LiiON has done so, meriting dismissal of its claims. In the alternative, the Court should enter an order (1) barring LiiON from introducing evidence at summary judgment and trial on certain issues, and (2) issuing an adverse inference instruction to the jury with respect to evidence withheld by LiiON.

## BACKGROUND

LiiON filed a two-count complaint against Vertiv on September 7, 2018. *See* Dkt. 1 (Compl.). LiiON alleged that Vertiv breached a non-disclosure agreement and misappropriated its trade secrets by disclosing those trade secrets to Samsung and using the trade secrets in its own products. *Id.* ¶ 96. LiiON described its trade secret as: "Confidential information relating to LiiON's proprietary architecture design, proprietary software, control methodology, hardware configurations and equipment, business models, and total cost of ownership and return on investment configurators . . . ." *Id.* ¶ 87. LiiON sought in excess of $100 million in damages for Vertiv's alleged disclosure and use of its trade secrets. *Id.* ¶ 98. Vertiv filed a counterclaim against LiiON on January 11, 2019. *See* Dkt. 38. Vertiv's counterclaim centered on the conduct by LiiON that led Vertiv to terminate their relationship in December 2017. *Id.* at ¶¶ 18–30. Vertiv alleged that LiiON failed to deliver lithium-ion battery solutions on multiple occasions and attempted to renegotiate the price for those solutions. *Id.* This misconduct prevented Vertiv from satisfying existing orders with customers and losing future business opportunities. *Id.* at ¶¶ 31–36. Vertiv brought claims for breach of contract and tortious interference, seeking damages in in excess of $20 million. *Id.* at ¶ 42.

The Court initially ordered the parties to complete fact discovery by May 14, 2019. Dkt. 27 (Nov. 15, 2018). The Court subsequently extended fact discovery to July 15, 2019. Dkts. 123, 198. During this nine-month period, November 2018 to July 2019, Vertiv was forced to file four motions to compel and two motions to enforce the Court's prior orders. *See* Dkts. 71, 145, 154, 208, 251, 259. The Court granted all of these motions in part or in full. *See* Dkts. 103, 197, 201,

2

217, 269, 290. The Court also granted monetary sanctions against LiiON on two occasions. Dkts. 249, 269. The dilatory and improper conduct recognized by the Court in granting these motions and awarding sanctions is just the tip of the iceberg.

## LEGAL STANDARD

"Rule 37 of the Federal Rules of Civil Procedure governs sanctions against a party who fails to provide discovery as required by the discovery rules or a court order." *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 84 (D.N.J. 2006). "The Court must analyze whether the defalcation is by the party, the attorney, or both." *Id.* Rule 37 sanctions are available "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).[1]

"The Court also has inherent power to police litigant misconduct and impose sanctions on those who abuse the judicial process." *Wachtel*, 239 F.R.D. at 84, citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). "These inherent powers exist in addition to the formal rules and legislative dictates designed to assist district courts in their truth-seeking process." *Id.*; *see also Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 73 (3d Cir. 1994) (noting that, under *Chambers*, the Federal Rules of Civil Procedure and Congressional statutes do not "exhaust district courts' power to control misbehaving litigants"). "These powers include investigating whether a fraud has been committed upon the court and assessing attorneys' fees when a party has acted in bad faith." *Wachtel*, 239 F.R.D. at 84, citing *Chambers*, 501 U.S. at 44–46.

## ARGUMENT

LiiON's misconduct started on Day 1 (when it failed to file a corporate disclosure statement) and continued until the end of fact discovery (when it produced documents after the Court-ordered deadline). In-between, LiiON engaged in nearly every type of discovery

---

[1] Rule 37 permits the Court to impose a number of sanctions. *Brigham Young Univ. v. Pfizer, Inc*., 262 F.R.D. 637, 643 (D. Utah 2009). The Court can (1) assume facts in favor of the moving party, (2) bar the non-compliant party from introducing evidence on one or more issues, (3) strike pleadings in whole or in part, (4) dismiss claims in whole or in party, (5) render judgment against the non-compliant party, and (6) hold the non-compliant party in contempt of court. *Id.*

3

misconduct possible. As a result, Vertiv has been (1) deprived of evidence that undermines LiiON's claims and bolsters its counterclaims, (2) forced to conduct depositions without relevant documents and based on inaccurate interrogatory responses, and (3) incurred unnecessary expenses filing motions to force LiiON to comply with its discovery obligations.

