# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| LIION, LLC, | ) | |
| | ) | No. 18 CV 6133 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| VERTIV GROUP CORPORATION, *et al.*, | ) | |
| | ) | February 28, 2020 |
| Defendants. | ) | |

## MEMORANDUM REPORT and RECOMMENDATION[1]

More than three months after the close of discovery in this case, Defendants Vertiv Group Corporation and Vertiv Corporation (together "Vertiv" or "Defendants") filed the current motion for discovery sanctions, arguing that this case should be dismissed for what Defendants characterize as Plaintiff LiiON, LLC's ("LiiON") "willful misconduct relating to its discovery obligations." (R. 300, Defs.' Mem. at 1.) This court finds that only a small subset of the conduct Defendants highlight in their motion is sanctionable but finds dismissal and several other requested sanctions to be too drastic a response to the discovery failings. Accordingly, this court recommends that Defendants' motion for discovery sanctions be granted in part and denied in part.

---

[1] This court issues a report and recommendation, and not an order, because Defendants seek to have this action dismissed in its entirety as a form of sanctions, relief that is dispositive in nature.

## Background

A brief history of the claims and course of discovery in this case is needed to provide context for the arguments underlying Defendants' motion for sanctions. According to the Second Amended Complaint, LiiON is a company "in the business of supplying customers with innovative stored energy solutions designed for data center, telecom, uninterruptable power system, and cable and wind/solar applications." (R. 135, 2d Am. Compl. ¶ 2.) In connection with that business LiiON developed proprietary algorithms for controlling lithium-ion systems. (Id. ¶¶ 40-41.) Around 2014 LiiON entered into a joint venture with Defendants through which LiiON's technology would be integrated into battery cabinets. (Id. ¶¶ 60-67.) According to LiiON, Defendants misappropriated its trade secrets, including "methods, software systems, and components operating together to form the basis of LiiON's lithium-ion smart solutions," and divulged them to third parties, including Samsung. (Id. ¶¶ 100-109.) LiiON also claims that Defendants breached their mutual nondisclosure agreement when they allegedly divulged LiiON's trade secrets to Samsung. (Id. ¶¶176-79.) In response to LiiON's claims Defendants filed counterclaims against LiiON, including for breach of contract related to purchase orders for lithium-ion battery cabinets, breach of the implied covenant of good faith and fair dealing, promissory estoppel, and tortious interference with business relationships. (See R. 38, Counterclaims ¶¶ 37-79.)

After the case was referred to this court for discovery supervision, (R. 26), fact discovery began in December 2018 and ran through July 15, 2019. In that

timeframe things became especially contentious—LiiON filed four motions to compel and Defendants filed five. (R. 71; R. 72; R. 110; R. 145; R. 154; R. 208; R. 219; R. 223; R. 226.) Defendants also filed two successful motions to enforce this court's prior discovery orders against LiiON, in both cases winning monetary sanctions. (R. 251; R. 259; R. 269; R. 290.) However, this court denied Defendants' prior request for an adverse inference against LiiON, concluding that such an instruction would not be proportional to the asserted discovery violations. (R. 269.)

The level of contentiousness reflected in the parties' discovery practice only escalates in the briefing surrounding the current motion for sanctions. Defendants accuse LiiON of engaging in a pattern of lying and other discovery abuses and make clear that they do not seek to re-open discovery, re-hash past discovery rulings, or engage in additional fact discovery. (R. 336, Defs.' Reply at 12.) Instead, they seek an order dismissing LiiON's claims (among other sanctions) based on what they argue was a campaign on LiiON's part to deprive Defendants of relevant documents, to mislead them about the existence or availability of relevant documents, and to misrepresent facts in its answers to interrogatories.[2]

After the motion for sanctions was fully briefed, Defendants filed a supplement to bring to this court's attention what they described as new evidence of misconduct, accusing LiiON of filing an intentionally misleading Rule 7.1 and Local Rule 3.2 corporate disclosure statement. (R. 353.) Specifically, in its initial

---

[2] Two weeks after Defendants filed the current motion, they filed a separate motion for Rule 11 sanctions, which is currently pending before the assigned District Judge. (R. 314.) There, Defendants argue that LiiON should be sanctioned because LiiON brought this lawsuit in bad faith and for improper purposes.

disclosure statement LiiON listed nine owners, including seven LLCs, without identifying the members of these LLCs. (R. 205.) After the court entered an order compelling LiiON to file a legally sufficient corporate disclosure statement, (R. 348), LiiON filed a new statement bringing to light that Joshua Barney is the sole member of Maba, LLC, which in turn is a member of Green Grapes, LLC, which in turn is an owner of LiiON, (R. 350). Barney is also a named partner at Barney & Karamanis LLP, the firm representing LiiON as outside counsel in this case. In their supplement to the sanctions motion Defendants argue that LiiON intentionally concealed Barney's ownership interest in LiiON to obscure his personal interest in bringing this lawsuit, to negatively impact Defendants' initial public offering, and to gain access to discovery designated as Attorneys' Eyes Only ("AEO"). Defendants argue that LiiON's failure to disclose Barney's ownership role until after the close of discovery adds to what they assert is an ongoing pattern of misconduct.

