UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LIION, LLC, | ) |
| | ) No. 18 CV 6133 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| VERTIV GROUP CORPORATION, *et al.*, | ) |
| | ) |
| | ) November 24, 2020 |
| Defendants. | ) |

**MEMORANDUM OPINION and ORDER**

Before the court is Defendants' motion to strike portions of reports by Plaintiff's experts Brian Dillard and Christopher Leisner ("Expert Reports"). For the following reasons, Defendants' motion is granted in part and denied in part:

**Background**

In this action Plaintiff alleges that Defendants misappropriated its trade secrets and breached a nondisclosure agreement by sharing those secrets with a third party. (R. 135, 2d Am. Compl. ¶¶ 100-09, 176-79.) For their part, Defendants bring counterclaims alleging breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, and tortious interference with business relationships. (R. 38, Countercl. ¶¶ 37-66.) The court has underscored the "level of contentiousness reflected in the parties' discovery practice." (R. 367.) The parties filed a combined nine motions to compel during roughly seven months of fact discovery. (R. 71; R. 72; R. 110; R. 145; R. 154; R. 208; R. 219; R. 223; R. 226.) Given the contentiousness and need to move this case forward, the court on May 24,

2020, entered an order barring the parties from offering, absent good cause, any responsive documents not produced in discovery by March 11, 2019. (R. 201; see also R. 96 & R. 290.) In the current motion Defendants assert that Plaintiff has "directly contravene[d]" that order by allowing its experts to consider documents produced after March 11, 2019, as well as documents Plaintiff never produced. (R. 396, Defs.' Mem. at 1.)

## Analysis

Defendants argue that Plaintiff's experts improperly relied on documents that were not timely produced and, as a result, portions of the Expert Reports should be stricken. (R. 395, Defs.' Mot.; R. 396, Defs.' Mem.) The contested documents can be grouped into three categories: (1) documents produced by Plaintiff before the March 11, 2019 deadline; (2) documents produced by Plaintiff after March 11, 2019, but before the close of fact discovery pursuant to motion to compel orders; and (3) documents Plaintiff never produced. The court addresses each category of documents in turn.

### A. Documents Produced Before Deadline

Defendants ask the court to strike portions of the Expert Reports that rely on documents produced after the March 11, 2019 document production deadline. (R. 396, Defs.' Mem. at 3-9.) Defendants identify such documents as "LiiON006180," "LiiON013599," and others listed in Appendix A to its motion. (Id. & App. A.) Plaintiff counters that it produced at least some of these documents before the deadline. (R. 403, Pl.'s Resp. at 9.) On March 9, 2019, the court issued

an order requiring the completion of document productions by March 11, 2019. (R. 96.) Thereafter, on May 24, 2019, the court issued another order confirming the March 11, 2019 deadline for producing responsive documents and stating that "each side is barred from offering any responsive documents not produced unless there is good cause why such document was not produced in a timely manner." (R. 201.)

Defendants argue that despite these orders, Plaintiff later produced responsive documents, without showing good cause, and its experts improperly relied on such documents in preparing the Expert Reports. (R. 396, Defs.' Mem. at 3-6.) Plaintiff responds that in February and March 2019 it provided Defendants with its original document production, which included "large combined PDFs." (R. 403, Pl.'s Resp. at 9.) Defendants requested that Plaintiff separate the files and Bates stamp them, which Plaintiff did. (Id.) Plaintiff produced the separated documents on April 8, 2019, and May 28, 2019. (Id.) Plaintiff argues that because such documents were disclosed before the March 11, 2019 deadline, its experts should not be barred from relying on them.

The court agrees with Plaintiff. In Appendix A to its motion Defendants list documents identified as "Materials Reviewed" in Dillard's Expert Report, which they describe as "[l]ate [p]roduced." (R. 396, Defs.' Mem. App. A.) Plaintiff represents that documents it produced on April 8, 2019, and May 28, 2019, in fact were produced before the document production deadline, albeit in a combined PDF format. (R. 403, Pl.'s Resp. at 9.) In their reply Defendants do not dispute Plaintiff's representation. (See R. 407, Defs.' Reply.) Accordingly, to the extent

documents listed in Appendix A were included in Plaintiff's original document production before March 11, 2019, Defendants' motion is denied.

