# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **LIION, LLC,** | CASE NO. 1:18-CV-06133 |
| Plaintiff, | JUDGE MARY M. ROWLAND |
| vs. | MAGISTRATE JUDGE YOUNG B. KIM |
| **VERTIV GROUP CORPORATION, et al.,** | |
| Defendants. | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

J. Erik Connolly
Nicole E. Wrigley
Christopher J. Letkewicz
Benesch Friedlander Coplan & Aronoff LLP
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606
econnolly@beneschlaw.com
nwrigley@beneschlaw.com
cletkewicz@beneschlaw.com

*Attorneys for Defendants Vertiv Corporation, Vertiv Group Corporation and Liebert Corporation*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... ii

INTRODUCTION ..................................................................................................... 1

LEGAL FRAMEWORK ........................................................................................... 2

ARGUMENT ............................................................................................................ 3

I.    LiiON's "facts" should be disregarded because it violated Local Rule 56.1. ...................... 3

II.   LiiON failed to identify a trade secret with the requisite particularity. ................................... 4

III.  LiiON fails to provide any evidence that its purported "trade secrets" qualify as "trade secrets." ............................................................................................................................... 8

    A.   LiiON did not present evidence showing that its alleged trade secrets have economic value and are not generally known. ................................................................................ 8

    B.   LiiON did not present evidence showing that it took steps to protect the secrecy of its alleged trade secrets. ...................................................................................................... 10

IV.   LiiON fails to provide evidence of any misappropriation by Vertiv. ............................... 11

    A.   LiiON does not have sufficient circumstantial evidence of misappropriation by Vertiv improperly using its trade secret. ............................................................................... 11

    B.   LiiON did not present evidence showing that Vertiv had access to a specific, identified trade secret. ........................................................................................................................ 12

    C.   LiiON did not present evidence showing that Vertiv substantially derived its product from a specific, identified trade secret. ........................................................................... 13

    D.   LiiON did not present evidence showing that Vertiv disclosed a specific, identified trade secret to Samsung. ..................................................................................................... 14

V.    LiiON has failed to present evidence to support its breach of contract claim. ...................... 17

CONCLUSION ........................................................................................................ 18

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ABC Acquisition Co., LLC v. AIP Prod. Corp.*,
No. 18-cv-8420, 2020 WL 4607247 (N.D. Ill. Aug. 11, 2020) .......................................2, 4, 8

*Act II Jewelry, LLC v. Wooten*,
318 F. Supp. 3d 1073 (N.D. Ill. 2018) ..........................................................................7

*Alvi v. Metro. Water Reclamation Dist. of Greater Chicago*,
No. 04-cv-5999, 2006 WL 1762032 (N.D. Ill. June 23, 2006)...................................3

*Am. Can Co. v. Mansukhani*,
742 F.2d 314 (7th Cir. 1984) .......................................................................11, 15

*AMP Inc. v. Fleischhacker*,
823 F.2d 1199 (7th Cir. 1987) ......................................................................2

*BondPro Corp. v. Siemens Power Generation, Inc.*,
463 F.3d 702 (7th Cir. 2006) ......................................................................10

*Cichon v. Exelon Generation Co.*,
401 F.3d 803 (7th Cir. 2005) ......................................................................4

*Composite Marine Propellers, Inc. v. Van Der Woude*,
962 F.2d 1263 (7th Cir. 1992) ..............................................................4, 13, 15

*Computer Care v. Serv. Sys. Enters., Inc.*,
982 F.2d 1063 (7th Cir. 1992) ......................................................................8

*Conner v. Ill. Dep't. of Nat. Res.*,
413 F.3d 675 (7th Cir. 2005) ......................................................................17

*Destiny Health, Inc. v. Conn. Gen. Life Ins. Co.*,
2015 IL App (1st) 142530........................................................................ *passim*

*Encap, LLC v. Scotts Co.*,
LLC, No. 11-cv-685, 2014 WL 4273302 (E.D. Wis. Aug. 28, 2014) .......................4

*Englehard v. Wyeth Consumer Healthcare, Ltd.*,
2014 WL 1227638 (N.D. Ill. March 25, 2014)........................................................9

*Glenayre Elecs. Ltd. v. Sandahl*,
830 F.Supp. 1149 (C.D. Ill. 1993) ......................................................................16

ii

*GlobalTap LLC v. Elkay Mfg. Co.*,
No. 13-cv-632, 2015 WL 94235 (N.D. Ill. Jan. 5, 2015)............................................................2

*Hill v. Best Med. Int'l*,
2011 WL 5082208 (W.D. Pa. Oct. 25, 2011) ........................................................................8

*IDX Sys. Corp. v. Epic Sys. Corp.*,
285 F.3d 581 (7th Cir. 2002) ............................................................................................2, 7

*Iron Workers Tri-State Welfare Plant v. Carter Constr.*,
530 F. Supp. 2d 1021 (N.D. Ill. 2008) .................................................................................17

*Knights v. Williams*,
No. 02-cv-5017, 2005 WL 1838427 (N.D. Ill. July 28, 2005) ...............................................4

*Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*,
342 F.3d 714 (7th Cir. 2003) ........................................................................................5, 7, 9

*Lynchval Sys. Inc. v. Chicago Consulting Actuaries, Inc.*,
No. 95-cv-1490, 1998 WL 151814 (N.D. Ill. Mar. 27, 1998) .....................................2, 13, 14

*Malec v. Sanford*,
191 F.R.D. 581 (N.D. Ill. 2000)............................................................................................3

*NEXT Payment Solutions, Inc. v. CLEAResult Consulting, Inc.*,
No. 17-cv-8829, 2020 WL 2836778 (N.D. Ill. May 31, 2020).................................... *passim*

*PolyOne Corp. v. Lu*,
No. 14-cv-10369, 2018 WL 4679577 (N.D. Ill. Sept. 28, 2018)........................................9, 12

*RKI, Inc. v. Grimes*,
177 F. Supp. 2d 859 (N.D. Ill. 2001) ...................................................................................12

*Rotec Indus. Inc. v. Mitsubishi Corp.*,
179 F.Supp.2d 885 (C.D. Ill. 2002) .....................................................................................16

*Rototron Corp. v. Lake Shore Burial Vault Co.*,
712 F.2d 1214 (7th Cir. 1983) ............................................................................................10

*Spitz v. Proven Winners N. Am., LLC*,
969 F. Supp. 2d 994 (N.D. Ill. 2013) ..............................................................................16, 17

*Stratienko v. Cordis Corp.*,
429 F.3d 592 (6th Cir. 2005) ..........................................................................................11, 16

*Tempco Elec. Heater Corp. v. Temperature Eng'g Co.*,
No. 02-cv-3572, 2004 WL 1254134 (N.D. Ill. June 3, 2004)...............................................17

iii

*TLS Mgmt. & Mktg. Servs., LLC v. Rodriguez-Toledo*,
  966 F.3d 46 (1st Cir. 2020) ........................................................................4

*Wendler & Ezra, P.C. v. American Intern. Group, Inc.*,
  521 F.3d 790 (7th Cir. 2008) .....................................................................9

**Statutes**

765 ILCS 1065/2 .......................................................................................7, 8

**Other Authorities**

N.D. Ill. L.R. 56.1 ..................................................................................3, 4, 16

## <u>INTRODUCTION</u>

Neither of the approaches LiiON adopted in its opposition leads to a valid claim against Vertiv. On the one hand, LiiON argues that Vertiv "must have" disclosed its purported trade secrets — its use of multiple current limit timers — to Samsung. But, LiiON concedes there is no evidence that Vertiv made any such disclosure. No witness testified it happened. No document shows it happened. And, in its opposition, LiiON does not present any evidence showing that (1) the use of multiple current limit timers with lithium-ion batteries was not generally known, (2) its use of multiple current limit timers has independent economic value, and (3) it took reasonable steps to keep its use of multiple current limit timers a secret. LiiON has no evidentiary support for a claim based on Vertiv's theoretical disclosure of its use of current limit timers to Samsung.

This forces LiiON to try another approach. LiiON alternatively argues that its alleged trade secret includes ***all*** the methodologies, values, operating parameters, and algorithms used to operate the battery management system ("BMS") in its lithium-ion battery cabinet. This everything-under-the-sun approach fails as well. In its opposition, LiiON never identifies a specific methodology, value, operating parameter, or algorithm used with its BMS. LiiON also did not present evidence showing that (1) a specific methodology, value, operating parameter, or algorithm satisfies the definition of a trade secret, (2) Vertiv had access to that specific methodology, value, operating parameter, or algorithm, (3) Vertiv used that specific methodology, value, operating parameter, or algorithm in its product, or (4) Vertiv disclosed that specific methodology, value, operating parameter, or algorithm to Samsung.

LiiON's opposition, thus, amounts to throwing spaghetti against the wall. LiiON talks about one aspect of its BMS when trying to satisfy the requirement of identifying the trade secret. LiiON talks about another aspect of its BMS when trying to establish that it has a valid trade secret. It talks about yet another aspect of its BMS when trying to show that Vertiv had access to its trade secret, another aspect when trying to show that Vertiv is using its trade secret, and another aspect when trying to show that Vertiv disclosed its trade secret to Samsung. None of the spaghetti sticks. LiiON has not presented evidence to support any claim against Vertiv.

**LEGAL FRAMEWORK**

LiiON's inability to demonstrate that it has valid claims is illustrated by returning to the basic: the process plaintiffs must follow to show they have a valid trade secret claim. Most trade secret misappropriation claims follow the same pattern at summary judgment. The threshold question the plaintiff must answer at the outset—with specificity and citation to admissible evidence—is identification of its trade secret. Without a "particularized" answer to this question, the defendant cannot meaningfully defend itself. Nor can the Court determine whether the plaintiff satisfies each element of its claim to justify trial.[1]

Take a coveted apple pie recipe, as an example. A seller of apple pies cannot prevail on an action for misappropriation of its "secret recipe" without first "identifying the secret recipe itself." *NEXT Payment Solutions, Inc. v. CLEAResult Consulting, Inc.*, 2020 WL 2836778, at *15 (N.D. Ill. May 31, 2020). Asserting that the recipe contains "confidential ingredients," or that it is derived from a proprietary cooking "methodology," is insufficient. The plaintiff must identify the ingredients, their ratios, and the steps necessary to make the pie. The plaintiff cannot leave it to the court to "hunt" through the record searching for the secret recipe. *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 584 (7th Cir. 2002); *accord AMP Inc. v. Fleischhacker*, 823 F.2d 1199, 1203 (7th Cir. 1987) (refusing to "search through the record in an endeavor to locate material" that constitutes the "particularized trade secrets actually at risk").