**I.       LiiON violated Rule 34 by allowing a handful of witnesses to self-select the documents produced in response to Vertiv's requests for production.**

Counsel and their client must take reasonable steps to identify sources of relevant information. *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004). A failure to properly search for and gather responsive documents violates a party's discovery obligations. Indeed, counsel must monitor a party's efforts to retain and produce relevant documents to ensure that (1) all sources of relevant information is discovered, (2) relevant information is retained on a continuing basis, and (3) relevant non-privileged information is produced to the opposing party. *Id.* Counsel bears responsibility for coordinating their client's document production. Self-selection by a party of a limited pool of information is not appropriate and merits sanctions. *Knickerbock v. Corinthian Colls., et al.*, 298 F.R.D. 670, 679 (W.D. Wash. 2014); *see also School-Link Techs., Inc. v. Applied Res., Inc.*, 2007 WL 677647, at *2–6 (D. Kan. Feb. 28, 2007) (finding a lack of diligence by counsel based on testimony that an employee was not directed to gather and preserve documents).

LiiON's counsel did not comply with its obligations. LiiON's counsel did not take control of or review any of the devices possessed by LiiON witnesses containing responsive documents. *See* **Ex. A**, G. Gray Dep. Tr. 488:3–489:1; Lynn Dep. Tr. 439:9–440:14; Hankin Dep. Tr. 246:14–247:14; Hehn Dep. Tr. 43:17–44:11; Hoffman Dep. Tr. 339:10–21; Kostan Dep. Tr. (Vol. I) 165:4–166:16, (Vol. II) at 108:10–13. LiiON's counsel did not receive copies, custody, or access to LiiON's smartphones or computers and ignored hardcopy files. *Id.* Instead, counsel allowed LiiON to self-select the documents produced in the case with no attorney oversight to ensure completeness. *See* **Ex. A**, G. Gray Dep. Tr. 489:2–24; Lynn Dep. Tr. 445:18–446:1; Sosin Dep. Tr. 18:11–20:7; K. Gray Dep. Tr. 348:15–349:13.

4

LiiON's self-selection process resulted in an incomplete and biased production of documents. As discussed below, LiiON failed to produce documents relating to: (1) the development and design of LiiON's trade secrets, its purported proprietary algorithms, and its source code; (2) LiiON's disclosure of its trade secrets to third parties; (3) LiiON's financial condition, sales revenues, and research and development expenditures; and (4) its agreements with third parties who may have received or own LiiON's alleged trade secrets. *See infra* Part III.

LiiON compounded its improper collection methodology by lying about the location of relevant and responsive documents. Rule 26(a)(1) required LiiON to provide a "description by category and location [] of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, and control and may use to support its claims or defenses. . ." LiiON disclosed the following:

> Attached please find a portion of the relevant documents currently in counsel's possession. *The remaining relevant documents are either retained by counsel for Plaintiff or housed and stored within the office of LiiON, LLC at 120 Prairie Lake Rd Ste A, East Dundee, IL 60118*, and will be produced as necessary and upon requests once a protective order has been entered by the Court.

**Ex. B**, LiiON's Rule 26(a)(1) Disclosure No. 2 (emphasis added). LiiON and its counsel knew this statement was inaccurate. LiiON's CEO (Gray) and Technical Director (Lynn) testified that they collected documents from their smartphones and computers, not from the LiiON office. **Ex. A**, G. Gray Dep. Tr. 488:3–490:10; Lynn Dep. Tr. 438:20–444:16. Dean Kostan testified that he possessed documents on his computer and at his office (Logic Tectonics) regarding the development of the source code used for LiiON's battery solution. **Ex. A**, Kostan Dep. Tr. (Vol. I) 165:17–166:16, (Vol. II) 25:5–30:22.[2] Andrew Sosin testified that he and his company (Telco Technologies) possessed documents at their office related to the design and assembly of LiiON's battery cabinets. **Ex. A**, Sosin Dep. Tr. 103:16–108:9.