## Analysis

Defendants invoke Federal Rule of Civil Procedure 37 and the court's inherent powers in support of their request for sanctions. Rule 37 allows sanctions up to and including dismissal where a party "fails to obey an order to provide or permit discovery," or where a party fails to provide or supplement information as required by Rules 26(a) or (e). Fed. R. Civ. P. 37(b)(2), (c)(1). The court also has the inherent power "to fashion an appropriate sanction for conduct which abuses the judicial process," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991), but sanctions

are justified under this inherent authority only "if the offender willfully abuses the judicial process or litigates in bad faith," *Donelson v. Hardy*, 931 F.3d 565, 569 (7th Cir. 2019), *petition for cert. filed*, (U.S. Oct. 30, 2019) (No. 19-6447). Where sanctions are appropriate, the court must ensure that whatever sanctions are imposed are "proportionate to the circumstances." *Donelson*, 931 F.3d at 569.

## A.    Document Production

The first two arguments Defendants raise challenge the sufficiency of LiiON's document production during discovery. First, Defendants argue that LiiON's attorneys insufficiently monitored their client's production efforts, specifically faulting the attorneys for failing to take custody of their client's devices and computers and arguing that they improperly allowed LiiON to "self-select" the documents it produced. Second, Defendants argue that LiiON failed to collect documents from important sources. Both arguments rest on the premise that LiiON's attorneys failed to ensure that their client produced a complete set of responsive documents from key witnesses.

Although ultimately it is the party, not the attorneys, that is responsible for ensuring compliance with its discovery obligations, Defendants correctly point out that LiiON's attorneys had a duty to ensure that their client completed a thorough search of its records in responding to Defendants' document requests and to monitor its production efforts. *See Zubulake v. UBS Warburg LLC,* 229 F.R.D. 422, 436, 439 (S.D.N.Y. 2004). This duty does not require an attorney "to monitor her client like a parent watching a child," but it does oblige the attorney to communicate effectively

5

with the client to implement a litigation hold and ensure that non-privileged relevant information is discovered, retained, and produced. *Id.* at 432-433. Counsel must be organized and effectively manage resources to "ensure compliance with discovery obligations and prevent misrepresentation to the opposing party." *G & S Metal Consultants, Inc. v. Cont'l Cas. Co.*, No. 3:09-CV-493-JD-CAN, 2012 WL 8977920, at *2 (N.D. Ind. Dec. 4, 2012). These obligations include the need to make sure that the client takes "reasonable steps to ensure that [its] responses to requests to produce are complete and accurate." *Fautek v. Montgomery Ward & Co., Inc.*, 96 F.R.D. 141, 145 (N.D. Ill. 1982).

Defendants argue that LiiON should be sanctioned because witnesses testified that counsel did not sufficiently monitor discovery by taking physical possession or control of their computers, devices, or files. (R. 300, Defs.' Mem. at 4.) But they provide no authority supporting their assertion that LiiON's attorneys were required to take control of a client's computers and devices and personally review those devices themselves. And to the extent Defendants assert that LiiON's attorneys allowed their client to self-select responsive documents "with no attorney oversight," that assertion is not supported by the deposition testimony they cite in their motion. (See id.) The cited testimony may show that witnesses conducted their own searches for responsive documents, but none of the testimony reflects a clear assertion that LiiON's attorneys provided "no oversight" of those efforts. In fact, one of the relevant witnesses specifically testified that he conducted his searches pursuant to counsel's instructions. (Id. Ex. A, Lynn Dep. Tr. 441:19-22.)

Accordingly, Defendants did not cite adequate support for their self-selection arguments to warrant sanctions.