**B.     Documents Produced Before Close of Fact Discovery**

Defendants seek to strike portions of the Expert Reports that rely on documents Plaintiff produced after the document production deadline but before the close of fact discovery pursuant to motion to compel orders. (R. 407, Defs.' Reply at 3-5.) This category includes documents titled as: (1) LiiON 2018-23 Proforma_09272018 ("Proforma"); (2) LiiON, LLC, Executive Summary ("Executive Summary"); (3) LiiON Quickbooks, Files to Leisner, Due Diligence, and LiiON Sale Documents, labeled as Exhibits B-5, B-6, B-7, and B-8 to Leisner's Expert Report (collectively, "Due Diligence & Quickbooks"); (4) S1–Lithium–TPPL r27 ("Lithium"); and (5) Exhibit A to the LiiON, LLC Operating Agreement v-9 ("Cap Table v9"). (R. 396, Defs.' Mem. at 3-6, 8; R. 407, Defs.' Reply at 3-5.)

As to the Proforma, Defendants argue that Expert Leisner improperly considered this document in formulating his opinions. (R. 396, Defs.' Mem. at 3-6.) Defendants initially state that Plaintiff produced the Proforma on July 16, 2019, (id. at 3), but later concede that it was produced on July 15, 2019, the last day of fact discovery, (R. 407, Defs.' Reply at 3). In its response Plaintiff does not explicitly address this document. (R. 403, Pl.'s Resp.) Plaintiff does suggest that similar documents were produced on July 15, 2019, not on July 16, 2019, as Defendants initially indicated. (Id. at 12.) Regardless, Plaintiff does not provide good cause for its failure to produce the Proforma before March 11, 2019.

4

Defendants suggest that Plaintiff may have offered an "implicit defense" as to why expert opinions based on the Proforma should not be barred. (R. 407, Defs.' Reply at 4.) In its response Plaintiff generally argues that it produced a batch of documents, perhaps including this one, in response to a motion to compel order requiring the production of "all files relating to the potential sale of LiiON, LLC to Lithium Werks." (R. 403, Pl.'s Resp. at 12.) But that motion to compel sought only "the purchase agreement and term sheet (including all drafts) between LiiON and Lithium Werks." (R. 208, Defs.' 4th Mot. to Compel; R. 217.) As Defendants point out, the Proforma is not responsive to that request. (R. 407, Defs.' Reply at 4.) The Proforma is an Excel file created by Roger Hankin, Plaintiff's Chief Financial Officer ("CFO"), on April 27, 2018, reflecting Plaintiff's financial information. (Id. at 3-4.) The court agrees that a request for a purchase agreement and term sheet cannot provide the cover Plaintiff seeks for failing to produce the Proforma earlier in this litigation as ordered by the court. (See R. 96; R. 201.)

Defendants assert that Plaintiff's production of the Proforma—on the last day of fact discovery—"severely prejudiced" them because Plaintiff's key witnesses already had been deposed, and Defendants did not have an opportunity to question the witnesses about the financial information reflected therein. (R. 407, Defs.' Mem. at 4-5.) Because Plaintiff does not provide good cause for the untimely production of the Proforma, and because Defendants would be prejudiced by allowing Leisner to rely on this late-produced information, Defendants' motion is

5

granted as to the Proforma. Those portions of the Expert Report that refer to or rely on the Proforma are stricken.

With respect to the Executive Summary, Defendants contend that Plaintiff did not produce this document until July 15, 2019. (R. 396, Defs.' Mem. at 3-4; R. 407, Defs.' Reply at 3, 5.) As an initial matter, Plaintiff responds that the court's document production deadline does not apply to the Executive Summary because it was authored by an "independent witness." (R. 403, Pl.'s Resp. at 11.) But that witness was CFO Hankin, and this court previously rejected a similar argument when Plaintiff failed to seek responsive documents from witnesses such as Hankin. (R. 367 at 9-10 ("To the extent that LiiON argues as a blanket matter that it is not required to seek responsive documents from independent contractors or shareholders, that premise is incorrect.").) The court likewise rejects this argument here.

Plaintiff next argues that it produced versions[1] of the Executive Summary "on or about April 8, 2019, as part of [its] supplemental production following the partial granting of [a motion to compel]" on March 18, 2019. (R. 403, Pl.'s Resp. at 11.) The court finds merit in this argument. Plaintiff objected to producing the Executive Summary and was not ordered to do so until a week after the document production deadline, rendering that deadline inapplicable as to the Executive Summary. (Id.; see also R. 102; R. 103.) Plaintiff did not supplement its responses by March 29, 2019, (R. 102), but Plaintiff offers a sound explanation—all documents

---

[1] Plaintiff identifies these versions as "LiiON026299, LiiON26304, LiiON26308, LiiON026315, and LiiON026323." (R. 403, Pl.'s Resp. at 11.)

produced on April 8, 2019, were originally produced in February or March 2019 in "large combined PDFs." (R. 403, Pl.'s Resp. at 9.) As discussed above, Plaintiff separated the files and stamped them with revised Bates numbers, a task that Plaintiff says its vendor was not able to complete until April 5, 2019. (R. 403, Pl.'s Resp. at 11.) Given this explanation, Plaintiff offers good cause for its brief delay in producing the Executive Summary. Defendants' motion is denied as to this document.