The Seventh Circuit requires particularity in defining a trade secret because the alternative is unworkable. Imagine a plaintiff that generally describes a methodology for making apple pies but does not identify that methodology with particularity or offer evidence of what that

---

[1] *See AMP Inc. v. Fleischhacker*, 823 F.2d 1199, 1203 (7th Cir. 1987) (Plaintiff "failed throughout this litigation to identify any particularized trade secrets actually at risk."); *ABC Acquisition Co., LLC v. AIP Prod. Corp.*, No. 18-cv-8420, 2020 WL 4607247, at *9 (N.D. Ill. Aug. 11, 2020) ("the combination itself must be delineated with some particularity in establishing its trade secret status"); *GlobalTap LLC v. Elkay Mfg. Co.*, No. 13-cv-632, 2015 WL 94235, at *6 (N.D. Ill. Jan. 5, 2015) ("The court cannot analyze whether a piece of information [satisfies the criteria of a trade secret] without first knowing, with particularity, what information comprises the secret."); *Lynchval Sys. Inc. v. Chicago Consulting Actuaries, Inc.*, No. 95-cv-1490, 1998 WL 151814, at *5 (N.D. Ill. Mar. 27, 1998) ("Lynchval must show, with particularity, that the defendants misappropriated 'concrete secrets' and not 'broad areas of technology.'").

methodology entails. The court would be at a loss. Everyone who sells apple pies has a methodology for making them. If the plaintiff does not identify its methodology with particularity, the court has no way of determining whether (1) plaintiff's particular methodology meets the requirements of a trade secret, (2) plaintiff's particular methodology was disclosed to the defendant, and (3) defendant improperly used or disclosed plaintiff's particular methodology.

LiiON's opposition describes an apple pie but fails to set forth evidence that identifies the exact components of its so-called secret recipe. Throughout the opposition, LiiON tells the Court that its trade secret includes using timers for its BMS at certain values, operating parameters, and algorithms. But LiiON never identifies those values, operating parameters, or algorithms— including those that must be used to facilitate what it calls a high-rate discharge for a certain period of time. As a result, the Court cannot possibly conclude that LiiON has an algorithm, methodology or procedure that (1) qualifies as a trade secret, (2) was disclosed to Vertiv, and (3) was either used by Vertiv in its own battery cabinet or disclosed to Samsung for use in its battery cabinets. LiiON's assertion that it has a secret recipe (or multiple secret recipes) is no substitute for actually identifying that secret recipe for the Court.

## **ARGUMENT**

### I.    **LiiON's "facts" should be disregarded because it violated Local Rule 56.1.**

Throughout its opposition, LiiON either makes assertions without citing evidence, or references "facts" that appear solely in LiiON's brief and not in any L.R. 56.1 Statement of Additional Facts. (*See* Opp. at 16).[2] None of that material is properly before the Court. "Rule 56.1(b)(3)(B) 'provides the *only* acceptable means of…presenting additional facts.' Simply providing additional facts in one's responsive memorandum is insufficient to put those facts before the Court." *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000).[3] Indeed, LiiON's disregard of L.R. 56.1 "undermines the entire reason for the Local Rule 56 framework…." *Alvi v. Metro. Water*

---

[2] "Opp." refers to Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment (Dkt. 458).

[3] All internal citations and quotation marks have been omitted, and emphasis left in original, unless otherwise noted.

*Reclamation Dist. of Greater Chicago*, 2006 WL 1762032, at *2 (N.D. Ill. June 23, 2006). "The Seventh Circuit has consistently and repeatedly upheld a district court's discretion to require strict compliance with L.R. 56.1." *Knights v. Williams*, 2005 WL 1838427, at *1 (N.D. Ill. July 28, 2005).

Here, LiiON's failure to adhere to L.R. 56.1 prejudices Vertiv because, by not incorporating its "facts" and evidence into a L.R. 56.1 Statement of Additional Facts, LiiON has deprived Vertiv of a mechanism to respond. Vertiv has accordingly submitted Appendix 1 herewith solely to address LiiON's numerous, improper record citations. The Court should either refuse to accept LiiON's improper citations altogether or consider Vertiv's Appendix 1. *See Cichon v. Exelon Generation Co.*, 401 F.3d 803, 808 (7th Cir. 2005) (refusing "to accept a majority of [the non-movant's] proposed facts in light of the fact that he had failed to comply with Local Rule 56.1" when he "set forth a number of his own proposed facts" but "failed to list" them "in a separate statement of facts").

## II.   LiiON failed to identify a trade secret with the requisite particularity.

LiiON does not dispute that the Seventh Circuit requires identification of a trade secret with particularity. (Mem. 6–7.)[4] "It is not enough to point to broad areas of technology and assert that something there must have been secret and misappropriated." *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992). Instead, the plaintiff "must tell" the defendant and Court "specifically what the secret is." *Encap, LLC v. Scotts Co., LLC*, 2014 WL 4273302, at *4 (E.D. Wis. Aug. 28, 2014) (applying controlling Seventh Circuit precedent); *ABC Acquisition Co., LLC v. AIP Products Corp.*, 2020 WL 4607247, at *9 (N.D. Ill. Aug. 11, 2020) (plaintiff cannot "just identify a kind of technology and then ask the court to pore over its filings in search of secrets"). LiiON must also "separat[e]" its purported trade secret "from the other information" that comprises its product, so the Court can "determine which aspects [a]re known to the trade, and which [a]re not." *NEXT Payment Solutions*, 2020 WL 2836778, at *11; *see also*

---

[4] "Mem." refers to Defendants' Memorandum in Support of Summary Judgment (Dkt. 428).

_TLS Mgmt. & Mktg. Servs., LLC v. Rodriguez-Toledo_, 966 F.3d 46, 54 (1st Cir. 2020) (trade secrets "were not identifiable because TLS did not separate the purported trade secrets from the other information that was known to the trade").

While LiiON does not dispute any of these propositions, it contends that Vertiv is exaggerating LiiON's burden of proof. (Opp. at 7.) LiiON insists that "the actual threshold" for identifying a trade secret "is much lower" and not so "rigorous." (_Id._) But LiiON never offers any authority for the "much lower" threshold it believes applies at summary judgment. The sole Seventh Circuit case LiiON cites, _Learning Curve Toys, Inc. v. PlayWood Toys, Inc_., 342 F.3d 714, 723 (7th Cir. 2003), is inapposite. There, the plaintiffs **did** provide evidence that identified their purported trade secret in detail. The parties agreed it was a "novel" "design concept" to make a new type of toy railroad track. _Id_. at 719. The plaintiffs identified both the exact design concept and a "cut piece of track" that illustrated their design concept. _Id_. The issue was not whether the design concept was sufficiently concrete, but whether it qualified as a "trade secret" as being not generally known outside of the plaintiff's business. _Id._ at 722.

Here, on the other hand, LiiON's claim fails the threshold inquiry: LiiON can neither identify nor evidence a "specific and concrete" trade secret. _NEXT Payment Solutions_, 2020 WL 2836778, at *1. Every lithium-ion cabinet must have a BMS that regulates the lithium-ion batteries. (SOF ¶ 14.)[5] A BMS is necessary because of the inherent nature of lithium-ion batteries. LiiON does not dispute that use of a BMS that sets limits for the batteries is not unique. (_See_ SOF Resp. ¶ 16.)[6] And LiiON does not claim its BMS as a trade secret. (_See_ LiiON SOAF ¶ 12.)[7] LiiON's purported trade secrets therefore must relate to how exactly it programmed its BMS to operate and control the lithium-ion batteries with the use of current limit timers to achieve its claimed benefits.

---

[5] "SOF" refers to Defendants' Rule 56.1 Statement of Undisputed Material Facts in Support of Their Motion for Summary Judgment (Dkt. 429).

[6] "SOF Resp." refers to Plaintiff's Response to Defendants' 56.1 Statement of Undisputed Facts (Dkt. 459).

[7] "LiiON SOAF" refers to LiiON's Statement of Additional Undisputed Facts (Dkt. 459 at 33).

The problem is that LiiON never goes beyond this type of general description to identify a specific method, value, operating parameter, or algorithm that it uses to get the desired result.

The absence of such evidence is made stark by LiiON's opposition. LiiON first tries to identify a purported trade secret by highlighting its response to Vertiv's Interrogatory No. 8. (Opp. at 3–4.) But LiiON's interrogatory response merely "describes what [LiiON's] alleged trade secrets *do*, not what they *are*." *NEXT Payment Solutions*, 2020 WL 2836778, at *13. This is not enough. Indeed, LiiON's interrogatory response raises more questions than it answers:

| What LiiON claims is a trade secret . . . | What LiiON fails to identify . . . |
| --- | --- |
| ███████████████████████ ███████████████████████ (Opp. at 4.) | What are the values? <br><br> What is the design? <br><br> What aspect of the design is a trade secret? |
| ███████████████████████ ███████████████████████ (Opp. at 4.) | What are the operating parameters? <br><br> What are the algorithms? <br><br> How do they change? |
| ███████████████████████ ███████████████████████ (Opp. at 4.) | What are the operating parameters? <br><br> What are the algorithms? <br><br> What type of battery chemistry? |
| ███████████████████████ ███████████████████████ (Opp. at 4.) | What is the methodology? <br><br> Is there more than one methodology? <br><br> Is the entire methodology a trade secret, or only certain components of the methodology? |

LiiON's descriptions tell the Court nothing specific about LiiON's BMS, generally, or current limit timers, specifically. No one reading LiiON's descriptions could use them to program a BMS, set operating parameters, or configure current limit timers. The descriptions tell the Court that LiiON has parameters, algorithms and configurations, but not what they are. The Court cannot write-down LiiON's secret recipe based on these descriptions, and LiiON does not show how they would be of any value to Vertiv or anyone else developing a BMS for lithium-ion battery cabinets.

LiiON also relies on the "succinct description" that its "industry expert," Brian Dillard, gave of LiiON's purported trade secret coupled with its interrogatory response. (Opp. at 4.) But all Dillard does is describe vague aspects of LiiON's process to achieve the performance of its product. (Opp. at 4 (asserting that LiiON's trade secrets ███████████████████████████ ████████████████████████████████████████████████████████████.) Dillard never identifies a specific methodology, value, operating parameter, or algorithm used by LiiON. He does not identify anything with specificity, and that shortcoming precludes LiiON's reliance upon him as a source for describing its alleged trade secret. *See NEXT Payment Solutions, 2020 WL 2836778, at \*11* ("Claiming that everything [is] a trade secret – without identifying anything with specificity – mean[s] that nothing [is] protected.").

None of the other evidence LiiON cites suffices either. In total, LiiON directs the Court to more than a dozen exhibits and deposition excerpts, (*see* Opp. at 4–8), as if through the volume of its submission a discernable trade secret might emerge. But that is not how this process works. LiiON was supposed to identify a trade secret — not "invite the court to hunt through" the record in search of one. *IDX Systems*, 285 F.3d at 584. Moreover, as discussed in Appendix 1, the Court would come up empty should it choose to conduct the hunt. None of the evidence that LiiON cites describes with a particularity an actual trade secret — as opposed to describing characteristics of how LiiON's BMS works — nor does any of LiiON's evidence separate its supposed "trade secrets" from other generally known information related to its product.[8]

---

[8] LiiON tries to compare itself to the plaintiff in *Act II Jewelry, LLC v. Wooten*, 318 F. Supp. 3d 1073, 1089 (N.D. Ill. 2018). But LiiON and that plaintiff could not be more different in their identification of a trade secret. In *Act II Jewelry*, the plaintiff specified the exact jewelry styles (some of which were unreleased) for which it claimed trade secret protection. The plaintiff also identified specific documents that contained its alleged trade secrets. The plaintiff alleged that one of the defendants downloaded those documents from one of the plaintiff's work computers. Here, by contrast, LiiON cannot identify any specific value, operating parameter, algorithm, or methodology that the Court can examine. Nor has LiiON identified a single document setting forth this information. (*See* Appendix 1.)