---

[2] Kostan testified that LiiON owned the documents that were at his office. See **Ex. A**, Kostan Dep. Tr. (Vol. I) 165:4–23, (Vol. II) at 6:14–10:19, 18:24–26:22.

## II. LiiON violated Rule 34 by failing to collect and produce documents in its possession, custody or control.

"Under Federal Rule of Civil Procedure 34(a)(1), [litigants] are required to produce documents (including ESI) that are within their 'possession, custody or control even if the documents are not in their physical possession.'" *Breuder v. Bd. of Trs. of Cmty. Coll. Dist. No 502, DuPage Cty., Ill.*, 2019 WL 3386966, at *4 (N.D. Ill. July 26, 2019). "The location of documents is irrelevant" if the litigant has control over the documents. *Dexia Credit Local v. Rogan*, 231 F.R.D. 538, 541 (N.D. Ill. 2004), quoting *In re Uranium Antitrust Litig.*, 480 F. Supp. 1138, 1144 (N.D. Ill. 1979). Counsel has an obligation to communicate with and ensure proper retrieval (and preservation) of relevant documents from key players in the litigation, including all documents within the client's control. *Zubulake,* 229 F.R.D. at 433–34.

LiiON and its counsel did not comply with its obligation to produce documents in its possession, custody or control. LiiON essentially produced documents self-selected by two individuals: Gary Gray and Tom Lynn.[3] LiiON did not collect or produce documents from several of its key witnesses, including Jerry Hoffman (owner and President of LiiON), Bob Corcoran (owner of LiiON), Roger Hankin (CFO of LiiON), Dean Kostan (principal of LiiON and developer of LiiON's source code)[4], Andrew Sosin (owner and manufacturer of LiiON's battery cabinets), Linda Hehn (LiiON's bookkeeper), and Kathy Gray (purchase order specialist for LiiON). *See* **Ex. A**, Hoffman Dep. Tr. 335:14–340:5; Corcoran Dep. Tr. 158:1–160:1; Hankin Dep. Tr. 240:21–250:1; Kostan Dep. Tr. (Vol. I) 165:24–166:16, (Vol. II) at 108:10–13; Sosin Dep. Tr. 18:11–20:2, 33:13–37:9; Hehn Dep. Tr. 42:17–44:15; K. Gray Dep. at 56:18–59:1.[5] All of these individuals

---

[3] Kathy Gray testified that she collected some emails to produce at the direction of her husband, Gary Gray. **Ex. A**, K. Gray Dep. Tr. 348:15–349:13. Andrew Sosin testified that he collected some handwritten notes and emails and provided those to Tom Lynn. **Ex. A**, Sosin Dep. Tr. 34:1–9.

[4] LiiON's counsel told the Court that Kostan was a "principal of the plaintiff." Dkt. 254 (July 24, 2019 Hr'g Tr.), 3:21.

[5] Kathy Gray testified that she self-selected certain emails for production at the direction of her husband, Gary Gray. **Ex. A**, K. Gray Dep. Tr. 348:15–349:13. However, LiiON did not collect or produce any other documents from Ms. Gray's hardcopy files, including purchase orders, drawings, and shipment information. *Id*. at 56:18–59:1.

were either (1) owners of LiiON, and/or (2) independent contractors working for LiiON. Their documents were within LiiON's possession, custody, or control.

LiiON's failure to collect and produce documents from Dean Kostan illustrates the audacity of LiiON's failure and prejudice to Vertiv. LiiON admitted that Kostan's work with LiiON was of utmost importance in the case. LiiON's counsel told the Court:

> [Kostan] is our software expert. He wrote -- he wrote the source code that is the -- at the crux of this case, or one of the main issues that's at the crux of this case . . . [O]ur allegations are that they -- part of the trade secret was our source code, the [configuration] files and our source code and datasets that [Kostan] wrote and that they transmitted it.