Defendants' next argument—that LiiON violated Rule 34 by failing to collect relevant documents within its control—carries more weight. Rule 34 requires a party answering a request for the production of documents to turn over relevant, non-privileged items in its "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). In responding to requests to produce documents parties are required "to take reasonable steps" to make sure that their responses are "complete and accurate," and a failure to do so may justify sanctions. *Fautek*, 96 F.R.D. at 145. Defendants assert that they learned in discovery that LiiON violated this requirement by failing to reach out to several key witnesses who had responsive information within LiiON's control, instead producing documents only from two of its principals, CEO Gary Gray and Technical Director/Chief Marketing Officer Tom Lynn.[3] According to Defendants, there are seven individuals who were either owners of LiiON or independent contractors working for LiiON who testified that they did not search or produce documents and files in their control, including Jerry Hoffman (LiiON's President), Bob Corcoran (LiiON owner), Roger Hankin (LiiON's CFO), Dean Kostan (LiiON principal), Andrew Sosin (LiiON owner), Linda Hehn (LiiON's bookkeeper), and Kathy Gray (LiiON's purchase order specialist). (R. 300, Defs.' Mem. at 6.) The cited deposition transcripts show that two of those witnesses— Hankin and Kostan—specifically testified that no one asked them to search for

---

[3] In its response, LiiON describes Gray and Lynn as "the principal operators of LiiON, LLC." (R. 311, Pl.'s Resp. at 8.)

relevant documents. (Id. Ex. A, Hankin Dep. Tr. 247:20-23, Kostan Dep. Tr. (Vol. I) 165:24-166:16.) Defendants argue that this failure is particularly egregious with respect to Kostan, who LiiON identifies as the author of the source code that is at the center of its trade secret claims. (Id., Defs.' Mem. at 7.)

LiiON's response to this aspect of Defendants' argument is unsatisfying. It does not deny that it failed to seek out responsive documents from the seven witnesses identified. Instead, it characterizes those witnesses as being "independent contractors, part-time workers, and third-party suppliers" and argues that it cannot be expected to "seek out and interrogate every individual that it has done business with in the hopes that individual or entity may possibly have relevant information." (R. 311, Pl.'s Resp. at 8.) Defendants have not suggested that LiiON needed to go to such exaggerated lengths to comply with its discovery obligations. They point to only seven witnesses that LiiON should have contacted, and LiiON does not deny that they were all LiiON shareholders or contractors who may have possessed relevant information in LiiON's control.

To the extent that LiiON argues as a blanket matter that it is not required to seek responsive documents from independent contractors or shareholders, that premise is incorrect. The concept of "control" as set out in Rule 34 is broadly construed and "includes documents that a party has the legal right to obtain on demand." *SRAM, LLC v. Hayes Bicycle Grp., Inc.*, No. 12 CV 3629, 2013 WL 6490252, at * 4 (N.D. Ill. Dec. 10, 2013) (internal quotation and citation omitted). In other words, "a party has control over a document amounting to possession for

Rule 34 purposes when the party has a legal right to obtain the document." *Engel v. Town of Roseland*, No. 3:06 CV 430, 2007 WL 2903196, at *3 (N.D. Ind. Oct. 1, 2007). That means that a "party can have a legal right to obtain documents from another person or entity that the party does not otherwise control." *Id.* at *4. LiiON does not assert that it had no legal right to responsive documents that might have been in the possession of the witnesses it failed to contact. And in fact, Kostan testified that LiiON owned the relevant documents he maintained in his office. (R. 300, Defs.' Mem. Ex. A, Kostan Dep. Tr. (Vol. 1) 165:4-166:16, (Vol. II) at 6:14-10:19, 18:24-26:22.) Accordingly, any argument that LiiON lacks control over such documents is unpersuasive.

LiiON's only other substantive response to Defendants' Rule 34 argument is that it could not reach out to two witnesses, Sosin and Hankin, because they were represented by outside counsel for their depositions. (R. 311, Pl.'s Resp. at 11.) But in their reply Defendants demonstrate that LiiON has taken the opposite position, at least with respect to Sosin, who has an ownership interest in LiiON. (R. 350.) Sosin's personal attorney made clear at Sosin's deposition that he was representing Sosin in his individual capacity, but "[i]n the capacity of his involvement in LiiON," LiiON's counsel was representing him. (R. 336, Defs.' Reply Ex. F, Sosin Dep. Tr. 30:3-11.) In light of that testimony, LiiON's assertion that Sosin's representation by outside counsel precluded it from seeking any LiiON-owned documents in his possession is difficult to credit. For these reasons, this court finds that LiiON's

failure to seek responsive documents from Hoffman, Corcoran, Hankin, Kostan, Sosin, Hehn, and Kathy Gray amounts to a sanctionable Rule 34 violation.