As to the Due Diligence and Quickbooks, Defendants argue that Plaintiff produced these documents on July 15, 2019, months after the deadline and without Bates numbers. (R. 407, Defs.' Reply at 3.) Plaintiff claims that it produced these documents in response to a court order granting Defendants' fourth motion to compel and requiring the production of all documents relating to its potential sale to Lithium Werks. (R. 403, Pl.'s Resp. at 2, 12.) But according to Defendants, that order pertained only to the purchase agreement and term sheet and not to any other documents. (R. 407, Defs.' Reply at 6.) It is true that Defendants' motion to compel sought an order requiring Plaintiff to produce "the purchase agreement and term sheet, including all drafts, between LiiON and Lithium Werks." (R. 208, Defs.' 4th Mot. to Compel.) Even so, the court's order granting that motion spurred Plaintiff to gather and produce responsive sale-related documents, and Plaintiff disclosed those documents before the close of fact discovery. Here Plaintiff showed good cause for its delayed disclosure and, while Defendants suggest that they needed to review these documents before deposing Gary Gray, Plaintiff's Chief

7

Executive Officer ("CEO"), on June 26, 2019, (R. 396, Defs.' Mem. at 4), they still may question Plaintiff's damages expert about such documents. As such, Defendants have not shown prejudice based on the belated production of the Due Diligence and Quickbooks files. (See R. 407, Defs.' Reply at 6.) Defendants' motion therefore is denied as to these documents.

In terms of the Lithium document, Defendants argue that it was never produced, (R. 396, Defs.' Mem. at 8), but Plaintiff responds that it produced this document on July 15, 2019, as part of its disclosure of responsive sale-related documents. (R. 403, Pl.'s Resp. at 12-14). Plaintiff asserts that the Lithium document was authored by Mayo Tabb, an employee of Defendants, but not produced by Defendants in this case, even though Defendants sought such information from Plaintiff. (R. 403, Pl.'s Resp. at 13.) As a result, Plaintiff argues that barring its experts from relying on this document would unfairly reward Defendants for not disclosing their own document. The court agrees and denies Defendants' motion as to the Lithium document.

Defendants similarly argue that Plaintiff never produced the Cap Table v9 document. (R. 396, Defs.' Mem. at 8.) Defendants acknowledge, however, that Plaintiff timely objected to producing the Cap Table v9 document based on lack of relevance. (Id.) In any event, Plaintiff represents that it produced the document on July 15, 2019, in response to this court's order mandating production of files relating to its potential sale. (R. 403, Pl.'s Resp. at 12-13.) In their reply Defendants do not address the Cap Table v9 document or Plaintiff's response.

8

(R. 407, Defs.' Reply.) Without any argument from Defendants contesting Plaintiff's response, the court finds that Plaintiff has shown good cause for producing the Cap Table v9 document after the document production deadline but before the close of fact discovery. Accordingly, the court denies Defendants' motion as to this document.

**C.  Documents Never Produced**

Defendants allege that portions of the Expert Reports should be stricken to the extent the experts relied on documents that Plaintiff never produced. (R. 396, Defs.' Mem. at 6-8.) Federal Rule of Civil Procedure 26(a) requires parties, "without awaiting a discovery request," to produce "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." Under Rule 26(e) parties must supplement disclosures "in a timely manner" when they "learn[] that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Parties that do not comply with Rule 26(a) or (e) may be sanctioned under Rule 37(c)(1). To be sure, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Such an exclusion of evidence is "automatic and

9

mandatory," except where the failure to disclose was "substantially justified" or "harmless." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004).

Defendants challenge Leisner's reliance on never-produced personal tax returns from CEO Gray. (R. 396, Defs.' Mem. at 6-8.) Defendants point out that in his Expert Report Leisner relied "extensively" on Gray's personal Schedule C to IRS Form 1040 for the years 2010 to 2018, indicating that "[t]he best available data provided to [him] regarding the types of expenditures Plaintiff made in the formation of its Trade Secrets" were those tax returns. (Id.) Defendants contend that Gray's tax returns "unquestionably were called for by [Defendants'] document requests," (id. at 7), and that Plaintiff refused to produce such information pursuant to a "timely objection" based on a lack of relevance, (R. 407, Defs.' Reply at 5-6). Now that Leisner's Expert Report relies on Gray's tax returns, Defendants assert that portions of the report relying on those returns should be stricken because the returns were not produced in a timely manner. (R. 396, Defs.' Mem. at 6-8.)