**III.    LiiON fails to provide any evidence that its purported "trade secrets" qualify as "trade secrets."**

LiiON does not dispute that an alleged trade secret must satisfy two separate statutory requirements to qualify as a trade secret. *See Learning Curve Toys*, 342 F.3d at 721–22 (citing 765 ILCS 1065/2(d)). "The first requirement, that the information be sufficiently secret to impart economic value because of its relative secrecy, precludes trade secret protection for information generally known or understood within an industry even if not to the public at large." *Id.* at 722. "The second requirement, that the plaintiff take reasonable efforts to maintain the secrecy of the information, prevents a plaintiff who takes no affirmative measures to prevent others from using its proprietary information from obtaining trade secret protection." *Id.* LiiON satisfies neither.

**A.    LiiON did not present evidence showing that its alleged trade secrets have economic value and are not generally known.**

LiiON argues it has evidence that the alleged trade secrets are not generally known because its expert, Brian Dillard, opines in his unsworn expert report that: ███████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████ (Opp. at 6 (quoting Opp. Ex. 4 at 20).) This argument does not work for three reasons.

First, Dillard does not identify the "particular scheme" used by LiiON. His expert opinion relates only to the idea of using current limit timers. But LiiON cannot dispute that the use of multiple current thresholds and timers is generally known by individuals and companies working with lithium-ion batteries. (SOF ¶ 43.) Without identifying LiiON's "particular scheme," the Court cannot find that LiiON has offered evidence that its "particular scheme" is not generally known and derives economic value from the fact that it is not generally known. *ABC Acquisition Co.*, 2020 WL 4607247, at *9.

Second, LiiON concedes that its experts have done no analysis and offer no opinions regarding the independent economic value of its "particular scheme" for using current limit timers.

8

(SOF Resp. ¶ 60.) LiiON discusses the amount it spent developing its lithium-ion battery cabinets. (Opp. at 14.) But its lithium-ion battery cabinets are not the alleged trade secret. They are the product LiiON sold. LiiON needed to offer evidence showing that its "particular scheme" for using current limit timers has independent economic value. That LiiON has failed to do. *See Computer Care v. Serv. Sys. Enters., Inc.*, 982 F.2d 1063, 1073–74 (7th Cir. 1992) (concluding no protectable trade secret existed where "[t]here was no evidence that [plaintiff] had expended substantial time or money" developing claimed trade secrets); *Hill v. Best Med. Int'l*, 2011 WL 5082208, at *13–14 (W.D. Pa. Oct. 25, 2011) (granting summary judgment on trade secret claim where plaintiff offered no evidence as to the cost to develop the alleged trade secrets).

LiiON tries to get around its absence of evidence by arguing that it was the first lithium-ion battery cabinet to achieve UL certification and had a higher operating temperature than Samsung's battery cabinet. (Opp. at 13.) But this is not enough. "[M]erely being the first or only one to use particular information does not in and of itself transform otherwise general knowledge into a trade secret" because, if so, "the first person to use the information, no matter how ordinary or well known, would be able to appropriate it to his own use under the guise of a trade secret." *Learning Curve Toys*, 342 F.3d at 723. Moreover, LiiON did not introduce any evidence showing that it achieved these milestones as a result of its "particular scheme" for using current limit timers.

Third, Dillard's opinion that LiiON has a particular scheme is unsupported and inadmissible. LiiON concedes Dillard did not research or review any patents or publications relating to BMSs other than those identified by Vertiv's expert, Jack Wagner, and did not interview anyone regarding BMSs other than Tom Lynn. (SOF Resp. ¶ 55.) Nowhere in the opposition, or Dillard's report, is there an explanation of the methodology Dillard used to reach his opinion regarding the uniqueness of LiiON's scheme for its timers. All Dillard provides is a "bottom-line" conclusion, which is inadmissible and cannot be used to create an issue of fact at summary judgment. *See, e.g., Wendler & Ezra, P.C. v. American Intern. Group, Inc.*, 521 F.3d 790, 791–92 (7th Cir. 2008) (affirming exclusion of expert affidavit at summary judgment and holding "[a]n expert who supplies nothing but a bottom line supplies nothing of

value to the judicial process"); *Englehard v. Wyeth Consumer Healthcare, Ltd.*, 2014 WL 1227638 at *2–3 (N.D. Ill. March 25, 2014) (Kendall, J.) (excluding expert who "d[id] not cite any adverse reports, clinical trials, product advisories … other industry materials," or "scientific or medical literature that supports his opinions"); *PolyOne Corp. v. Lu*, No. 14-cv-10369, 2018 WL 4679577, at *8 (N.D. Ill. Sept. 28, 2018) (Shah, J.) (same, where expert in trade secrets case "did not do a literature search to see whether the allegedly unique features of the formulas are publicly available").

### B. LiiON did not present evidence showing that it took steps to protect the secrecy of its alleged trade secrets.

LiiON's patent dooms its attempt to establish that it took steps to protect the secrecy of its "particular scheme" for using current limit timers. LiiON's patent discloses its use of four current limit timers with four current and time thresholds. (SOF Resp. ¶ 49.) The patent further explains:

> If the batteries exceed the safety thresholds, as shown for example by the thresholds for lithium-ion batteries listed in FIG.6 [which set forth current and time thresholds] the battery management and monitoring system may automatically respond by opening the contractors to prevent further discharge.

(SOF Resp. ¶48; *see also* SOF Resp. ¶49.) LiiON concedes that the patent "discloses the mechanics and implementation of the [LiiON] current limit timers." (*Id.* ¶48.) LiiON's disclosures in its patent preclude finding that its "particular scheme" for current limit timers constitutes a trade secret. *See Rototron Corp. v. Lake Shore Burial Vault Co.*, 712 F.2d 1214, 1215 (7th Cir. 1983) (holding that plaintiff "had no protectable trade secret after issuance of its patents"); *BondPro Corp. v. Siemens Power Generation, Inc.*, 463 F.3d 702, 706–07 (7th Cir. 2006) ("Publication in a patent destroys the trade secret, because patents are intended to be widely disclosed.").

In response, LiiON argues that the "actual methodology for using these current limit timers and its trade secrets," including algorithms for its current limit timers, were not disclosed in its patent. (Opp. at 9–10.) There are two problems with that argument. First, LiiON does not identify the actual methodology or algorithms. It is one thing for LiiON to say that the patent does not disclose its secret recipe. That is a conclusory statement, not evidence. It is another thing for LiiON

to identify the secret recipe so the Court can evaluate whether it is disclosed in the patent (and thus not kept secret). The Court has no way of finding that LiiON's actual methodology was not disclosed in its patent because LiiON never identifies its actual methodology.

Second, LiiON has not provided the Court with any evidence proving that it took reasonable steps to keep its "actual methodology" a secret, even assuming it was not disclosed in the patent. Absent identification of the actual methodology, the Court has no way of reviewing the record to determine whether LiiON, in fact, kept that information secret from third parties. What is the "actual methodology" the Court is looking for to determine if it was disclosed to third parties? The Court cannot answer that question, so its review of the record is futile. LiiON has the burden of proving it took steps to protect the secrecy of the "actual methodology." The Court cannot find that LiiON satisfied that burden without knowing what the "actual methodology" is.

## IV.    LiiON fails to provide evidence of any misappropriation by Vertiv.

LiiON concedes that it has no direct evidence that Vertiv used any of its alleged trade secrets or that Vertiv disclosed any of them to Samsung—whatever the trade secrets may be. (SOF Resp. ¶¶ 67–68, 70–71.) Instead, LiiON argues that it has "circumstantial evidence" to establish misappropriation. (*See* Opp. at 21–23.) But the "circumstantial evidence" LiiON cites does not satisfy the test used in the Seventh Circuit to permit an inference of misappropriation based on circumstantial evidence.

### A.    LiiON does not have sufficient circumstantial evidence of misappropriation by Vertiv improperly using its trade secret.

"[S]ufficient circumstantial evidence of use in trade-secret cases must demonstrate that (1) the misappropriating party had access to the secret and (2) the secret and the defendant's design share similar features." *Destiny Health, Inc. v. Conn. Gen. Life Ins. Co.*, 2015 IL App (1st) 142530, ¶ 32 (citing *Stratienko v. Cordis Corp.*, 429 F.3d 592, 600 (6th Cir. 2005)). For the second prong, "similarity" in "features" means that the defendant's product must "substantially derive" from the plaintiff's trade secret. *See Am. Can Co. v. Mansukhani*, 742 F.2d 314, 331 (7th Cir. 1984) ("Plaintiff was entitled to protection only if defendants' new inks were substantially derived from

11

plaintiff's trade secrets and not from public information and [defendant's] general skill, experience and knowledge."). "To satisfy the use requirement, [plaintiff] must [also] show that [defendant] could not have created its [product] without the use of [plaintiff's] trade secrets." *Destiny Health, 2015 IL App (1st) 142530, ¶ 28*.

**B.**   **LiiON did not present evidence showing that Vertiv had access to a specific, identified trade secret.**

To establish access, LiiON argues that its employees  (Opp. at 16.) However, LiiON does not identify that was provided to Vertiv. LiiON's argument is akin to saying that LiiON told Vertiv its secret recipe for making apple pies, but never identifying for the Court the exact recipe and showing that Vertiv had access to that specific recipe.

The evidence LiiON cites in support of its access argument does not help. First, LiiON cites Exhibit 42 (VERTIV20169). (Opp. at 16.) Exhibit 42 is a May 20, 2014 email that discusses the basic set-up and operation of LiiON's battery cabinets with Vertiv's UPS. Nothing in the email discusses any feature of LiiON's BMS that LiiON has claimed is a trade secret. The email is a red herring. LiiON hopes the Court mistakenly concludes that Vertiv had access to its "trade secret" because a document shows that Vertiv knew something about LiiON's battery cabinets. LiiON also sent this email to Vertiv ***before*** the parties entered into a non-disclosure agreement, so it is unclear why LiiON would be sharing its "trade secret" with Vertiv at that time.

Next, LiiON cites to deposition testimony from Tom Lynn. (Opp. at 16.) Lynn testified that Vertiv (LiiON Ex. 1 at 342:9–22.) But Lynn did not identify the "process" or "analytics" that Vertiv allegedly learned. Nor did LiiON identify in its opposition any evidence explaining or identifying the specifics of what Vertiv allegedly learned. These gaps make Lynn's testimony another red herring. LiiON needed to show that Vertiv had access to whatever

it claims is a trade secret and that ***that information*** was either used by Vertiv in its HPL or disclosed to Samsung. Lynn's testimony shows that Vertiv had access to ***some*** information, not that Vertiv had access to the alleged trade secret.[9]

### C.   LiiON did not present evidence showing that Vertiv substantially derived its product from a specific, identified trade secret.

LiiON's theory of misappropriation also fails because it presents no evidence showing that Vertiv substantially derived its lithium-ion battery cabinet, the HPL, from a specific, identified trade secret. LiiON's chief fact witnesses, Gary Gray and Tom Lynn, are unaware of any similarities between LiiON's and Vertiv's products that implicate LiiON's claimed trade secrets. (SOF Resp. ¶¶ 62–64.) Lynn's admissions—that he is unaware of LiiON's "trade secrets" or "confidential information" being "used with Vertiv's HPL"—are particularly devastating. (*Id.* ¶ 63.) LiiON relies on his testimony to show that Vertiv had access to LiiON's trade secrets, yet he cannot find any similarity between those trade secrets and the battery cabinet Vertiv developed. (*Compare id.* with Opp. at 16 (citing Ex. 1).)