Dkt. 254 (July 24, 2019 Hr'g Tr.), 6:17–7:3. Vertiv agrees that Kostan's work—and his documents—goes to one of the main issues in this case. It is a trade secret case. Yet LiiON did not collect or produce documents from the individual who wrote the alleged trade secret.

### III. LiiON misrepresented the completeness of its document production and existence of documents.

LiiON and its counsel knew that its production consisted of self-selected documents by Gary Gray and Tom Lynn. LiiON and its counsel knew they were not producing all the responsive documents in LiiON's possession, custody, and control. But, when communicating with Vertiv and the Court, LiiON and its counsel misrepresented the completeness of its document production and existence of documents.

***LiiON's Alleged Trade Secrets.*** Vertiv requested documents concerning the development and design of LiiON's trade secrets, it purported proprietary algorithms, and its source code, including different versions. *See* **Ex. C**, Vertiv RFP Nos. 1, 11. LiiON agreed to produce responsive documents. *See* Dkt. 73, Exs. L–P. Multiple LiiON witnesses have testified about evidence within LiiON's custody and control that would be responsive to these requests. Kostan testified that he (1) has over 20 different versions of the source code he developed for the battery management system ("BMS")/alarm board for LiiON's solution, (2) drafted planning/design documents to write the source code, (3) received documents from Lynn regarding the alleged proprietary algorithms, and (4) drafted release notes, change logs and tracking sheets for the

7

different versions of LiiON's source code. *See* **Ex. A**, Kostan Dep. Tr. (Vol. I) 60:9–16, 61:3–6, 151:9–159:1, 174:3–11, 194:16–24, (Vol. II) at 28:8–13. Sosin likewise testified that he had internal LiiON documents used to develop and build LiiON's solutions as well as documents regarding the components used for the solution. *See* **Ex. A**, Sosin Dep. Tr. 36:5–14, 104:5–106:13, 217:21–221:19, 272:15–24. LiiON did not produce these documents.

***LiiON's disclosure of trade secrets to third parties.*** Vertiv requested that LiiON produce documents concerning disclosure of its alleged trade secrets to third parties to test whether reasonable steps were taken to preserve the trade secrets. *See* **Ex. C**, Vertiv RFP No. 3. In response, LiiON stated that it had no such documents to produce. *Id.* This claim was belied by multiple LiiON witnesses. Sosin testified that internal LiiON technical documents were shared with Telco and saved to Telco network folders. *See* **Ex. A**, Sosin Dep. Tr. 36:5–14, 104:5–106:5, 217:21–221:19. Kostan likewise testified that LiiON provided him information via email concerning its BMS architecture, algorithms, and specifications. *See* **Ex. A**, Kostan Dep. Tr. (Vol. I) 121:6–13, 151:12–24, 174:22–175:7, 194:16–24, 196:22–197:23, 207:3–9, (Vol. II) at 49:23–50:6, 54:3–11, 56:5–12. LiiON did not produce these documents.

***Third-Party Agreements.*** Vertiv requested any agreements between LiiON and third parties (including third-party witnesses) relating to the alleged trade secrets to test both the issue of whether LiiON took reasonable steps to protect the alleged secrets and determine who owns the alleged trade secrets. **Ex. C**, Vertiv RFP Nos. 5, 43. In response, LiiON stated that no such documents exist at this time. *Id.* This too turned out to be false. Kostan and Sosin testified that LiiON entered into contracts with their respective companies, Logic Tectonics and Telco. *See* **Ex. A**, Kostan Dep. Tr. (Vol. I) 106:7–110:13, 116:6–117:6, (Vol. II) at 7:12–10:3, 25:5–9; Sosin Dep. Tr. 81:3–5. Gray testified that LiiON entered into contracts with Logic Tectonics, International Battery, K2, and Bill Campbell, as well as with third-party companies who tested LiiON's product, such as Toshiba, Schneider, and Eaton. *See* **Ex. A**, G. Gray Dep. Tr. 102:18–20, 150:2–7, 191:13–19, 194:7–23, 202:9–16, 218:14–17, 219:8–12, 221:10–222:19, 224:12–14, 272:1–11, 356:7–12. LiiON did not produce these documents.