## B.    Misrepresentations

In addition to their arguments regarding LiiON's deficient document production, Defendants argue that sanctions are warranted based on what they characterize as a series of misrepresentations.  But many of the examples of "lies" that they raise represent more of a disagreement over the meaning of the evidence rather than an attempt by LiiON to mislead other parties or the court.  Defendants' first argument in this vein is their assertion that LiiON lied on its Rule 26(a)(1) disclosure when it wrote that "the remaining relevant documents are either retained by counsel for Plaintiff or housed and stored within the office of LiiON." (R. 300, Defs.' Mem. at 5 & Ex. B at 6.)  As proof that this statement is a "lie," Defendants point to deposition testimony from witnesses who testified that they possessed documents on their phones or computers in offices outside of LiiON.  (Id.) But as LiiON points out, its initial disclosure described where it believed relevant documents to be at the time it made the disclosure, and in their own Rule 26(a)(1) disclosures, Defendants wrote that to the extent relevant documents exist they were located "primarily at Vertiv's offices," (R. 311, Ex. C at 4).  That LiiON failed to include a qualifier like "primarily" in its description of the location of relevant documents hardly supports Defendants' argument that LiiON's Rule 26(a)(1) disclosure about the location of its documents rests on a "lie."

Defendants next accuse LiiON of "misrepresent[ing] the completeness of its document production and existence of documents" in response to their request for four categories of documents: (1) LiiON's alleged trade secrets; (2) LiiON's communications with third parties about its alleged trade secrets or confidential information; (3) third-party agreements; and (4) materials showing the value of LiiON's alleged trade secrets. (R. 300, Defs.' Mem. at 7-9.) According to Defendants, "LiiON intentionally withheld responsive documents from production" under each of these categories. (Id. at 9.) With respect to the first and fourth categories of documents (pertaining to the existence and value of the alleged trade secrets), the "misrepresentation" Defendants point to is LiiON's Request for Production ("RFP") responses asserting that it would produce any responsive documents in those categories that were in its possession or control. (Id. Ex. C, RFP Nos. 1, 11, 18, 19.) Defendants argue that those assertions were untrue because multiple LiiON witnesses testified that they had documents in these categories that LiiON never produced. But Defendants' argument fits more neatly in motion to compel territory rather than sanctions territory. Defendants' complaint is that LiiON's production is incomplete. The court does not find persuasive Defendants' attempt to mold that complaint into a framework suggesting that LiiON "misrepresented" its intent to produce documents. LiiON's eventual production with respect to these categories of documents may have been sub-par, but Defendants have not done enough to show that LiiON misrepresented its intent to provide a complete document production in a way that would warrant sanctions.

11

Categories two and three (involving communications with third parties) present a closer call because in responding to Defendants' RFPs LiiON wrote that it did not have *any* responsive documents in its possession or control at the time.[4] (Id. at 8 & Ex. C, RFP Nos. 3, 5, 43.) Witnesses later testified that LiiON shared technical documents with third parties, (see id. Ex. A, Sosin Dep. Tr. 218:8-21, 221:12-19, Kostan Dep. Tr. (Vol. I) 151:9-24, 174:3-175:7), and entered into third-party agreements with other companies. For example, LiiON's CEO, Gary Gray, disclosed at his deposition that LiiON entered into contracts with multiple outside companies. Specifically, he testified that he "believes" that LiiON has a written agreement with Kostan's company, Logic Tectonics, and that it had agreements with International Battery, K2, Schneider, and Eaton. (Id. Ex. A, G. Gray Dep. Tr. 202:9-16, 218:13-17, 219:5-12, 222:17-19, 224:12-14.) Gray also testified that LiiON had agreements in place with two or three other outside companies. (Id. Ex. A, G. Gray Dep. Tr. at 356:13-20.) It is hard to square such testimony with LiiON's answers to Defendants' RFPs, which Gray signed on LiiON's behalf, stating that LiiON had no responsive documents relating to communications or agreements with third-party witnesses. (Id. Ex. C, RFP Nos. 5, 43.) As a party to the agreements, it is hard to fathom how LiiON would not understand itself to be in control of those documents, even if for some reason they were not in its physical possession.

---

[4] LiiON also responded to RFP No. 22 by saying that it had "no such documents." (Id. Ex. C, RFP No. 22.) That RFP sought "[a]ny appraisals or other analyses of the financial value of LiiON's intellectual property portfolio, including the Trade Secrets." (Id.) None of the testimony Defendants cite in an attempt to undermine that response alludes to appraisals or other analyses, (R. 300, Defs.' Mem. at 9), so they have not shown this response was a misrepresentation.