In support of their argument Defendants cite cases striking expert opinions where underlying documents were not timely produced. (Id. at 7-8; R. 407, Defs.' Reply at 5-6.) Based on those cases, Defendants conclude that Plaintiff's experts are limited to considering documents produced before the document production deadline. (Id.) But the cases Defendants cite do not mandate the imposition of such a rule here. Central to those decisions was the fact that non-disclosure was neither substantially justified nor harmless. For example, in *Loggerhead Tools, LLC v. Sears Holdings Corp.*, No. 12 CV 9033, 2016 WL 5080034, at *2 (N.D. Ill. Sept. 20,

10

2016), the court determined that the defendant's expert could not rely on financial information that the party failed to disclose during discovery because the non-disclosure was not justified, and the plaintiff would have been prejudiced because expert discovery had closed nearly four months earlier. *See also Brown v. Wal-Mart Store, Inc.*, No. 09 CV 3339, 2018 WL 2011935, at *2 (N.D. Cal. April 27, 2018) (finding same where the defendant disclosed a "large chunk" of data less than one week before deadline for submitting expert rebuttal reports and three weeks before close of expert discovery).

There is no dispute that Defendants requested, and Plaintiff timely objected to disclosing tax returns on which Leisner relied in his Expert Report. (R. 396, Defs.' Mem. at 7; R. 403, Pl.'s Resp. at 14; R. 407, Defs.' Reply at 5-6.) In its response Plaintiff explains that during fact discovery it "did not believe [such documents] were relevant," and, as a result, it objected to producing personal tax returns. (R. 403, Pl.'s Resp. at 14.) In formulating his damages model, however, Leisner asked to review the tax returns and found information relevant to his opinions. (Id.) Using the standard set forth in Rule 37(c)(1), the court finds that Plaintiff's non-disclosure pursuant to a timely objection was substantially justified. During fact discovery Plaintiff had no reason to anticipate that Gray's personal tax returns would be relevant to its damages model, but upon review by its expert witness, Plaintiff discovered that the documents in fact were relevant.

The court also finds that the non-disclosure of Gray's tax returns was harmless. In determining whether non-compliance with Rule 26 resulted in harm

11

for purposes of Rule 37(c)(1), courts generally consider: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012) (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)). Here the applicable factors weigh in favor of a finding of no harm to Defendants. Leisner disclosed his consideration of the tax returns in his Expert Report, and Plaintiff offered to make those documents available to Defendants. Defendants no doubt would have preferred to receive the tax returns much earlier in this litigation, but unlike the facts presented in the cases cited by Defendants, here they still had an opportunity to review such data and submit their own expert report responding to the information included in the tax returns. Accordingly, the court denies Defendants' motion as to Gray's tax returns.

Defendants next challenge the fact that Plaintiff never produced the document identified as DEV Report 1_28-2020 ("Vilfer Expert Report"). (R. 396, Defs.' Mem. at 8.) Plaintiff explains that the document is an expert report offered by Don Vilfer of Digital Evidence Ventures, which Plaintiff timely disclosed as part of its Rule 26(a)(2) expert disclosures. (R. 403, Pl.'s Resp. at 1.) Defendants do not address the Vilfer Expert Report in their reply. (See R. 407, Defs.' Reply.) Given that Plaintiff appears to have complied with Rule 26(a)(2) in disclosing the Vilfer Expert Report, Defendants' motion is denied as to this document.

Finally, Defendants claim that, in setting forth "facts or data considered" in their Expert Reports, Fed. R. Civ. P. 26(a)(2)(B)(2), Dillard and Leisner did not identify documents by Bates numbers, rendering it nearly impossible for Defendants to determine the documents to which the experts refer and whether Plaintiff produced such documents. (See R. 396, Defs.' Mem. at 9-10.) As this court has held in this litigation, Plaintiff must identify documents with Bates numbers. (See R. 203; R. 217.) Thus, unless Plaintiff can identify—with Bates numbers—the documents considered by its experts, the experts are barred from relying on such documents and portions of the Expert Reports that refer to non-Bates numbered documents are stricken.

## Conclusion

For the foregoing reasons, the motion is granted in part and denied in part. Defendants' request for monetary sanctions is denied.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**