LiiON also concedes that its expert, Brian Dillard, is unaware of similarities between LiiON's and Vertiv's lithium-ion battery cabinets that implicate LiiON's trade secret (SOF Resp. ¶ 65.). Dillard is unaware of any similarity between Vertiv's and LiiON's algorithms, source code, procedures, or methodologies for their respective lithium-ion battery cabinets. (*Id.* ¶ 66.) And, absent from the record is any evidence that Mr. Dillard completed a "side-by-side comparison" to "identify any specific" trade secrets that Vertiv "used in the development of its" lithium-ion battery cabinet. *See Destiny Health*, 2015 IL App (1st) 142530, ¶ 34; *Lynchval*, 1998 WL 151814, at *5 (Plaintiff, "under its burden of production, is supposed to produce evidence of its own [product]

---

[9] This case is nothing like the authority LiiON cites to prove access to trade secrets through circumstantial evidence. *See Lu*, 2018 WL 4679577, at *12 (plaintiff "ha[d] evidence that defendants had access to" plaintiff's secret soft plastic formula through "contact" with plaintiff's former employee who had "access to the formula," "sometimes at critical points in the development of [the] formula"); *RKI, Inc. v. Grimes*, 177 F. Supp. 2d 859, 863 (N.D. Ill. 2001) (plaintiff had sufficient circumstantial evidence of access where the defendant: "accessed" the plaintiff's "computers" two days before he resigned; deleted "60 megabytes of data . . . from his home computer after th[e] litigation was instituted"; and "defragmented" his home computer "on four occasions" the month after he resigned).

with which the trier of fact can compare to [defendant's product] to determine whether misappropriation has occurred.").

Absent evidence relating to its alleged trade secrets, LiiON highlights general similarities between its battery cabinet and Vertiv's HPL. LiiON contends—with no record citations—that "Vertiv's cabinet" shares "common" "capabilities" with "LiiON's system." (Opp. at 18.) These "capabilities" allegedly include ███████████████████████████████████████████ ███████████████████████████████████████████████████████ (*Id.*) But those are simply generic descriptions of what each of the battery cabinets do. The descriptions are not trade secrets. *See Composite Marine Propellers*, 962 F.2d at 1266 (rejecting plaintiff's attempt to equate a generally known "business strategy" with a trade secret); *Destiny Health*, 2015 IL App (1st) 142530, ¶ 34 (same); *Lynchval*, 1998 WL 151814, at *6 (granting summary judgment where defendant "incorporat[ed]" "commonly used" criteria that "do not constitute trade secrets").

       **D.**    **LiiON did not present evidence showing that Vertiv disclosed a specific, identified trade secret to Samsung.**

The record is devoid of any evidence to support LiiON's theory of misappropriation by disclosure. LiiON bases this theory on the notion that Vertiv "must have" disclosed trade secrets to Samsung, or else Samsung could not have created a lithium-ion battery cabinet with a high-rate discharge. This notion fails for several reasons.

First, LiiON's opposition identifies no evidence that Vertiv disclosed anything to Samsung about LiiON's product, much less a specific, identified trade secret. The only evidence LiiON offers to imply disclosure is a December 2015 email chain involving Vertiv employees Justin Mayle and Jim Martin. (Opp. at 22–23.) No one from Samsung is on this email. It is discussing ***Vertiv's internal testing*** of LiiON's and Samsung's battery cabinets. In his deposition, Mayle explained that the LiiON and Samsung test spec documents describe the tests performed ***on the Vertiv UPS*** with either the LiiON battery cabinet or the Samsung battery cabinet. (Opp. Ex. 58 at 326–27.) LiiON does not, and cannot, claim that Vertiv's own test specification document used by

14

Vertiv to test Vertiv's UPS product somehow disclosed LiiON's trade secret to Samsung. (*Id.* at 327–28.)

Second, LiiON's opposition does not identify even one specific trade secret that Samsung actually used in its battery cabinet. LiiON makes no attempt to show that Samsung's battery cabinet uses LiiON's "proprietary software," "source code containing proprietary algorithms," "patents," "pending patents," "procedures," "methodologies," or any other purported trade secret. (*See* Dkt. 106 at 3, 5.) Nor is there any evidence that LiiON's expert, Brian Dillard, conducted a "side-by-side comparison" between the LiiON and Samsung battery cabinets to identify overlapping, novel features. *See Destiny Health*, 2015 IL App (1st) 142530 ¶ 34; *Lynchval*, 1998 WL 151814, at \*6. The Court cannot assume that Vertiv disclosed one of LiiON's specific trade secrets to Samsung absent evidence showing that Samsung actually used one of LiiON's specific trade secrets.

Indeed, LiiON concedes that Samsung's battery cabinet is vastly different from its own. (*See* SOF Resp. ¶¶ 74–76.) LiiON concedes that it and Samsung: use different lithium-ion chemistries to make their respective battery cabinets (*id.* ¶ 74); have different current and time thresholds for their current limit timers (*id.* ¶ 75); employ different temperature thresholds (*id.* ¶ 76); program their battery cabinets to react differently when thresholds are reached (*id.*); and display different performance lines and metrics on their battery cabinets (*id.* ¶ 77). These differences preclude any inference that Samsung used LiiON's trade secrets. *See Composite Marine Propellers*, 962 F.2d at 1266 (noting that the record lacked "any evidence that defendants used [their alleged] knowledge" of plaintiff's trade secrets, as it was "undisputed that" the defendants' product materially "differ[ed] from [plaintiff's] products").

Third, even if the Court were to find a similarity between LiiON's and Samsung's battery cabinets, LiiON still has not identified the circumstantial evidence necessary to support an inference of disclosure by Vertiv. LiiON's opposition does not explain (a) how Samsung "substantially derived" its battery cabinet from a LiiON trade secret, *Mansukhani*, 742 F.2d at 331; or (b) how Samsung could not have created its battery cabinet without the use of a LiiON trade

secret. *Destiny Health*, 2015 IL App (1st) 142530, ¶ 28. The Court cannot assume that Vertiv disclosed LiiON's trade secrets to Samsung, when LiiON introduces no evidence showing how Samsung must have used a trade secret to build its battery cabinet. *See Composite Marine Propellers*, 962 F.2d at 1267 ("Missing is evidence that [the allegedly misappropriating party] used" any trade secret.).

Looking past these deficiencies, LiiON asserts that its "technological improvements and trade secrets appeared in Samsung's technology." (Opp. at 21.) LiiON supports this premise by contending that, from 2015 through 2017, Samsung's battery cabinet ███████████████████ ██████████████████████████████████████████████████ (*Id.*) These are assertions without evidence. LiiON offers no citation to the record or to its L.R. 56.1 Statement of Additional Facts. And, the contention is immaterial: LiiON never identifies the specific ████████████████████ that it claims Samsung mirrored. *See Stratienko*, 429 F.3d at 601–02 (Plaintiff "must demonstrate similarity between his *secret idea* (not his product in general) and [defendant's] device."); *Destiny Health*, 2015 IL App (1st) 142530, ¶ 34.

LiiON also asserts that Samsung ██████████████████████████████ ██████████████████████████████████████████████████ ███████ (Opp. at 22.) LiiON, however, offers no evidence to suggest that Samsung (a) obtained information about LiiON's current limit timers from Vertiv and (b) used that information to ████████████████████████ LiiON references. LiiON's *ipse dixit* conclusion that Samsung "must have" misappropriated a trade secret is insufficient. *See Rotec Industries, Inc. v. Mitsubishi Corp.*, 179 F. Supp. 2d 885, 895–96 (C.D. Ill. 2002) (concluding that plaintiff's "circumstantial evidence" that defendant "must have used" plaintiff's trade secret was based "solely on unsupported speculation," entitling defendant to summary judgment); *Glenayre Electronics, Ltd. v. Sandahl*, 830 F. Supp. 1149, 1153 (C.D. Ill. 1993) ("circumstantial evidence" was nothing more than "speculation and innuendo" and "too thin a reed to withstand" summary judgment).

**V.      LiiON has failed to present evidence to support its breach of contract claim.**

The deficiencies in LiiON's breach of contract claims are insurmountable. First, LiiON still fails to identify any evidence to support an alleged breach. The only contract at issue is the NDA the parties executed in 2014. LiiON alleges that Vertiv breached the NDA either by "utilizing" LiiON's "trade secrets" or by "divulging" them to third-parties. (Dkt. 135 ¶¶ 174, 179, 183.) LiiON thus pegged its breach of contract claim to its claim for misappropriation of trade secrets. Because LiiON cannot show that Vertiv used or disclosed any alleged trade secret, LiiON's corresponding claim for breach of contract necessarily must fail. *See Spitz v. Proven Winners N. Am., LLC*, 969 F. Supp. 2d 994, 1006–07 (N.D. Ill. 2013) (dismissing parallel theories of breach of confidentiality and trade secret misappropriation at summary judgment).[10]

Second, LiiON has no evidence to support an independent breach of contract claim for information "unrelated to [its alleged] trade secret…." (Opp. at 24.) LiiON tries to uncouple its breach of contract claim from its misappropriation claim by (a) pointing to other allegedly "confidential information" distinct from a trade secret, and (b) asserting that Vertiv disclosed such information in breach of the NDA. But this new theory is both procedurally and substantively defective. From a procedural perspective, LiiON cannot introduce an additional theory of liability at summary judgment. (*Compare* Opp. at 24–25 *with* Dkt. 135 ¶¶ 174, 179, 183.) *See Tempco Elec. Heater Corp. v. Temperature Eng'g Co.*, No. 02-cv-3572, 2004 WL 1254134, at *7 (N.D. Ill. June 3, 2004) (prohibiting plaintiff from "attempting to constructively amend its complaint at the summary judgment stage" by adding a claim that "[did] not appear anywhere" in the "clear and limited theory" contained in the operative complaint); *Conner v. Ill. Dep't of Nat. Res.*, 413 F.3d 675, 679 (7th Cir. 2005) (same); *Iron Workers Tri-State Welfare Plant v. Carter Constr.*, 530 F. Supp. 2d 1021, 1025 (N.D. Ill. 2008) (same, because "[n]otice of the grounds upon which a claim rests is the *raison d'etre* of a complaint").

---

[10] In *Spitz*, the plaintiff similarly predicated a breach of confidentiality claim on an alleged disclosure of trade secrets. Like LiiON in this case, the *Spitz* plaintiff could not show that the defendant used or disclosed the purported trade secrets. Hence, both claims in *Spitz* failed, just as they do here. *See* 969 F. Supp. 2d at 1006–07.

LiiON's new theory of breach of contract also lacks merit. The sole "example" LiiON provides of a disclosure of confidential information (that does not rise to the level of a trade secret) is a single email in 2017. (Opp. Ex. 60.) The email—with a distributor, not Samsung—references a LiiON bill of materials. After LiiON brought this email to Vertiv's attention, Vertiv addressed it, which the email reflects. More importantly, the information contained in Exhibit 60 plainly falls outside of the NDA. The NDA applies only "to Confidential Information provided" between July 31, 2014 and July 31, 2015. (SOF ¶ 20.) A bill of materials Vertiv received in 2017, by definition, cannot constitute "Confidential Information" under the NDA.