*Value of the Alleged Trade Secrets.* Vertiv requested documents sufficient to show the harm that LiiON alleged it suffered as a result of the alleged misappropriation, the independent economic value of the alleged trade secrets, and the financial value of the alleged trade secrets. **Ex. C**, Vertiv RFP Nos. 18, 19, 22. In response to each request, LiiON stated that it would produce documents in its possession custody and control. *Id.* LiiON witnesses testified that responsive documents existed for each of these topics, including financial statements, purchase orders with customers other than Vertiv, and total sales information. *See, e.g.*, **Ex A**, G. Gray Dep. Tr. 81:20–24; 82:5–83:24; 102:18–20; 160:6–8; 202:14–16; 218:14–219:12; 272:1–11; 372:2–4; 440:18–441:22; 450:8–10; 500:1–11. LiiON did not produce these documents.

LiiON's failure to produce these documents runs afoul of its discovery obligations and the Court's May 24, 2019 order. In April 2019, Vertiv sought confirmatory discovery because it was concerned about the completeness of LiiON's document production. Dkt. 154 The Court denied confirmatory discovery based on the following rationale:

> [P]arties cannot search for responsive documents at their own leisurely pace and merely produce whatever responsive documents they were able [to] locate by the production deadline and then continue to search for responsive documents even after the disclosure deadline. *There is also no need for confirmation discovery in that if documents are not produced, then there are no other responsive documents. If a party only produces certain documents, then the presumption is that those are the only responsive documents unless a party specifically states that it has withheld responsive documents based on specific objections.* In this case, there is no indication that Plaintiff withheld any responsive documents from production.

Dkt. 201 (emphasis added). LiiON intentionally withheld responsive documents from production.

IV.  **LiiON misrepresented facts in its verified interrogatory responses.**

LiiON served verified responses to Vertiv's interrogatories on March 30, 2019. The verification was signed by LiiON's CEO (Gary Gray). Gray verified that the statements in the interrogatory response were "true and correct." **Ex. D**, LiiON's Am. Interrog. Resps. However, the testimony by Gray and other LiiON witnesses demonstrated that the statements in the interrogatories were not "true and correct."

9

*LiiON's alleged trade secrets were not shared outside of LiiON*. Vertiv issued an interrogatory asking LiiON to identify all individuals who had access to its alleged trade secrets to test ownership and whether reasonable steps were taken to protect the trade secrets. **Ex. D**, Vertiv Interrog. No. 11. In its response, LiiON stated that "the only individuals with specific knowledge of the trade secrets were employees of LiiON and [Vertiv]." *See id.* LiiON witnesses contradicted this statement. First, Gray stated that LiiON has no employees, only contractors. **Ex. A**, G. Gray Dep. Tr. 99:20–100:8. Second, multiple LiiON witnesses testified that LiiON provided its trade secrets to non-LiiON employees, including contractors. For example, Sosin testified that LiiON provided its technical information to his company (Telco) and his employees. *See* **Ex. A**, Sosin Dep. Tr. 217:21–221:19. Kostan testified that he wrote and possesses LiiON's source code, a critical component of its alleged trade secrets. *See* **Ex. A**, Kostan Dep. Tr. (Vol. I) 172:12–174:2.

*LiiON provided, and Vertiv had access to, LiiON's source code*. In response to Interrogatories 8 and 16, LiiON stated that its source code was "provided" to Vertiv via "laptops, emails, in person conversations, and telephonic conversations." *See* **Ex. D**, LiiON Resp. to Interrog. Nos. 8, 16. That is not true. Kostan is the individual who wrote LiiON's source code. **Ex. A**, G. Gray Dep. Tr. 108:15–22. Kostan testified that he never shared the source code with *anyone at LiiON*, let alone at Vertiv. *See* **Ex. A**, Kostan Dep. Tr. (Vol. I) 173:10–15. None of the other LiiON witnesses testified to any occasion when they provided Vertiv with LiiON's source code. *See, e.g.*, **Ex. A**, Corcoran Dep. Tr. 97:22–24, G. Gray Dep. Tr. 299:18–300:7, 305:22–306:9; Hoffman Dep. Tr. 226:6–10, 226:19–227:13; Lynn Dep. Tr. 192:3–15, 291:3–293:6, 295:2–297:9, 300:4–12, 304:2–21; Sosin Dep. Tr. 352:24–354:2.