Accordingly, this court agrees with Defendants that LiiON's RFP response for these categories of documents rises to the level of a sanctionable misrepresentation. *See Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016) (noting that Rule 37 "treats an evasive and incomplete answer in discovery as equivalent to no answer," which may be sanctioned as "a failure to comply with court-ordered discovery").

Defendants also accuse LiiON of misrepresenting facts in its March 30, 2019 verified answers to interrogatories signed by Gray. But by in large these arguments show a disagreement over how to characterize facts rather than clear misrepresentations on LiiON's part. For example, Defendants argue that LiiON had no basis for its statement in interrogatory answers that LiiON provided source code to Defendants through "laptops, emails, in person conversations, and telephonic conversations." (R. 300, Defs.' Mem. at 10.) Defendants argue that LiiON's answer is untrue because Kostan wrote the source code and according to Defendants, he testified that he "never shared the source code with *anyone at LiiON*, let alone Vertiv." (Id. (emphasis in original).) In other words, Defendants assert that if Kostan authored the source code and never shared it with anyone, Gray had no basis for averring that LiiON shared the source code with Defendants. But a close look at the cited portions of Kostan's deposition transcript shows he testified that he did not provide the source code to anyone else "directly," but that others at LiiON had access to the source code through "executables that could be reverse compiled." (Id. Ex. A, Kostan Dep. Tr. (Vol. I) 172:22-173:21.) In other

words, Kostan's testimony supports an inference that individuals at LiiON other than Kostan could have accessed the source code. Moreover, Defendants' current attempt to paint LiiON's interrogatory answer as a misrepresentation shows more of a disagreement over the credibility of Kostan's statements than an overt falsehood on LiiON's part. Accordingly, Defendants have not demonstrated that LiiON's answer to this interrogatory represents sanctionable misconduct. *See Dotson v. Bravo*, 202 F.R.D. 559, 572 (N.D. Ill. 2001) ("Credibility and veracity issues are among the ultimate factually disputed issues in a trial and are not to be resolved beforehand or otherwise be used as a basis for a sanction." (emphasis omitted)), *aff'd*, 321 F.3d 663 (7th Cir. 2003).

The remainder of Defendants' arguments similarly arise from alleged contradictions between witness testimony and interrogatory answers and constitute disagreements about the weight of evidence rather than overt misrepresentations. For example, Defendants fault LiiON for averring that only "employees of LiiON" and Defendants had specific knowledge of LiiON's trade secrets, when Gray testified that LiiON used contractors and had no employees. (R. 300, Defs.' Mem. at 10.) That Gray used the term "employees" instead of "contractors" in his verified answer is hardly sufficient to show that he misrepresented facts. Defendants also argue that Gray contradicted his own interrogatory answer stating that Defendants used LiiON's alleged trade secrets in Defendants' products, when he testified at his deposition that he was unsure how Defendants' product compares to LiiON's product or how they use the alleged trade secrets. (Id.) Gray's uncertainty may

14

speak to his credibility, but Defendants have not shown that his testimony demonstrates that he lied in the interrogatory answers. Finally, Defendants argue that Gray falsely verified that Defendants disclosed LiiON's alleged trade secrets to Samsung because, according to it, no witness could identify instances of Defendants disclosing or Samsung using LiiON's alleged trade secrets. (Id. at 11.) Again, this speaks to the merits of LiiON's case more than any specific discovery violation, because it is possible that a fact finder could conclude that the cited testimony undercuts LiiON's interrogatory response, but none of the individual testimony squarely shows that the discovery response itself is a sanctionable falsehood.

For these reasons, this court is unpersuaded that the bulk of the examples of what Defendants characterize as misrepresentations amount to sanctionable conduct. The exception comes in the form of LiiON's responses to Defendants' RFP Nos. 3, 5, and 43, which speak to LiiON's sharing of confidential information with third parties. Because witness testimony directly refutes LiiON's assertions that it had no responsive documents for those categories, the court recommends finding that LiiON misled Defendants in its response. (R. 300, Defs.' Mem. Ex. C.)