Third, LiiON has not provided any evidence establishing recoverable damages. LiiON waived any right to consequential damages for a breach of the NDA. (*Id.* ¶ 21.) That means it was incumbent on LiiON to identify damages caused by an alleged breach of the 2014 NDA that were not consequential damages. LiiON fails to do so. The only "evidence" LiiON identifies is Christopher Leisner's "clear report and testimony" to show damages caused by breach of the NDA. (Opp. at 25.) But, Leisner's report only discusses alleged consequential damages, which are not recoverable. As a result, LiiON has no evidence of recoverable damage relating to the alleged breach of the NDA.

## <u>CONCLUSION</u>

LiiON states repeatedly that it has a secret recipe and Vertiv did something wrong with that secret recipe. But, the evidentiary record contains nothing that identifies the secret recipe. As a result, the Court cannot find that LiiON's secret recipe is a trade secret, that Vertiv was given access to the secret recipe, and that Vertiv used or disclosed the secret recipe. At this stage of the case, LiiON needed to present evidence. There is none. For these reasons, summary judgment in Vertiv's favor on LiiON's trade secret misappropriation and breach of contract claims is proper.

Dated: May 6, 2021

Respectfully submitted,

_/s/J. Erik Connolly_

J. Erik Connolly
Nicole E. Wrigley
Christopher J. Letkewicz
Benesch, Friedlander, Coplan & Aronoff LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949
Email: econnolly@beneschlaw.com
      nwrigley@beneschlaw.com
      cletkewicz@beneschlaw.com

_Attorneys for Defendants Vertiv Group_
_Corporation, Vertiv Corporation and Liebert_
_Corporation_

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 6, 2021 a copy of the foregoing ***Defendants' Reply in Support of Their Motion for Summary Judgment*** was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

<u>*/s/J. Erik Connolly*</u>
*Counsel for Defendants Vertiv Group Corporation, Vertiv Corporation and Liebert Corporation*

**APPENDIX 1**

| Record citation[1] | LiiON's Factual Assertion(s) Lacking Citation to an L.R. 56.1 Statement of Additional Facts | Vertiv's Response |
|---|---|---|
| Pl. Ex. 29 at LIION000253 | ███████████████████████████████ ███████████████████████████████ (Opp. at 4). | LiiON provides no guidance as to how Exhibit 29 is relevant, let alone material, to LiiON's identification of a trade secret. The document is a "generic specification." It does not purport to contain a trade secret. Nor does LiiON lay any foundation for the information the document allegedly contains. |
| Pl. Ex. 30 | ███████████████████████████████ ███████████████████████████████ (Opp. at 4). | LiiON provides no guidance as to how Exhibit 30 is relevant, let alone material, to LiiON's identification of a trade secret. The document does not purport to contain a trade secret. Nor does LiiON lay any foundation for the information the document allegedly contains. <br><br> Additionally, LiiON's assertion that ████ ███████████████████████████████ ██████████ LiiON deployed its lithium-ion battery cabinet for the first time in 2015. Vertiv 56.1 ¶ 23. Thus, no LiiON battery will be 10 years old until at least 2025. |

---

[1] Appendix 1 addresses LiiON's factual assertions in the order in which they appear in its opposition.

| Record citation[1] | LiiON's Factual Assertion(s) Lacking Citation to an L.R. 56.1 Statement of Additional Facts | Vertiv's Response |
|---|---|---|
| Pl. Ex. 31 at VERTIV00254 | ██████████████████████████████████████████ ██████████████████████████████ (Opp. at 4-5). | LiiON provides no guidance as to how Exhibit 31 is relevant, let alone material, to LiiON's identification of a trade secret. The document is a 22-page "operation and maintenance manual." And, whatever information it contains is readily ascertainable to an end-user.

Exhibit 31 also fails to support the proposition for which LiiON cited it. The manual does not discuss LiiON's "algorithms," much less identify them. |
| Pl. Ex. 1 at 79:22-80:22 | '████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████" (Opp. at 5). | The excerpt LiiON cites from Lynn's deposition does not address what, if any, trade secrets LiiON possesses. In this excerpt, Lynn merely provided *background information* on battery management system technology. *See* Ex. 1 at 80:2-4 (████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████

Lynn never identified any specific source code, formula, or other information that LiiON contends is a trade secret because he was not testifying about those topics. Lynn's testimony does not support the proposition for which LiiON has cited it. |

| Record citation[1] | LiiON's Factual Assertion(s) Lacking Citation to an L.R. 56.1 Statement of Additional Facts | Vertiv's Response |
|---|---|---|
| Pl. Ex. 1 at 118:19-119:20 | "███████████████████████████████████████." (Opp. at 5). | LiiON never identifies any of these "requirements" or points to a document that articulates them.<br><br>It is also unclear whether LiiON is even contending that its "██████████████r other sorts of requirements, are its protectible trade secrets in this action. |
| Pl. Ex. 1 at 125:4-125:15 | "███████████████████████████████████████." (Opp. at 5). | If LiiON is contending that its protectible trade secret in this case is its █████████ LiiON failed to: identify which requirements are trade secrets (unless LiiON is claiming they all are); provide evidence to show what the requirement is; demonstrate that the trade secret was disclosed to Vertiv; and show that Vertiv used or disclosed the trade secret to Samsung. |
| Pl. Ex. 1 at 141:19-142:15 | "███████ ■ ■ ■ ■ ■ ███████." (Opp. at 5). | Nothing in the record identifies any of the software modifications LiiON references. Nor has LiiON articulated with particularity any of the ██████████ All of these vague categories of information are undefined and lack evidentiary support. |

| Record citation[1] | LiiON's Factual Assertion(s) Lacking Citation to an L.R. 56.1 Statement of Additional Facts | Vertiv's Response |
|---|---|---|
| Pl. Ex. 1 at 231:4-22, 237:4-238:4 | ' ████████████████████████████ (Opp. at 5-6). | LiiON has not submitted a shred of evidence identifying its purported algorithm. Nor is there any evidence that Vertiv accessed the algorithm, used it, or disclosed it to Samsung.<br><br>Similarly, LiiON fails to identify any ███████ ██████ that qualifies as a trade secret, much less one that satisfies all of the elements of a trade secret misappropriation claim. LiiON leaves it to the imagination which, if any, of the broad, vague topics referenced in this factual assertion allegedly constitutes trade secret. |
| Pl. Ex. 2, Brian Dillard's Expert Report at 5-6 | ' ████████████████████████████ (Opp. at 6). | Broadly referring to an expert report does not identify a trade secret. On its face, this record citation indicates that Dillard is merely explaining ████ ████████████████ and how it differs from that of other companies. A product description does not equate to identifying a trade secret.<br><br>LiiON's citation to Dillard's Expert Report also fails to identify any underlying evidence. As a result, the citation deprives the Court of knowing whether the supporting materials exist, what their purported foundation is, and whether they are admissible. |

| Record citation[1] | LiiON's Factual Assertion(s) Lacking Citation to an L.R. 56.1 Statement of Additional Facts | Vertiv's Response |
|---|---|---|
| Pl. Ex. 4, Brian Dillard's Response Report (Jack Wagner) at 20 | ' ████████████████████ ████████████████████ ████████████████████ ████████████████████ ████████ (Opp. at 6). | LiiON lays no foundation for and fails to authenticate Dillard's Expert Report. Mr. Dillard's conclusory assertions carry no evidentiary value.<br><br>Additionally, Mr. Dillard suggests in paragraph 3 that LiiON's protectible trade secret in this case is its ████████████████.<br><br>But neither Mr. Dillard nor LiiON ever identifies what that scheme is. It is a vague, amorphous concept.<br><br>Likewise, Mr. Dillard fails to specify a single "threshold" or "timer value" the Court can consider as a purported trade secret. There is no underlying evidence to support the trade secret status of any of the broad categories of information Mr. Dillard describes. |

| Record citation[1] | LiiON's Factual Assertion(s) Lacking Citation to an L.R. 56.1 Statement of Additional Facts | Vertiv's Response |
|---|---|---|
| Pl. Ex. 32 at VERTIV002118 | '(Opp. at 6-7). | Exhibit 32 does not support the proposition for which LiiON cites it. Exhibit 32 is a presentation *Vertiv* produced. The document does not purport to identify any trade secrets. LiiON also fails to lay any foundation for Exhibit 32.<br><br>In LiiON's own words, Exhibit 32 is a PowerPoint that But a high-level product "feature" is not a trade secret. Nor does LiiON explain how the graph in Exhibit 32 discloses any alleged trade secret. |
| Pl. Ex. 33 at VERTIV014490 | '(Opp. at 7). | Even if Exhibit 32 is what LiiON claims it to be, the document does not identify a LiiON trade secret. As LiiON acknowledges, Exhibit 32 is a presentation Vertiv produced. If there was a trade secret in the presentation, LiiON would identify it. Instead, LiiON tries to equate product "features" with a trade secret.<br><br>At most, Vertiv is recognizing the "high" performance of LiiON's battery chemistry. But LiiON has never contended that its battery chemistry is a trade secret. LiiON also admits that the chemistry for its battery cabinet differs from that of Vertiv's battery cabinet. *See* Vertiv L.R. 56.1 ¶¶ 61, 74. |

| Record citation[1] | LiiON's Factual Assertion(s) Lacking Citation to an L.R. 56.1 Statement of Additional Facts | Vertiv's Response |
|---|---|---|
| Pl. Ex. 2 Brian Dillard Expert Report at 5-6 | ' █████████████████████████ (Opp. at 8). | LiiON lays no foundation for and fails to authenticate Mr. Dillard's Expert Report. The conclusory assertions LiiON cites carry no evidentiary value.<br><br>Nor do LiiON's factual assertions have any substantive weight. The "clear outline" of a trade secret is a generality LiiON never fleshes out. And the record contains no evidence that specifies LiiON's "know-how" or "methodology for developing the algorithms and operating parameters for the cabinet and current limit timers."<br><br>These buzz words pervade LiiON's brief, yet LiiON cannot point to a single document that identifies any piece of know-how, any concrete step of its methodology, or any particular algorithm or operating parameter. Having an expert refer to these vague categories interchangeably will *confuse* jurors, not aid them. |
| N/A | ' ████████████████████████ (Opp. at 8). | LiiON provides no record citation for this assertion. Accordingly, Vertiv cannot respond to the evidence LiiON may be relying upon. |
| N/A | ████████████████████████ (Opp. at 8). | LiiON provides no record citation for this assertion. Accordingly, Vertiv cannot respond to the evidence LiiON may be relying upon. |

| Record citation[1] | LiiON's Factual Assertion(s) Lacking Citation to an L.R. 56.1 Statement of Additional Facts | Vertiv's Response |
|---|---|---|
| N/A | ████████████████████████████ ████████████████████████████ ████████████████████████████ (Opp. at 9). | LiiON provides no record citations for these assertions. Accordingly, Vertiv cannot respond to the evidence LiiON may be relying upon. |
| Exhibit 4 Dillard Response Report to Jack Wagner at 14. | ████████████████████████████ ████████████████████████████ (Opp. at 9). | LiiON lays no foundation for and fails to authenticate Mr. Dillard's Response Report. Nor does LiiON identify any of the underlying evidence Mr. Dillard is purportedly relying upon, which deprives both Vertiv and the Court the ability to examine that purported evidence for relevance and admissibility.<br><br>In his Response Report, Mr. Dillard notes that ████ ██████████████ Ex. 4 at 14. Even if this statement is correct, LiiON has not identified what the trade secret is. If the trade secret is ████ LiiON has neither identified nor produced a document that shows the "how" or the "why."<br><br>Nor can LiiON point to a particular document that identifies its ████████████ (Opp. at 9.) |