*Vertiv used LiiON's alleged trade secrets in its own products*. In response to Interrogatories 7 and 8, LiiON stated that Vertiv used its alleged trade secrets in Vertiv products. **Ex. D**, LiiON Resp. to Interrog. Nos. 7, 8. Gray and other witnesses, however, contradicted this statement when they testified. Gray testified that he does not know how Vertiv's product (the HPL) compares to LiiON's product or how it uses the alleged trade secrets. *See* **Ex. A**, G. Gray Dep. Tr. 341:20–343:4. Lynn likewise testified that he is unaware of whether LiiON's alleged

10

trade secrets are used in Vertiv's product.  *See* **Ex. A**, Lynn Dep. Tr. 340:3–10.  Indeed, none of LiiON's witnesses could identify how Vertiv's product uses any of its alleged trade secrets.  *See, e.g.*, **Ex. A**, Hoffman Dep. Tr. 234:2–236:13; Corcoran Dep. Tr. 202:20–206:3; Sosin Dep. Tr. 361:17–362:1.

*Vertiv disclosed LiiON's alleged trade secrets to Samsung*.  In response to Interrogatories 7 and 8, LiiON stated that Vertiv has disclosed LiiON's alleged trade secrets to Samsung.  **Ex. D**, LiiON Resp. to Interrog. Nos. 7, 8.  However, when asked about those statements at their depositions, not a single LiiON witness could identify (1) any instances when Vertiv disclosed LiiON's alleged trade secrets to Samsung, (2) any similarity between LiiON's lithium-ion solution and Samsung's lithium-ion solution, or (3) any way that Samsung was using LiiON's alleged trade secrets.  *See, e.g.*, **Ex. A**, Campbell Dep. Tr. 249:9–251:22; Corcoran Dep. Tr. 199:17–200:20; G. Gray Dep. Tr. 323:11–325:20, 347:4–21, 349:21–24, 350:15–353:21; Hoffman Dep. Tr. 232:18–234:1; Lynn Dep. Tr. 312:9–315:6, 325:11—327:14, 329:18–336:8, 345:1–346:3; Sosin Dep. Tr. 361:5–21.

LiiON intentionally and knowingly lied about its trade secrets in its interrogatory responses.  LiiON stated that Vertiv received its source code, used its trade secrets, and disclosed those trade secrets to Samsung.  These statements go to the heart of LiiON's case.  Vertiv spent hundreds of hours preparing and deposing witnesses based on the LiiON's statements.  At the end, after defending and deposing 28 witnesses, Vertiv finally learned the truth.  LiiON had no basis to say that Vertiv received the source code, used LiiON's trade secrets, or disclosed the trade secrets to Samsung.  Vertiv would not have been forced to engage in a lengthy and expensive discovery process if LiiON had told the truth in its interrogatory responses.

V. **LiiON engaged in dilatory and improper practices from the start of the case through completion of fact discovery.**

The four transgressions discussed above are mere examples of the pattern of misconduct that has permeated this case.  LiiON has flouted its discovery responsibilities from the beginning.

11

*First*, Rule 7.1(b) required LiiON to file a disclosure statement "with its first appearance [or] pleading." LiiON did not comply with Rule 7.1. LiiON did not file a disclosure statement until after Vertiv threatened to file a motion. LiiON filed its disclosure statement on June 21, 2019—nine months after filing the Complaint—and it became readily apparent why LiiON delayed. Dkt. 205. The disclosure statement revealed that LiiON was owned by many of the same individuals testified as witnesses on behalf of LiiON.

*Second*, Rule 26(a)(1) required LiiON to identify by name "each individual likely to have discoverable information . . . that the disclosing party may use to support its clams or defenses." LiiON only disclosed three individuals affiliated with LiiON—Gary Gray, Tom Lynn, and Jerry Hoffman. *See* **Ex. B**. LiiON did not disclose the individual who wrote LiiON's source code (Dean Kostan), the individual who assembled LiiON's battery solution (Andrew Sosin), LiiON's other owner (Robert Corcoran), LiiON's CFO (Roger Hankin), or LiiON's bookkeeper (Linda Hehn) and purchase order specialist (Kathy Gray).