## C.  Corporate Disclosure

In support of their motion for sanctions Defendants also point to what they characterize as "dilatory and improper practices" that they say LiiON engaged in "from the start of the case through completion of fact discovery." (R. 300, Defs.' Mem. at 11.) Most of the examples Defendants point to involve conduct which already has been addressed in discovery through various motions and need not be

rehashed in this context. (Id. at 11-13.) The exception is LiiON's conduct with respect to its Rule 7.1 and Local Rule 3.2 corporate disclosure statement. In its initial corporate disclosure statement—which LiiON filed nine months after bringing this lawsuit—LiiON did not include a statement with respect to any corporation owning 10% or more of its stock. (R. 205.) After the close of discovery, when Defendants successfully moved to compel LiiON to file a legally sufficient corporate disclosure statement, LiiON amended its corporate disclosure statement revealing that Barney, a named partner at the firm representing LiiON in this case, has an ownership interest in LiiON through Green Grapes, LLC. (R. 350.) Defendants claim that they were harmed throughout discovery by LiiON's failure to disclose its full membership earlier because Defendants would have explored Barney's personal interest in the lawsuit during discovery and barred him from accessing information designated as AEO.

Defendants assert that LiiON and its counsel "lied" in past corporate disclosure statements and that those statements were "intentionally false." (R. 353-1, Defs.' Supp. at 3.) Federal Rule of Civil Procedure 7.1 requires a nongovernment corporate party to disclose only "any parent corporation and any publicly held corporation owning 10% or more of its stock," or to include a statement that no such corporation exists. Local Rule 3.2 requires the disclosing party to identify "all its publicly held affiliates," or to include a statement that no such affiliate exists. Although the rule defines "affiliate" to include any member of an LLC, the rule makes clear that the statement has to identify only those affiliates that are

"publicly held." Id. There is no evidence that LiiON at any time failed to disclose any members that are publicly held. Thus, Defendants' contention here is not well-taken.

Defendants also assert that LiiON witnesses "lied during their depositions with counsel's permission" because Corcoran and Hoffman testified that they did not know if Barney had an equity interest in LiiON, and Gray failed to identify Barney as an owner. (R. 353, Defs.' Supp. at 4.) These witnesses were deposed in June 2019. Barney acquired his interest in LiiON on May 20, 2019, by virtue of being a member of Maba, LLC, which was acquired on that date by Green Grapes, LLC, which is a member of LiiON.[5] That Corcoran and Gray were unsure of Barney's ownership status a month after he acquired an ownership interest is not all that surprising and not enough to support Defendants' repeated accusations that they lied. Although the court is sympathetic to Defendants' assertion that LiiON's counsel should have corrected the record after the deposition, the testimony they point to alone does not establish that LiiON witnesses gave false testimony.

---

[5] This court permitted Defendants to file a reply to its supplement. There, Defendants assert that Barney has signed all of Green Grapes, LLC's annual reports since 2017 and that public filings list Green Grapes's principal address as the address of Barney's offices. Relying on those filings, Defendants suggest that Barney likely had an ownership interest in Green Grapes, and therefore LiiON, long before the Maba acquisition. (R. 362-1, Defs.' Supp. Reply at 4.) Barney clearly states in his declaration that he "obtained a minority ownership interest in LiiON, LLC, through Maba, LLC, on May 20, 2019." (R. 361, Pl.'s Supp. Resp. Ex. A, Barney Decl. ¶ 9.) Defendants' speculation about the meaning of public filings they highlight for the first time in their supplemental reply is insufficient to overcome this unequivocal statement made by a licensed attorney under penalty of perjury.

Defendants assert that if they had been aware of Barney's ownership interest in LiiON, they would have insisted that the protective order prohibit him from accessing documents they designated as AEO. (R. 353-1, Defs.' Supp. at 6.) The purpose of the AEO designation is to ensure that extremely sensitive, proprietary information is not made available to a competitor party in the course of discovery. *See Team Play, Inc. v. Boyer*, No. 03 CV 7240, 2005 WL 256476, at *1 (N.D. Ill. Jan. 31, 2005) (noting that AEO designation is "extreme measure" used to avoid "a genuine threat of competitive or other injury"). At this court's direction Barney submitted a declaration describing his access to AEO documents and information. (R. 357; R. 361, Ex. A.) In his declaration Barney represents that he accessed AEO documents on four occasions in August and September 2019, after he had acquired an ownership interest in LiiON. (Id. Ex. A, Barney Decl. ¶¶ 2, 6, 9.) Barney further states that he has not had any discussions about any AEO documents with anyone other than attorneys in his firm assigned to this case. (Id. ¶ 10.) He asserts that he has fully abided by the protective order in this case, and there is no evidence to cast doubt on that assertion. Nor have Defendants offered any evidence suggesting a risk of inadvertent disclosure of its AEO documents to LiiON principals through Barney. Accordingly, the court finds that neither Barney nor LiiON has engaged in sanctionable conduct with respect to the timing of the disclosure of Barney's membership interest in LiiON or Barney's interaction with AEO documents. However, in the interest of fairness, going forward Barney may not access any AEO materials or discuss with anyone AEO materials he once accessed.