| Record citation[1] | LiiON's Factual Assertion(s) Lacking Citation to an L.R. 56.1 Statement of Additional Facts | Vertiv's Response |
|---|---|---|
| N/A | | LiiON provides no record citations for this assertion. Accordingly, Vertiv cannot respond to the evidence LiiON may be relying upon. |
| LiiON001759 | (Opp. at 11). | LiiON001759 does not support the proposition for which LiiON cites it. The document—the purported first page of a nondisclosure agreement between LiiON and its co-owner, Jerry Hoffman—is not an agreement between LiiON and an employee or a business partner. The document certainly does not establish that LiiON required *all* of its employees and business partners to sign NDAs. At most, LiiON001759 suggests that Mr. Hoffman was bound to keep information subject to the NDA confidential. But the exhibit provides no probative value regarding whether LiiON maintained the secrecy of its purported trade secrets. |
| Pl. Ex. 34, Dean Kostan Dep. at 58:8-59:11; 66:13-67:4; 198:6-13; 213:11-214:5 | (Opp. at 11). | No evidence in the record identifies any algorithm or "specific BMS source code" for the Court to assess. Even if Mr. Kostan is the only person who ever "held" this information, there is no evidence that he disclosed any algorithm or line of BMS source code to Vertiv. And there certainly is no evidence that Vertiv used or disclosed a specific algorithm or line of source code. None of this evidence exists. Vertiv's trade secret misappropriation claim is meritless. |

| Record citation[1] | LiiON's Factual Assertion(s) Lacking Citation to an L.R. 56.1 Statement of Additional Facts | Vertiv's Response |
|---|---|---|
| LiiON001759; Ex. 1 Tom Lynn Dep. at 464:13-21 | ' ██████████ (Opp. at 11). . | LiiON001759 does not support the proposition for which LiiON cites it. The document—the purported first page of a nondisclosure agreement between LiiON and its co-owner, Jerry Hoffman—is not an agreement between LiiON and a "business partner." And the document does not establish that LiiON required *all* of its "business partners" to sign NDAs. Nor does LiiON001759 provide any probative value regarding the "prevailing understanding of confidentiality" LiiON claims existed.<br><br>LiiON similarly provides no guidance as to how the citation to Mr. Lynn's deposition is relevant. The excerpt sheds no light on LiiON's efforts to maintain the secrecy of its purported trade secrets. Mr. Lynn merely testified about the existence of an alleged oral agreement on the same subject matter as the NDA between Vertiv and LiiON. |
| Pl. Ex. 9, LiiON000207; Pl. Ex. 35, LIION001788 | ' ██████████ (Opp. at 12). | LiiON provides no guidance as to how Exhibit 9 or Exhibit 35 are relevant to LiiON's efforts to maintain the secrecy of its purported trade secrets. Nor has LiiON made any effort to lay a foundation for either document or authenticate them. Exhibits 9 and 35 do not appear to have been drafted by LiiON.<br><br>Substantively, LiiON's factual assertion is contradicted by the record. For example, Mr. Lynn testified in his deposition that LiiON provided ██████ ██████ LiiON Ex. 1 at 464. |

| Record citation[1] | LiiON's Factual Assertion(s) Lacking Citation to an L.R. 56.1 Statement of Additional Facts | Vertiv's Response |
|---|---|---|
| Pl. Ex. 1 at 464:6-464:16 | '██████ █████ ████ ████ (Opp. at 12). | The excerpt from Mr. Lynn's testimony does not support the proposition for which LiiON cites it. Mr. Lynn testified that ████████ ██████████ There is no evidence that LiiON placed confidential and proprietary labels on all documents containing sensitive information that LiiON shared with third parties. To the contrary, the record shows that LiiON shared purportedly confidential documentation with outsiders without making confidentiality designations. *See* Vertiv 56.1 Exs. 35 & 36 (e-mail from LiiON to third-party QTS disclosing LiiON information without any confidentiality designations). |
| Pl. Ex. 10, Jeffrey Herring Dep. at 43:19-44:1; Pl. Ex. 11, Jeff Kessen Dep at 165:11-166:2; Pl. Ex. 12, John Polenz Dep. at 46:11-48:5; Pl. Ex. 13, James Turner Dep. at 50:2-20; Pl. Ex. 14, William Campbell Dep. at 65:7-66:17; Pl. Ex. 15, Laurie Yates Dep. 74:15-76:23; Pl. Ex. 15, | '████████████ ████████████ ████████████" (Opp. at 12-13). | The deposition excerpts do not support the broad proposition for which LiiON cites them. For instance, Mr. Kessen was discussing the general treatment of documents marked "confidential." He was not discussing LiiON specifically. Similarly, the cited testimony from Mr. Polenz concerned Vertiv's general policies and procedures concerning confidential information and the ethics training he received. The cited testimony from Mr. Turner also referenced his training in handling third party confidential information and his understanding generally that information from third parties was to be kept confidential. The cited testimony from Mr. Campbell relates to an NDA between Vertiv and Valence Technology. The cited testimony from Ms. |

| Record citation[1] | LiiON's Factual Assertion(s) Lacking Citation to an L.R. 56.1 Statement of Additional Facts | Vertiv's Response |
|---|---|---|
| Mayo Tabb Dep. at 35:20-37:4; Pl. Ex. 16 Keith Johns Dep at 102:22-103:4 | | Yates discusses a purchase order; she was not testifying about whether Vertiv employees understood if information from LiiON was to be treated proprietary and confidential. Likewise, the cited testimony from Mr. Tabb relates to Vertiv's general policies concerning third party confidential and technical information.<br><br>These excerpts show that Vertiv employees understood and adhered to their confidentiality obligations. The excerpts do not corroborate LiiON's assertion that it maintained the secrecy of its purported trade secrets. |
| Pl. Ex. 36 VERTIV014611 | ' ██████████████████████████ ████████████ (Opp. at 13). | LiiON provides no guidance as to how Exhibit 36 supports LiiON's assertion that Vertiv acknowledged ████████████████████ Exhibit 36 concerns one document, not "LiiON's material" generally. Nor does Exhibit 36 contain any acknowledgment from Vertiv that the document was confidential. |
| Pl. Ex. 37 VERTIV014636 | ' ██████████████████████████ ██████████████████ (Opp. at 13). | The email chain LiiON cites speaks for itself and shows that Vertiv addressed the inadvertent disclosure. LiiON fails to explain how this singular occurrence is material to this case. Nor does LiiON provide any evidence of any alleged "fallout." |

| Record citation[1] | LiiON's Factual Assertion(s) Lacking Citation to an L.R. 56.1 Statement of Additional Facts | Vertiv's Response |
|---|---|---|
| N/A | ' ███████████████████████████████ ███████████████████████████ (Opp. at 13). | LiiON provides no record citations for this assertion. Accordingly, Vertiv cannot respond to the evidence LiiON may be relying upon. |
| Pl. Ex. 38, Richard Caudill Dep. at 138:9-139:8 | ' █████████████████████ ███████████ (Opp. at 13). | LiiON mischaracterized Mr. Caudill's testimony. Testifying subject to a form objection, Mr. Caudill recalled a ' ████████████ that the LiiON system had over the Samsung system. But he did not testify as to whether ' ██████████ ████████████████████████ than Samsung's cabinet.

Additionally, Mr. Caudill's testimony regarding an operating temperature difference between the LiiON battery cabinet system and that of Samsung contains multiple levels of hearsay. He testified that his ████████████████████████████████ ████████████████████████ Pl. Ex. 38 at 136-139. ████████████████████████ *Id.* at 138-39. Mr. Caudill's testimony is inadmissible to prove the truth of the matter LiiON asserts. |
| Pl. Ex. 39 VERTIV014366 | ' █████████████████████████ ██████████████████ (Opp. at 14). | LiiON provides no guidance as to how Exhibit 39, a purported publication from DatacenterDynamics, is relevant to LiiON's assertion. The document makes |

| Record citation[1] | LiiON's Factual Assertion(s) Lacking Citation to an L.R. 56.1 Statement of Additional Facts | Vertiv's Response |
|---|---|---|
| | | no mention of LiiON. Nor does the document compare LiiON's and Samsung's products.<br><br>The only portions of Exhibit 39 that contain opinions of Vertiv employees relate solely to a comparison of lithium-ion technology and Valve Regulated Lead Acid technology generally.<br><br>Additionally, LiiON lays no foundation for Exhibit 39 or any of the underlying information it contains. |
| Pl. Ex. 27 VERTIV012828 | ████████████████████████████ ████████████ (Opp. at 14). | Exhibit 27 does not support the proposition for which LiiON cites it. In Exhibit 27, a Vertiv engineer commented that ████████<br><br>████████████ Exhibit 27 at VERTIV012828; *see also id.* at VERTIV012829 ("████████████ ████████████"). But the Vertiv engineer expressed no opinion as to ████████████ ████████████.<br><br>More fundamentally, Exhibit 27 sheds no light on the value of any purported trade secret LiiON possesses. |

| Record citation[1] | LiiON's Factual Assertion(s) Lacking Citation to an L.R. 56.1 Statement of Additional Facts | Vertiv's Response |
|---|---|---|
| N/A | " ███████████████ (Opp. at 14). | LiiON provides no record citations for this assertion. Accordingly, Vertiv cannot respond to the evidence LiiON may be relying upon. |
| Pl. Ex. 40, Gary Gray Dep. at 238:10-239:4 | " ███████████ " (Opp. at 14). | LiiON lays no foundation for any of the information Gray provided in this excerpt of his deposition. He was unable to recall information regarding the costs LiiON incurred or the number of hours it expended in development. *See* Pl. Ex. 40 at 234:24-243:22. When asked how much money LiiON spent between 2009 and 2017 on research and development of its lithium-ion solution, Gray responded ███████████ ███████ *Id.* at 238. This speculative assertion is insufficient to establish what LiiON purportedly spent in R&D costs. |
| N/A | " ███████████████ █████████████████ █████████████████ ." (Opp. at 14). | LiiON provides no record citations for these assertions. Accordingly, Vertiv cannot respond to the evidence LiiON may be relying upon. |
| Pl. Ex. 5, Brian Dillard Response (Yet-Ming Chiang) Rpt. p. 16-22 | " ███████████ (Opp. at 14). | LiiON lays no foundation for and fails to authenticate Mr. Dillard's Response Report. Nor does LiiON identify any of the underlying evidence Mr. Dillard purportedly relied upon. LiiON's conclusory factual assertion carries no evidentiary value. |