*Third*, Rule 33(b)(5) required LiiON to provide a verification with its interrogatory responses. LiiON failed to provide a verification with its interrogatory responses—both the first time it served the responses, and the second time. LiiON provided a verification only after Vertiv filed a motion to compel. Dkt. 103 at 3. And, as discussed above, the individual who signed the verification (Gary Gray) contradicted many of the interrogatory responses during his deposition.

*Fourth*, Rule 26(b) required LiiON to provide a privilege log with its document production. Fed. R. Civ. P. 26(b)(5)(A). The Court ordered LiiON to provide its privilege log by January 14, 2019. Dkt. 27. LiiON ignored that deadline. The Court then ordered LiiON to provide its privilege log by March 11, 2019. Dkt. 96. LiiON ignored that deadline, too. The privilege log that LiiON eventually produced was woefully inadequate, requiring Vertiv to move to compel its correction. Dkt. 146. The Court granted Vertiv's motion. Dkt. 197.

*Fifth*, the Protective Order entered by the Court required LiiON to exercise good faith in designating documents as "Confidential," "Highly Confidential–Attorneys' Eyes Only," or "Highly Confidential–Source Code." Dkt. 61 at ¶ 5(a). LiiON ignored this requirement. LiiON

designated nearly the entirety of its document production as "Highly Confidential–Attorneys Eyes Only," which restricted the individuals that Vertiv's counsel could show the documents. Vertiv was forced to file a motion challenging the designation. Dkt. 164. The Court granted Vertiv's motion. Dkt. 203.

**Sixth**, in response to Vertiv's motion to compel, the Court ordered LiiON to produce its source code in native format by May 31, 2019. Prior to Vertiv's motion, LiiON had not produced its source code in native format, and had produced only one document possibly containing source code in .pdf format, rendering it functionally useless. Dkt. 260 at 7; Dkt. 155 at 3. LiiON ignored the Court's order. LiiON attempted to produce "source code material" 16 weeks after the Court's deadline. Dkt. 260. The Court granted Vertiv's motion to bar the evidence. Dkt. 290.

**VI.   The Court should impose significant sanctions on LiiON for its continuous violation of its discovery obligation and Court orders.**

LiiON has harmed Vertiv in this case by: (1) concealing that a reasonable search was not conducted for responsive documents in LiiON's possession, custody, or control; (2) failing to produce responsive documents; (3) misleading Vertiv regarding the factual basis for its allegations by lying in its verified interrogatory responses; (4) deliberately causing Vertiv to conduct depositions hindered by an incomplete set of documents and based on factually inaccurate responses to interrogatories; (5) disregarding the Court's orders regarding discovery deadlines and discovery obligations, thereby delaying Vertiv's receipt of the information needed to defend against LiiON's claims and support its counterclaims; and (6) forcing Vertiv to seek Court intervention on multiple occasions, costing Vertiv time and money.

The Court should dismiss LiiON's claims with prejudice as a result of these discovery abuses. Dismissal pursuant to Rule 37 requires a showing of willfulness, bad faith, or fault on the part of the noncomplying party. *Nat'l Hockey League*, 427 U.S. at 640. LiiON's conduct satisfies all three criteria. LiiON improperly limited its production of documents, intentionally misrepresented facts in its discovery responses, and repeatedly violated discovery orders and deadlines. LiiON's pattern of misconduct shows its practices were not due to negligence, but

13

rather designed to deprive Vertiv of evidence needed to defeat its claims. Dismissal is appropriate under these circumstances. *See, e.g.*, *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 781–82 (7th Cir.) (affirming dismissal sanctions imposed due to Plaintiff's dishonest conduct); *Autexpo, S.p.A. v. Midas Int'l Corp.*, 1988 WL 67667, at *6 (N.D. Ill. June 20, 1988) (imposing dismissal sanctions against litigant for refusing to cooperate in good faith throughout discovery); *Metro. Opera Ass'n, Inc. v. Local 100*, 212 F.R.D. 178, 231 (S.D.N.Y. 2003) (granting judgment on liability due to inadequate production, failure to comply with court orders, and misrepresentations by witnesses).