Finally, Defendants accuse LiiON of intentionally concealing Barney's ownership role because he was "at the center of the conspiracy that resulted in the filing and use of this lawsuit for an improper purpose—to devalue Vertiv and gain access to Vertiv's trade secrets." (R. 353-1, Defs.' Supp. at 5.) Defendants raise this exact conspiracy argument in a separate motion for Rule 11 sanctions that is pending before the assigned District Judge. (R. 314.) Because the question surrounding LiiON's motive for filing this lawsuit is currently pending before the District Judge in the first instance, and because this court's jurisdiction in this case is limited by the referral to discovery issues, (see R. 26), this court will refrain from weighing in on that question in this context.[6]

## D. Recommended Sanctions

Having determined that LiiON engaged in sanctionable conduct in failing to collect responsive documents from multiple witnesses and falsely stating in its RFP responses that there were no documents in its control with respect to agreements and communications with third parties, this court's final task is to recommend an appropriate sanction. The guiding principal in this task is proportionality. *See Goss Graphics Sys., Inc. v. DEV Indus., Inc.*, 267 F.3d 624, 627 (7th Cir. 2001). The court is not required to apply the "least drastic sanctions" when confronted with a

---

[6] In responding to this argument LiiON argues that Defendants improperly rely on two emails that they understood to be protected by the attorney-client privilege and inadvertently disclosed, and LiiON asks the court to order the clawback of those documents. (R. 361, Pl.'s Supp. Resp. at 8.) The relief LiiON seeks should be requested through a separate motion, not through a response brief. Accordingly, and because the two emails speak to the issue raised in the Rule 11 sanctions motion, the clawback request need not be resolved in connection with the current motion.

party's failure to comply with discovery rules, but rather should assign a sanction that reflects the severity of the misconduct. *See Rice v. City of Chi.*, 333 F.3d 780, 784 (7th Cir. 2003). "Considerations relevant to proportionality include the extent of the misconduct, the ineffectiveness of lesser sanctions, the harm from the misconduct, and the weakness of the case." *Donelson*, 931 F.3d at 569.

Although Defendants' sanctions motion confronts LiiON's discovery conduct, none of the sanctions they request involve discovery itself. In fact, they make clear that they do not seek to have new documents turned over, to depose new witnesses, or otherwise to re-open fact discovery. (R. 336, Defs.' Reply at 12.) Instead, Defendants set their sights much higher, seeking to have LiiON's claims dismissed with prejudice in their entirety. Dismissal with prejudice is a "draconian sanction," *Long v. Steepro*, 213 F.3d 983, 986 (7th Cir. 2000) (citation omitted), and one that should "be used only in extreme situations, when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailable," *Rice*, 333 F.3d at 784 (quotation and citation omitted). To justify a sanction of dismissal the moving party must establish that the opposing party's actions reveal "willfulness, bad faith, or fault." *Long*, 213 F.3d at 987. Willfulness and bad faith are concepts associated with reckless or intentional conduct, whereas fault indicates "objectively unreasonable behavior" that reflects more than "a mere mistake or slight error in judgment." *Id.*

This court recommends finding that Defendants have failed to show that LiiON's discovery shortcomings present the kind of "extreme situation" that would

justify dismissing its claims. *See Rice*, 333 F.3d at 784. The cases Defendants cite in support of their dismissal request involve misconduct far more serious than what they identify here, including witness tampering, *see Ramirez*, 845 F.3d at 781-82, likely document destruction, *see Metro. Opera Ass'n, Inc. v. Local 111, Hotel Emps. & Rest. Emps. Int'l Union*, 212 F.R.D. 178, 229, 231 (S.D.N.Y. 2003), and years of excessive discovery delay, *see Autexpo, S.p.A. v. Midas Int'l Corp.*, No. 81 CV 5818, 1988 WL 67667, at *6 (N.D. Ill. June 20, 1988). (R. 300, Defs.' Mem. at 14.) Defendants have not established that the only two discovery failures they have successfully shown to be sanctionable amount to willful conduct on LiiON's part or rise to the level of fault that could justify dismissal. Defendants' motion relies largely on an attempt to create a snowball effect by pointing out every conceivable discovery error LiiON committed over the course of this litigation—whether or not those perceived errors have already been sanctioned or otherwise dealt with by this court through prior motions—to justify their request for the extreme sanction of dismissal. But stripped down to the only supported accusations, the impact of LiiON's sanctionable conduct falls far beneath that which would justify dismissing this suit.