| Record citation[1] | LiiON's Factual Assertion(s) Lacking Citation to an L.R. 56.1 Statement of Additional Facts | Vertiv's Response |
|---|---|---|
| N/A | " ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ █████████████████" (Opp. at 15). | LiiON provides no record citations for these assertions. Accordingly, Vertiv cannot respond to the evidence LiiON may be relying upon. |
| Pl. Ex. 41 VERTIV020464 | " ████████████████████████████████ ████████████████████ (Opp. at 16). | Exhibit 41 does not support the proposition for which LiiON cites it. Exhibit 41 is an email chain that speaks for itself. LiiON makes no effort to explain how the specific email it cites at VERTIV020464 has any relevance to Vertiv's "understanding" or "access" to LiiON's purported trade secret. |

| Record citation[1] | LiiON's Factual Assertion(s) Lacking Citation to an L.R. 56.1 Statement of Additional Facts | Vertiv's Response |
|---|---|---|
| Pl. Ex. 9 LIION000207 | ' ██████████████████████████ (Opp. at 16). | Vertiv does not dispute that it entered into a mutual nondisclosure agreement with LiiON on this date. The terms of the NDA speak for themselves. |
| Pl. Ex. 14, Bill Campbell Dep. at 56:1-60:24 | ' ████████████████████ ████████████ (Opp. at 16). | LiiON cites no evidence to support its contention that ██████████████████████ Nor does LiiON provide any information to explain what such a delivery is supposed to mean. Bill Campbell testified that ████████████████ LiiON Ex. 14 at 60. |
| Pl. Ex. 1 at 340:11-342:22; Pl. Ex. 42 | ' ████████████████████ ██ ██ ██ ██ ██ ██ ██ ██ ████████████████████ (Opp. at 16). | LiiON offers no evidence of any specific ████████████ to corroborate its factual assertions. While LiiON claims it ██████ its ██████████████████████ LiiON still cannot identify that methodology. LiiON has no documentation that articulates the methodology and spells it out.<br><br>LiiON's Exhibits 1 and 42 fail to clarify what LiiON's trade secret is in this case. For example, when asked ██████ ████████████████████ ██████ Pl. Ex. 1 at 343. |

| Record citation[1] | LiiON's Factual Assertion(s) Lacking Citation to an L.R. 56.1 Statement of Additional Facts | Vertiv's Response |
|---|---|---|
| | | Exhibit 42 sheds no light either. It is an email dated May 20, 2014, wherein LiiON sent documentation about its lithium-ion cabinet before the parties executed the NDA. Exhibit 42 does not indicate what information the parties purportedly shared. Nor does Exhibit 42 identify any alleged trade secret. |
| Pl. Ex. 40, Gary Gray Dep. at 354:24-355:18 | ' █████████████ ." (Opp. at 16). | LiiON provides no guidance as to how Exhibit 40 supports its assertion. In the excerpt, Mr. Gray testified that Vertiv and LiiON engaged in negotiations about a potential master supply agreement. But nowhere does he mention Vertiv's interest or lack of interest in LiiON as a supplier. Nor does he testify regarding any assurances Vertiv allegedly gave that an agreement would be reached. And LiiON provides no evidence that Mr. Gray would have personal knowledge of any of this information. |
| | | Notably, Mr. Gray acknowledged that LiiON never had any master supply agreement in place with any of its customers for lithium-ion battery cabinets. Pl. Ex. 40 at 356–57. |
| Pl. Ex. 43 VERTIV000050 | ' █████████ (Opp. at 17). | Exhibit 43 does not support the broad proposition for which LiiON cites it. Exhibit 43 is an alleged purchase order for eight battery cabinets. |

| Record citation[1] | LiiON's Factual Assertion(s) Lacking Citation to an L.R. 56.1 Statement of Additional Facts | Vertiv's Response |
|---|---|---|
| Pl. Ex. 44 VERTIV003602 | ' ███████████████████ (Opp. at 17). | LiiON lays no foundation for Exhibit 44 or any of the information it contains. Exhibit 44 is a document Vertiv created. Exhibit 44 does not establish that LiiON sold each cabinet at a loss. Rather, Exhibit 44 reflects Vertiv's skepticism regarding LiiON's claim that it sold its cabinets at a loss. LiiON has failed to furnish any of its own financial data to support its factual assertion. |
| N/A | ' ███████████████████ (Opp. at 17). | LiiON provides no record citations for this assertion. Accordingly, Vertiv cannot respond to the evidence LiiON may be relying upon. |
| Pl. Ex. 45 VERTIV000060 | ' ███████████████████ (Opp. at 17). | Vertiv does not dispute that LiiON sent drafts of a master supply agreement to Vertiv. |
| Pl. Ex. 28, Geraghty Dep. at 39:16-40:6 | ' ███████████████████ " (Opp. at 17). | Vertiv does not dispute that the parties could not agree upon the terms for a master supply agreement. However, LiiON provides no record citations for the remaining assertions. The excerpt from Mr. Geraghty's deposition does not support the other factual assertions LiiON makes. |
| Pl. Ex. 28 at 60:11-61:1 | ' ███████████████████ (Opp. at 17). | Mr. Geraghty's testimony speaks for itself. LiiON makes no connection between his testimony and any element of its claim for misappropriation of trade secrets. |

| Record citation[1] | LiiON's Factual Assertion(s) Lacking Citation to an L.R. 56.1 Statement of Additional Facts | Vertiv's Response |
|---|---|---|
| Pl. Ex. 28, Geraghty Dep. at 40:16-24 | (Opp. at 17). | LiiON misstates Mr. Geraghty's testimony. He testified that Vertiv customers ordered both LiiON and Samsung cabinets, and that he did not "know if that was from their preference or if it was an availability issue." Pl. Ex. 28 at 40. LiiON makes no connection between this testimony and any element of its claim for misappropriation of trade secrets. |
| N/A | (Opp. at 17). | LiiON provides no record citations for this assertion. Accordingly, Vertiv cannot respond to the evidence LiiON may be relying upon. |
| SDIA_Subp000478 | (Opp. at 17-18). | SDIA_Subp000478 shows that Vertiv and Samsung entered into a supply agreement. But LiiON provides no record citations for the remaining assertions. LiiON also fails to demonstrate how Vertiv's agreement with Samsung is relevant to LiiON's trade secret misappropriation claim. |
| N/A | (Opp. at 18). | LiiON provides no record citations for this assertion. Accordingly, Vertiv cannot respond to the evidence LiiON may be relying upon. |
| N/A | (Opp. at 18). | LiiON provides no record citations for this assertion. Accordingly, Vertiv cannot respond to the evidence LiiON may be relying upon. |

| Record citation[1] | LiiON's Factual Assertion(s) Lacking Citation to an L.R. 56.1 Statement of Additional Facts | Vertiv's Response |
|---|---|---|
| Pl. Ex. 46 LiiON000280; Pl. Ex. 47 at LiiON005820 | ' ██████████████████ (Opp. at 18). | LiiON provides no guidance as to how Exhibits 46 or 47 support any of its assertions. In fact, Exhibit 47 contradicts LiiON's assertion ████████ ██████. The document notes that ████████ ██████████████████ Exhibit 47 at LiiON005820. |
| N/A | ██████████████████ (Opp. at 18). | LiiON provides no record citations for these assertions. Accordingly, Vertiv cannot respond to the evidence LiiON may be relying upon. |
| Pl. Ex. 48, McNally Dep. at 34:16-37:13 | ' ██████████████████ (Opp. at 18). | Vertiv does not dispute it hired John McNally in 2017 to help develop an in-house lithium-ion battery system. |
| Pl. Ex. 48, McNally Dep. at 37:16-38:1. | ' ██████████████████ (Opp. at 18-19). | Vertiv does not dispute this assertion or Mr. McNally's testimony. |
| Pl. Ex. 49 VERTIV014530. | ' ██████████████████ (Opp. at 19). | LiiON provides no guidance as to how Exhibit 49 supports its assertion that ████████ ████████ Nothing in Exhibit 49—an email in which purchasing forecasts are discussed—indicates that there was any definitive plan to phase out LiiON or Samsung products, nor that any "phase out" was a total elimination of those products from Vertiv's offerings instead of a natural decrease in need as a result of the addition of a third competing product. |

21

| Record citation[1] | LiiON's Factual Assertion(s) Lacking Citation to an L.R. 56.1 Statement of Additional Facts | Vertiv's Response |
|---|---|---|
| Pl. Ex. 20, VERTIV010020; Pl. Ex. 21, VERTIV010279; Pl. Ex. 22, VERTIV003822 | " ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ (Opp. at 19). | Exhibits 20, 21, and 22 do not corroborate LiiON's accusations of wrongdoing. There is no evidence that Vertiv had access to, let alone misappropriated, a LiiON trade secret. Nothing prohibited Vertiv from developing an in-house battery cabinet solution. Exhibits 20, 21, and 22 relate to the period between when Vertiv transacted with LiiON and Samsung and the transition thereafter. Indeed, Exhibits 20, 21 and 22 are probative as to *why* Vertiv moved away from LiiON's products. In Exhibit 21, Gary Gray emailed an offer for ████████ on December 3, 2017. He ████████████████████ ████████ Then, *two days* later, LiiON increased its demand to ████████. *See* Exhibit 22. In this context, Rob Johnson stated, ████████████████████ ████████████████████ ████████ Exhibit 22. There is neither direct nor circumstantial evidence that Vertiv engaged in any "conspiracy" to steal LiiON technology. None of the cited exhibits mention LiiON's technology, let alone any purported plan to steal a trade secret. |

| Record citation[1] | LiiON's Factual Assertion(s) Lacking Citation to an L.R. 56.1 Statement of Additional Facts | Vertiv's Response |
|---|---|---|
| Pl. Ex. 48, McNally Dep. at 59:15-61:2 | (Opp. at 19). | Exhibit 48 does not support the proposition for which LiiON cites it. LiiON mischaracterizes Mr. McNally's testimony. Neither the questions from LiiON's counsel nor Mr. McNally's responses to them relate to the factual assertions LiiON makes at page 19 of its opposition. |
| Pl. Ex. 50, VERTIV014701 | (Opp. at 19). | The email chain speaks for itself and confirms that Vertiv lacked access to information it understood was "proprietary," such as the schematics.<br><br>Regarding the wiring drawings, Mr. McNally testified that *See* Pl. Ex. 48 at 153.<br><br>In either case, LiiON offers no evidence to suggest that any of this information contained a trade secret, or that Vertiv accessed and used or disclosed such trade secret. |
| Pl. Ex. 48, McNally Dep. at 150:3-15 | " (Opp. at 19). | LiiON misstates Mr. McNally's testimony. In the excerpt, Mr. McNally testified that *See* Pl. Ex. 4 at 150:9-15 (" |