      In the alternative, the Court should prohibit LiiON from introducing evidence in support of several of its allegations. The Court should prohibit LiiON from introducing testimony or documents supporting its allegations that (1) it developed and owned the alleged trade secrets; (2) it took reasonable steps to maintain the secrecy of its alleged trade secrets; (3) the alleged trade secrets have independent economic value; and (4) LiiON suffered actual loss as a result of the alleged misappropriation. The documents that LiiON failed to collect and produce are directly related to these four allegations. Vertiv has been deprived of evidence to rebut these allegations. In addition, LiiON should be barred from introducing evidence that identifies or describes its alleged trade secrets beyond the documents it produced within the discovery deadlines. Barring LiiON from introducing evidence on these allegations is warranted. *See, e.g.*, *Mack v. City of Chicago*, 2019 WL 1331786, at *2–3 (N.D. Ill. Mar. 25, 2019) (barring improperly withheld evidence due to potential prejudice); *Passarella v. NFI Interactive Logistics, LLC*, 2016 WL 6134541, at *4 (N.D. Ill. Oct. 20, 2016) (barring introduction of evidence not produced during fact discovery).

      The Court should also issue an adverse jury instruction. The Court should instruct the jury to assume that the documents LiiON did not produce would show that (1) LiiON did not develop and own the alleged trade secrets; (2) LiiON did not take reasonable steps to maintain the secrecy of the alleged trade secrets; (3) the alleged trade secrets do not have independent economic value; and (4) LiiON did not suffer actual loss as a result of the alleged misappropriation. Again, the documents that LiiON did not collect or produce bear on these issues (so Vertiv has been deprived

of valuable evidence) and LiiON's misrepresentations relate to these issues. Issuing an adverse inference on these items is warranted. *See, e.g.*, *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998) (affirming lower court's imposition of adverse inference sanctions against litigant who withheld responsive documents).

Finally, the Court should issue a monetary sanction against LiiON and its counsel in addition to either dismissal of LiiON's claims (Option 1) or barring LiiON from introducing evidence and issuing an adverse inference (Option 2). LiiON's misconduct has cost Vertiv significant time and money to take and defend depositions without documentation that should have been produced within the discovery deadlines and based on factually inaccurate statements in discovery responses. Vertiv has also been shouldered with the burden of repeatedly going to the Court for relief from LiiON's discovery abuses, including this Motion. Imposing monetary sanctions on LiiON and its counsel is warranted. *See, e.g.*, *Brigham Young*, 262 F.R.D. at 648 (awarding $966,269 as sanction for failing to collect and produce documents); *Knickerbocker*, 298 F.R.D. at 682 (awarding monetary sanctions for "bad faith discovery practices").

## **CONCLUSION**

For the reasons discussed above, Vertiv respectfully requests that the Court issue an order dismissing LiiON's claims with prejudice and imposing monetary sanctions against LiiON and its counsel. In the alternative, Vertiv requests that the Court issue an order barring LiiON from introducing evidence on the allegations discussed above, issuing the adverse inference instructions discussed above, and imposing monetary sanctions against LiiON and its counsel.

Dated: October 31, 2019

Respectfully submitted,

*/s/ J. Erik Connolly*
J. Erik Connolly
Nicole E. Wrigley
Christopher J. Letkewicz
Kate Watson Moss
Benesch, Friedlander, Coplan & Aronoff LLP
71 S. Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949
Email: econnolly@beneschlaw.com
nwrigley@beneschlaw.com
cletkewicz@beneschlaw.com
kmoss@beneschlaw.com

*Attorneys for Defendants Vertiv Corporation & Vertiv Group Corporation*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 31, 2019 a copy of the foregoing *Vertiv's Memorandum in Support of Its Motion for Discovery Sanctions* was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

*/s/ J. Erik Connolly*
*Counsel for Defendants Vertiv Group*
*Corporation and Vertiv Corporation*