As an alternative sanction, Defendants assert that LiiON should be prevented from introducing any evidence to support "several of its allegations." (Id.) Specifically, they argue that LiiON should be prevented from introducing evidence to support its allegations that: "(1) it developed and owned the alleged trade secrets; (2) it took reasonable steps to maintain the secrecy of its alleged trade secrets; (3)

21

the alleged trade secrets have independent economic value; and (4) LiiON suffered actual loss as a result of the alleged misappropriation." (Id.) The court fails to see how this is an "alternative" sanction to dismissal. Without any evidence in support of these allegations, LiiON's claims would be doomed to fail. In other words, granting this sanction would essentially have the same impact as dismissing the case.

As a second alternative, Defendants argue that they are entitled to an adverse jury instruction allowing jurors to assume that any documents LiiON did not produce would undercut its claims. (Id.) In this circuit, the adverse instruction sanction is most commonly used in circumstances where there is evidence that a party has tampered with or destroyed documents in bad faith. *See Reed v. Freedom Mort. Corp.*, 869 F.3d 543, 548-49 (7th Cir. 2017) (rejecting an adverse inference instruction as appropriate sanction for "simple discovery dispute"). There is no such evidence here. And given that an adverse inference instruction has been characterized as being among "the most extreme sanctions available pursuant to the Federal Rules of Civil Procedure and this Court's inherent power," *Cohn v. Guaranteed Rate, Inc.*, 318 F.R.D. 350, 355 (N.D. Ill. 2016), that sanction would not be a proportionate response to LiiON's sanctionable discovery failings.

Turning to Defendants' final request for sanctions, they assert that monetary sanctions are appropriate to make up for the time they sunk into taking and defending depositions without the benefit of documents LiiON should have produced, and to compensate them for the costs associated with repeatedly having

to file motions for relief throughout discovery. Limited sanctions such as "costs and attorney's fees associated with defendant's failure to make timely production" may be the appropriate response to a party's failure to supply accurate responses to discovery requests. *Fautek*, 95 F.R.D. at 146; *see also* Fed. R. Civ. P. 37(c)(1)(A) (allowing sanctions in the form of payment of reasonable expenses, including attorney's fees, caused by party's failure to disclose information). Because Defendants have been prejudiced by LiiON's failure to collect documents from relevant sources and misleading responses to requests to produce documents, this court recommends finding that a monetary sanction is the most proportionate response to LiiON's sanctionable conduct. Specifically, this court recommends a monetary sanction in the amount of half the reasonable fees Defendants incurred in deposing the seven witnesses from whom LiiON neglected to collect documents, given that their depositions presumably could have been more efficient and productive had LiiON gathered relevant documents from them in discovery. This court further recommends a sanction in the form of half the reasonable fees Defendants incurred in filing this motion. Additionally, given LiiON's misrepresentations with respect to the existence of third-party agreements, LiiON should be barred from referencing or offering any evidence in this case with respect to any third-party agreements it failed to identify or produce in discovery. This bar would not prevent Defendants from referencing or offering the same.

Although the recommended sanction may not be a perfect solution to the identified discovery misconduct, the proposal is tailored to best reflect Rule 37's

proportionality requirement and to move this litigation forward in a fair and efficient manner. Because Defendants have made clear they do not intend to re-depose witnesses or otherwise seek to re-open discovery, the recommended sanction is sufficient to cure any prejudice and is a proportionate response to LiiON's sanctionable discovery conduct.

## Conclusion

For the foregoing reasons, this court recommends that Defendants' motion for discovery sanctions be granted in part and denied in part. This court recommends imposing on LiiON a monetary sanction in the form of half the reasonable attorneys' fees Defendants incurred in deposing Jerry Hoffman, Bob Corcoran, Roger Hankin, Dean Kostan, Andrew Sosin, Linda Hehn, and Kathy Gray and in connection with the current motion. This court further recommends barring LiiON from referencing or offering any evidence with respect to any third-party agreements it failed to identify or produce in discovery. If this recommendation is accepted, this court will issue a follow-up order to determine the fee amount that should be awarded.[7]

ENTER:

_____
Young B. Kim
United States Magistrate Judge

---

[7] Parties have 14 days from the date of service of this court's Memorandum Report and Recommendation to file objections with the assigned District Judge. See Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object constitutes a waiver of the right to appeal. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011).