23

| Record citation[1] | LiiON's Factual Assertion(s) Lacking Citation to an L.R. 56.1 Statement of Additional Facts | Vertiv's Response |
|---|---|---|
| Pl. Ex. 48 at 151:16-24 | ████████████████████████ ██████████████ (Opp. at 19). | Vertiv does not dispute that Mr. McNally gave the testimony LiiON quoted. |
| Pl. Ex. 51 at LiiON6372 | ████████████████████████ ████████████████ (Opp. at 19-20). | Exhibit 51 does not support the factual assertions for which LiiON cites it. Exhibit 51 is an email chain that does not include Mr. McNally. In the email chain, Gary Gray told Bill Masuda that he was meeting with Mr. McNally the next day. Nothing in Exhibit 51 indicates who requested the meeting. Nor does LiiON offer any evidence to support any inference of wrongdoing. |
| McNally Dep. at 147:1-9 | ████████████████ (Opp. at 20). | The testimony cited by LiiON does not support its statement. Mr. McNally did not testify that he had authority to negotiate a master supply agreement. Mr. McNally testified that he ██████ ████████████ Pl. Ex. 48 at 146. Subject to objections, Mr. McNally guessed that ████ ████████████████████ *See id.* at 147. |
| Pl. Ex. 48 McNally Dep. at 145:18-146:12, 148:1-20 | ████████████████████████ ████████████ (Opp. at 20). | LiiON misstates Mr. McNally's testimony. Mr. McNally testified that ████ ████████████████████████ |

| Record citation[1] | LiiON's Factual Assertion(s) Lacking Citation to an L.R. 56.1 Statement of Additional Facts | Vertiv's Response |
|---|---|---|
| | | ███████████ Pl. Ex. 48 at 147–48. McNally had no further recollection and speculated as to whether anyone in the Vertiv DC group made such a determination. |
| Pl. Exs. 561, 562 | ██████████████████████████████ ██████████████████████████████ ██████████████████ (Opp. at 20). ██████████████████████████████ | Plaintiff's Exhibits 561 and 562 are not before the Court. LiiON neither cited these documents in its L.R. 56.1 Statement of Additional Facts nor provided them as exhibits to its Opposition Brief.<br><br>If LiiON is citing Deposition Exhibits 561 and 562, as entered in the deposition of John McNally, LiiON has mischaracterized the documents. They contain a stand-alone email from Mr. Gray to several Vertiv employees. Mr. Gray stated that ██████ ████████████████████████████ ████████████████████████████ McNally Dep. Ex. 562.<br><br>It is also unclear whether LiiON is now contending that its "operational settings and training tools" are trade secrets. If so, LiiON neither identifies nor provides documentation of any specific "setting" or "training tool" it is tendering as a trade secret. |
| McNally Dep. at 214:14-215:3 | '██████████████████████████████ ██████████████████████ (Opp. at 20). | Vertiv incorporates its response to Pl. Exs. 561, 562 (immediately above), insofar as LiiON is cross-referencing them here. Vertiv does not dispute that Mr. McNally did not recall the email LiiON is referencing. |

| Record citation[1] | LiiON's Factual Assertion(s) Lacking Citation to an L.R. 56.1 Statement of Additional Facts | Vertiv's Response |
|---|---|---|
| Pl. Ex. 52, LiiON006180 | ████████████████████ Opp. at 20). | LiiON mischaracterizes the timeline of these events to imply that Mr. McNally's request to Mr. Gray was connected to Mr. Johnson's statement. But Mr. Johnson's statement was (1) not made to Mr. McNally, and (2) made two days *after* McNally's request to Gray. *Compare* Exhibit 22 *with* Exhibit 52.<br><br>LiiON provides no evidence of any connection between Mr. McNally's request (Exhibit 52) and the business discussion between Mr. Johnson and Mr. Forcier in Exhibit 22. Nor does LiiON explain how Mr. McNally's email relates to any alleged trade secret or alleged misappropriation thereof. |
| N/A | ████████ (Opp. at 20). | LiiON provides no record citations for this assertion. Accordingly, Vertiv cannot respond to the evidence LiiON may be relying upon. |
| N/A | ████████████████████ (Opp. at 20). | LiiON provides no record citations for these assertions. Accordingly, Vertiv cannot respond to the evidence LiiON may be relying upon. |

| Record citation[1] | LiiON's Factual Assertion(s) Lacking Citation to an L.R. 56.1 Statement of Additional Facts | Vertiv's Response |
|---|---|---|
| N/A | (Opp. at 20). | LiiON provides no record citations for this assertion. Accordingly, Vertiv cannot respond to the evidence LiiON may be relying upon. |
| N/A | (Opp. at 21). | LiiON provides no record citations for this assertion. Accordingly, Vertiv cannot respond to the evidence LiiON may be relying upon. |
| Pl. Ex. 53, VERTIV006553; Brian Dillard's Expert Report p. 15 | (Opp. at 21). | LiiON lays no foundation for and fails to authenticate Mr. Dillard's Expert Report. LiiON also fails to provide or cite to any of the underlying evidence Mr. Dillard purportedly relied upon. |
| Id. [sic] at 178:19-179:10 | (Opp. at 21). | LiiON mischaracterizes Bill Campbell's testimony. He testified that ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮ Campbell Dep. at 179. Mr. Campbell explained that Vertiv ▮▮▮▮▮ *Id.* LiiON erroneously suggests that Vertiv's preference turned on Samsung production specifications and performance. |

| Record citation[1] | LiiON's Factual Assertion(s) Lacking Citation to an L.R. 56.1 Statement of Additional Facts | Vertiv's Response |
|---|---|---|
| Pl. Ex. 14, Bill Campbell Dep. at 171:14-172:8 | ████████████████████ (Opp. at 21). | Vertiv objects insofar as LiiON misquoted Mr. Campbell's testimony. And even if LiiON accurately characterized it and captured the surrounding context, the testimony is immaterial. How Samsung's battery cabinet initially performed in 2015 has no bearing on any element of LiiON's claim. |
| N/A | " ████████████████████ (Opp. at 21). | LiiON provides no record citations for this assertion. Accordingly, Vertiv cannot respond to the evidence LiiON may be relying upon. |
| Pl. Ex. 54, VERTIV017786 | ████████████████████ (Opp. at 21-22). | Exhibit 54 does not support the assertions for which LiiON cites it. Nor does LiiON lay any foundation for Exhibit 54. Exhibit 54 purports to be a user manual Samsung created for Vertiv employees. LiiON fails to identify any information in the manual that shows any proposal from Samsung or the "dramatic changes" Samsung's cabinet allegedly "underwent." |

| Record citation[1] | LiiON's Factual Assertion(s) Lacking Citation to an L.R. 56.1 Statement of Additional Facts | Vertiv's Response |
|---|---|---|
| Pl. Ex. 55, VERTIV013701 | (Opp. at 22). | LiiON lays no foundation for Exhibit 55 and offers no explanation as to how Exhibit 55 supports its assertions. Exhibit 55 is an 18-page specification document. LiiON cites it for the contention that Samsung's product was becoming more like LiiON's. But LiiON offers no specific evidence to support this contention. Above all, LiiON fails to identify any trade secret that Samsung's battery cabinet purportedly incorporated from a Vertiv battery cabinet. |
| Pl. Ex. 56, VERTIV007098 | (Opp. at 22). | LiiON lays no foundation for Exhibit 56. Nor does LiiON specify what information in Exhibit 56 reflects any trade secret LiiON possessed that Samsung allegedly misappropriated through Vertiv. |
| N/A | (Opp. at 22). | LiiON provides no record citations for this assertion. Accordingly, Vertiv cannot respond to the evidence LiiON may be relying upon. |
| N/A | (Opp. at 22). | LiiON provides no record citations for these assertions. Accordingly, Vertiv cannot respond to the evidence LiiON may be relying upon. |

| Record citation[1] | LiiON's Factual Assertion(s) Lacking Citation to an L.R. 56.1 Statement of Additional Facts | Vertiv's Response |
|---|---|---|
| N/A | ██████████████████████ (Opp. at 22). | LiiON provides no record citations for this assertion. Accordingly, Vertiv cannot respond to the evidence LiiON may be relying upon. |
| N/A | ██████████████████████ (Opp. at 22). | LiiON provides no record citations for these assertions. Accordingly, Vertiv cannot respond to the evidence LiiON may be relying upon. |
| N/A | ██████████████████████ (Opp. at 22). | LiiON provides no record citations for these assertions. Accordingly, Vertiv cannot respond to the evidence LiiON may be relying upon. |
| Pl. Ex. 57, VERTIV013599 | ██████████████████████ (Opp. at 22-23). | LiiON mischaracterizes VERTIV013599 and ignores Justin Mayle's deposition testimony regarding it. The December 2015 email is discussing Vertiv's internal testing of LiiON's and Samsung's battery cabinets. Mr. Mayle wrote that █████████ ███████████████████ (Opp. Ex. 57.) In his deposition, Mr. Mayle explained that ███████ ██████████████████████. (Opp. Ex. 58 at 326–27.) LiiON does not, and cannot, claim that Vertiv's own test specification document used by Vertiv to test Vertiv's UPS product somehow disclosed LiiON's trade secret to Samsung. (*Id.* at 327–28). |

| Record citation[1] | LiiON's Factual Assertion(s) Lacking Citation to an L.R. 56.1 Statement of Additional Facts | Vertiv's Response |
|---|---|---|
| Pl. Ex. 57, VERTIV013599; Pl. Ex. 58, Dep. of Justin Mayle at 135 | ██████████████████████ (Opp. at 23). | LiiON mischaracterizes VERTIV013599 and ignores Justin Mayle's deposition testimony addressing it. VERTIV013599 is a December 2015 email discussing Vertiv's internal testing of LiiON's and Samsung's battery cabinets. Mr. Mayle wrote that ██████████████ (Opp. Ex. 57.) In his deposition, Mr. Mayle explained that ██████████████ (Opp. Ex. 58 at 326–27.) LiiON does not, and cannot, claim that Vertiv's own test specification document used by Vertiv to test Vertiv's UPS product somehow disclosed LiiON's trade secret to Samsung. (*Id.* at 327–28.) |
| Pl. Ex. 56, VERTIV007098 | ██████████████ (Opp. at 23). | LiiON provides no evidence to connect its Exhibits 56 and 57. Indeed, the documents concern distinct subject matters. Exhibit 56 is a purported Samsung production specification. Exhibit 57 is a Vertiv email chain that addresses a "LiiON test spec document" for use in testing Vertiv's UPS product. These exhibits have no facial relationship, and LiiON fails to explain how they could possibly be related. |

| Record citation[1] | LiiON's Factual Assertion(s) Lacking Citation to an L.R. 56.1 Statement of Additional Facts | Vertiv's Response |
|---|---|---|
| Pl. Ex. 59, VERTIV010577 | (Opp. at 23). | LiiON fails to explain how the information it cites relates to its misappropriation claim. LiiON makes no connection between any purported trade secret and the "interesting observation" Mr. Tabb noted in his email. Nor is there any evidence that Samsung learned any trade secret from Vertiv and used it to " |
| Pl. Ex. 9, LiiON000207 | ' (Opp. at 24). | The NDA speaks for itself. LiiON offers no evidence to support its assertion that it fully performed under the contract. |
| Pl. Ex. 60. VERTIV014611 | (Opp. at 25). | LiiON provides no guidance as to how Exhibit 60 is relevant to its breach of contract claim. The email— with a distributor, not Samsung—references a LiiON bill of materials. After LiiON brought this email to Vertiv's attention, Vertiv addressed it, which the email reflects. More importantly, the information contained in Exhibit 60 falls outside of the NDA. The NDA applies only "to Confidential Information provided between July 31, 2014 and July 31, 2015. (Vertiv SOF ¶ 20.) A bill of materials Vertiv received in 2017, by definition, cannot constitute "Confidential Information" under the NDA. |
| N/A | ' (Opp. at 25). | LiiON failed to cite any specific information it is relying upon in Mr. Leisner's expert report. Regardless, Mr. Leisner's report only discusses alleged consequential damages, which are not recoverable. |